Larry W. Lee (State Bar No. 228175)
lwlee@diversitylaw.com
Kristen M. Agnew (State Bar No. 247656)
kagnew@diversitylaw.com
**DIVERSITY LAW GROUP, P.C.**
515 South Figueroa Street, Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile
Attorneys for Plaintiff and the Class

WILLIAM L. MARDER, ESQ. (CBN 170131)
**Polaris Law Group LLP**
501 San Benito Street, Suite 200
Hollister, CA 95023
Tel: (831) 531-4214
Fax: (831) 634-0333
Email: bill@polarislawgroup.com

Dennis S. Hyun (State Bar No. 224240)
dhyun@hyunlegal.com
**HYUN LEGAL, APC**
515 South Figueroa Street, Suite 1250
Los Angeles, CA  90071
(213) 488-6555
(213) 488-6554 facsimile

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SER LAO, as an individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>H & M HENNES & MAURITZ, L.P., a New York limited partnership; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:16-cv-333 EJD<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        TBD<br>Time:        TBD<br>Courtroom:  4, 5th Floor<br>Judge:       Hon. Edward J. Davila |

1

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on a date and time for hearing to be determined by the Honorable Edward J. Davila, District Judge in Courtroom 4 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, CA 95113, Plaintiff Ser Lao ("Plaintiff") will and hereby does move this Court, pursuant to Federal Rule of Civil Procedure 23, on behalf of himself and all others similarly situated, for an order:

1.      Determining that a class action is proper as to the First, Second, Third, Fourth, Sixth, and Eighth Causes of Action contained in the Class Action Complaint pursuant to Federal Rule of Civil Procedure 23, on the grounds that: 1) the Class is so numerous that joinder of all members is impracticable; 2) there are questions of law and fact common to the Class; 3) the class representative's claims are typical of the claims of the Class; and 4) the class representative will fairly and adequately protect the interests of the Class.

2.      Determining that class treatment is appropriate under Federal Rule of Civil Procedure 23(b)(3).

3.      Certifying the following Class and Subclasses:

a.      All current and former non-exempt retail store employees who were employed by Defendants in the State of California at any time from December 11, 2011, through the present (the "Class");

b.      All former employees who were employed by Defendants in the State of California at any time from December 11, 2012, through the present, who during their employment received their normal payroll wages through check or direct deposit, but upon their separation of employment received their terminating wages in the form of a Money Network ATM Paycard. (the "Money Network Paycard Class"); and

c.      All current and former non-exempt retail store employees who received non-discretionary incentive pay and worked overtime in the same pay period at any time from December 11, 2014, through the present, such that the employee received an overtime recalculation, and received a wage statement (the "Overtime Recalculation Wage Statement

Class").

4.     Finding Plaintiff Ser Lao to be an adequate representative and certifying him as the class representative herein.

5.     Finding Plaintiff's counsel and their respective firms, namely Larry W. Lee and Kristen M. Agnew of Diversity Law Group, P.C., Dennis S. Hyun of Hyun Legal, APC, and William L. Marder of Polaris Law Group LLP as adequate class counsel and certifying them as class counsel herein.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the accompanying Declarations of Larry W. Lee, Kristen M. Agnew, Dennis S. Hyun, William L. Marder, and Ser Lao, the accompanying Compendium of Evidence, which attaches the deposition testimony and exhibits cited herein and the Declarations of Deshanay Harris, Shawn'Nel Brown, Wayne Santos, Ian Mitchinson, Malik Richardson, Charlotte O'Connor, Lily Llagas, Alexander Martinez, and Duart Souza, the accompanying Request for Judicial Notice, the pleadings and papers on file herein, and upon such other matters as may be presented to the Court at the time of the hearing.

Dated: June 23, 2017                              DIVERSITY LAW GROUP, P.C.


                                                  By:/s/ Larry W. Lee
                                                  _____
                                                       LARRY W. LEE
                                                       KRISTEN M. AGNEW
                                                       Attorneys for Plaintiff and the Class

ii

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   LEGAL PRINCIPLES ......................................................................................... 2

   A.   California Law Requires All Non-Exempt Employees to Be Paid For All Hours Spent
      Under the Control Of The Employer ................................................................. 2

   B.   California Prohibits Issuance of Wages Through the Use of an ATM-like Paycard
      Without Employee Consent .............................................................................. 4

   C.   California Law Requires All Overtime Wage Payments, Including Overtime
      Adjustments, to Specify the Applicable Hourly Rates and Number of Hours Worked 5

III.  FACTUAL AND PROCEDURAL BACKGROUND ........................................... 6

   A.   Defendant's Mandatory, Off-the-Clock Security Check Policy ........................ 6

   B.   Defendant's Class-Wide Practice Regarding the Use of a Money Network Paycard
      For Payment of Final Wages ........................................................................... 8

   C.   Defendant's Class-Wide Practice Regarding Defective Wage Statements ................... 8

   D.   The Common Experiences of Plaintiff and Putative Class Members As to the Alleged
      Claims .............................................................................................................. 9

   E.   Procedural Background ................................................................................... 10

IV.   ALL OF THE REQUIREMENTS FOR CLASS CERTIFICATION ARE EASILY
    ESTABLISHED ................................................................................................. 11

   A.   The Requirements of Fed. R. Civ. P. 23(a) are Met ...................................... 12

     1.   The Classes Are Ascertainable and Meet Numerosity ............................. 12

     2.   There Are Common Questions of Law and Fact ...................................... 12

       a.   There Is a Common Question as to Whether the Security Checks Are Hours
         Worked Under California Law ........................................................ 13

         i.   Security Check Cases Are Aptly Suited for Class Treatment ........................ 13

         ii.   The *De Minimis* Defense Is Not an Impediment to Class Certification ............ 15

       b.   There Are Common Questions of Law and Fact as to Whether Class Members

iii

**Were Denied Unfettered Rest Breaks Because of the Security Checks** ................ 17

    c.   **There Are Common Questions of Law and Fact as to Whether Defendant's Policy and Practice of Paying Final Wages on a Money Network Paycard Is Lawful** ........................................................................................................... 18

    d.   **Defendant's Defective Wage Statements Present Predominant Questions of Law and Fact** ....................................................................................................... 19

   2.   **Representative Plaintiff's Claims Are Typical** ........................................ 21

   3.   **The Adequacy Requirement Is Met** .......................................................... 22

    a.   **Plaintiff is an Adequate Representative** .................................................. 22

    b.   **Competent Class Counsel** ......................................................................... 23

**B.**   **The Predominance Requirement of Fed. R. Civ. P. 23(b)(3) is Met** ............................ 23

**C.**   **A Class Action is the Superior Method for Adjudication** .............................................. 24

**V.**   **A CLASS-WIDE TRIAL IS MANAGEABLE** ............................................................................ 25

**VI.**   **CONCLUSION** ................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Abdullah v. U.S. Sec. Assoc.'s, Inc.*, 731 F.3d 952 (9th Cir. 2013) ........................................ 12, 24

*Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543 (E.D. Cal. 2010) ............................................. 17

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ........................................................................ 13

*Augustus v. ABM Sec. Servs., Inc.*, 2 Cal. 5th 257 (2016) ........................................................... 17

*Avilez v. Pinkerton Gov't Serv.*, 286 F.R.D. 450 (C.D. Cal. 2012) ............................................... 23

*Balasanyan v. Nordstrom, Inc.*, 294 F.R.D. 550 (S.D. Cal. 2013) ............................................... 20

*Bibo v. Fed. Exp., Inc.*, No. C 07-2505 TEH, 2009 WL 1068880 (N.D. Cal. Apr. 21, 2009) ....... 16

*Blackie v. Barrack*, 524 F.2d 891 (9th Cir. 1975) ......................................................................... 25

*Brewer v. Gen. Nutrition Corp.*, 2014 U.S. Dist. LEXIS 159380 (N.D. Cal. Nov. 12, 2014) ....... 20

*California Rural Legal Assistance v. Legal Servs. Corp.*, 917 F.2d 1171 (9th Cir. 1990) ............ 21

*Californians for Disability Rights v. Dept. of Transp.*, 249 F.R.D. 334 (N.D. Cal. 2008) ............ 12

*Cervantez v. Celestica Corp.*, 253 F.R.D. 562 (C.D. Cal. 2008) ................................................... 15

*Chavez v. Converse, Inc.*, 15-cv-03746-NC, Dkt. No. 89 (N.D. Cal. Sept. 22, 2016) ............... 3, 14

*Faulkinbury v. Boyd & Assocs., Inc.*, 216 Cal. App. 4th 220 (2013) ............................................. 5

*Greer v. Dick's Sporting Goods, Inc.*, No. 2:15-cv-01063-KJM-CKD, 2017 U.S. Dist. LEXIS
    57165 (E.D. Cal. Apr. 12, 2017) .................................................................................. 3, 15, 16

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ................................................. 12, 21, 23

*Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909 (9th Cir. 1964) ................................. 12

*In re High-Tech Employee Antitrust Litig.*, 985 F. Supp. 2d 1167 (N.D. Cal. 2013) ................... 13

*Jimenez v. Allstate Ins. Co.*, 2012 WL 1366052 (C.D. Cal. 2012) ......................................... 23, 25

*Kurihara v. Best Buy Co.*, 2007 WL 2501698 (N.D. Cal. Aug. 30, 2007) ................... 3, 15, 16, 17

*Leyva v. Medline Indus. Inc.*, 716 F.3d 510 (9th Cir. 2013) .................................................... 13, 24

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund*, 244 F.3d 1152 (9th Cir. 2001) ........... 25

*Lopez v. G.A.T. Airline Ground Support, Inc.*, 2010 WL 2839417 (S.D. Cal. 2010) .................... 20

*Lubin v. The Wackenhut Corp.*, 5 Cal. App. 5th 926 (2016) ......................................................... 21

*Marin v. Costco Wholesale Corp.*, 169 Cal. App. 4th 804 (2013)................................................. 5

*McKenzie v. Fed. Express Corp.*, 765 F. Supp. 2d 1222 (C.D. Cal. 2011)............................. 11, 20

*McKenzie v. Federal Exp. Corp.*, 275 F.R.D. 290 (C.D. Cal. 2011) ............................................ 24

*Miranda v. Coach, Inc.*, No. 14-CV-02031-JD, 2015 WL 1788955 (N.D. Cal. Apr. 17, 2015) ..... 3

*Morillion v. Royal Packing Co.*, 22 Cal.4th 575 (2000) .......................................................... 2, 3

*O'Donnell v. TD Ameritrade, Inc.*, 2008 U.S. Dist. LEXIS 49829 (S.D. Cal. 2008).................... 25

*Otsuka v. Polo Ralph Lauren Corp.*, No. C 07-02780 SI, 2010 WL 366653 (N.D. Cal. Jan. 25,

2010) ..................................................................................................................... 3, 15, 23

*Pace v. PetSmart*, 2014 U.S. Dist. LEXIS 77727 (C.D. Cal. June 3, 2014)................................. 18

*Rai v. Santa Clara Valley Transp. Auth.*, 308 F.R.D. 245 (N.D. Cal. 2015) ............................... 16

*Rodriguez v. Nike Retail Servs.*, 2016 U.S. Dist. LEXIS 110961 (N.D. Cal. Aug. 19, 2016)..........

...................................................................................................................... 1, 3, 13, 14

*Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319 (2004)........................................... 24

*Scott-George v. PVH Corp.*, 2015 U.S. Dist. LEXIS 157410 (E.D. Cal. Nov. 19, 2015) ............. 18

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003)................................................................... 22

*Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466 (C.D. Cal. 2012) ...................................... 13

*Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159

(C.D. Cal. 2002)................................................................................................................ 22

*Troester v. Starbucks Corp.*, 2016 WL 8347245 (9th Cir. June 2, 2016)..................................... 16

**Statutes**

Cal. Lab. Code §§ 201-203 ................................................................................................... 2, 18

Cal. Labor Code § 204 ................................................................................................................ 5

Cal. Lab. Code § 212, *et seq.* ......................................................................................... 2, 4, 18

Cal. Lab. Code § 213, *et seq.* ......................................................................................... 2, 4, 18

Cal. Lab. Code § 226(a), *et seq.* ............................................................................... 2, 6, 19, 20

Cal. Lab. Code § 510(a) .............................................................................................................. 5

**Other Authorities**

DLSE Enforcement Policies and Interpretation Manual, § 49.2.4 (2002) ...................................... 5

DLSE Enforcement Policies and Interpretation Manual, § 49.2.4.1 (2002) ................................... 5

DLSE Opinion Letter 1991.03.06 ..................................................................................................... 5

DLSE Opinion Letter 2002.05.17 ......................................................................................... 19, 20

DLSE Opinion Letter 2008.07.07 ..................................................................................................... 4

DLSE Opinion Letter 2008.07.07-2 .................................................................................................. 4

IWC Wage Order No. 7-2001 ........................................................................................................... 2

**Rules**

Fed. R. Civ. P. 23, *et seq.* .................................................................................................. passim

1

**I.      INTRODUCTION**

2           Through this wage and hour class action, Plaintiff Ser Lao ("Plaintiff" or "Lao")

3    challenges three undisputed common, company-wide policies and practices of Defendant H&M

4    Hennes & Mauritz, L.P. ("H&M" or "Defendant").

5           First, H&M requires all California retail store employees to undergo security checks <u>after</u>

6    <u>clocking-out</u>, but before leaving the store for breaks or at the end of their shifts. Significantly, all

7    employees exiting the store—regardless of whether they are carrying a bag, a jacket or just a

8    phone in their pocket—must participate in the security screening. The security check, by design,

9    is conducted off-the-clock, such that H&M avoids paying employees for time spent under its

10   control.[1] H&M's liability for the second cause of action (unpaid minimum wages), third cause of

11   action (unpaid overtime compensation) and fifth cause of action (unpaid premium pay for missed

12   rest breaks) rises and falls on the same off-the-clock security inspection policy. Consequently,

13   class certification on these claims is warranted.

14          H&M cannot meaningfully contest class certification on the security inspection related

15   claims. To this end, at least six different United States District Court decisions (including two

16   issued by judges in this courthouse), have certified claims nearly identical to the ones alleged by

17   Plaintiff. The reason for this is self-evident. As noted by the Honorable Beth Labson Freeman,

18   "it's implausible to think that someone is not under the control of their employer when their

19   personal property or their body is being inspected."[2]

20          Second, H&M openly admits that, as a matter of company-wide policy and practice,

21   Defendant automatically issues Money Network ATM cards ("Money Network Paycard") for

22   final wage payments to separated employees, without any inquiry or consideration given to

23   whether the employee consented to this method of pay. The Money Network Paycard imposes

24   various fees on an employee, including charges for using the card at non-network ATM

25   machines, and essentially forces an employee to spend money to access their earned wages.

26   ---

27   [1] While H&M considers the security check a "theft prevention policy," it is H&M that is actually stealing wages from its employees.

28   [2] *See* The Reporter's Transcript of Proceedings on the hearing held on June 30, 2016, before the Honorable Beth Labson Freeman on Plaintiff Isaac Rodriguez's Motion for Class Certification in the matter of *Rodriguez v. Nike Retail Servs.*, 2016 U.S. Dist. LEXIS 110961, which is attached to Plaintiff's Request for Judicial Notice ("RJN") as Exhibit D at 21:8-9.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

Consistent with H&M policy, employees who have withheld their consent—and even objected—to receiving their wages on a Money Network Paycard are involuntarily compelled to accept this method of payment. This results in a clear violation of Labor Code sections 212 and 213(d), which require that an employer obtain the employee's authorization before issuing wages in the form of a paycard. This claim presents a pure question of law subject to class-wide adjudication. Thus, Plaintiff seeks to certify the Money Network Paycard Class with respect to the Sixth Cause of Action for violation of California Labor Code sections 201 to 203 for failure to pay earned and unpaid wages at the time of separation.

Third, it is undisputed that, whenever H&M pays "overtime recalculations," Defendant fails to specify the applicable hourly rates and number of hours worked on the employee's wage statement. Consistent with California law, when an employee works overtime in the same period that he or she earns a bonus and/or non-discretionary incentive pay, H&M factors the extra compensation into the employee's regular rate of pay.[3] However, rather than provide wage statements that specified the higher actual regular rate of pay and number of hours worked, H&M opted to combine the additional compensation with the bonus itself, such that it would be paid in one lump sum. This is a clear violation of Labor Code section 226(a)(9) and an ideal question for class-wide adjudication.

## II.    LEGAL PRINCIPLES

### A.    California Law Requires All Non-Exempt Employees to Be Paid For All Hours Spent Under the Control Of The Employer

The IWC Wage Order at issue here requires employers to pay employees for all "hours worked." IWC Wage Order No. 7-2001. "Hours worked" is defined as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." *Id.* § 2(G).

As the California Supreme Court held in *Morillion v. Royal Packing Co.*, 22 Cal.4th 575, 582 (2000), an employee must be paid whenever he or she is "subject to the control of an

---

[3] Whenever an employee works overtime in the same pay period as earning this extra compensation, California law requires that such compensation be factored into the regular rate of pay, such that the overtime rate is higher. For example, if an employee earns a base hourly rate of $10, the overtime rate of 1.5x is $15/hr. However, if the employee earns any type of non-discretionary incentive pay in the same pay period, the base rate must factor in the bonus, such that the overtime rate will be slightly higher than $15/hr.

1  employer." In *Morillion*, the California Supreme Court considered whether employees must be

2  compensated for time spent riding an employer-provided bus to the fields where they worked. *Id.*

3  at 586-87. The employer required the employees to ride the bus to the fields. Given that the

4  employer controlled the employee's activities by requiring them to ride the buses, the California

5  Supreme Court held that this time must be paid. *Id.*

6      Similarly, here, H&M Hennes & Mauritz, L.P. ("H&M" or "Defendant") requires all of its

7  employees to undergo a security check after clocking-out whenever these employees leave the

8  store, which includes a visual inspection, as well as a physical inspection of the contents of any

9  bags brought onto the premises. These security checks are mandated by company policy. As such,

10  Plaintiff alleges that these employees are under H&M's control and, therefore, should be paid.

11  *See, e.g.*, *Greer v. Dick's Sporting Goods, Inc.*, No. 2:15-cv-01063-KJM-CKD, 2017 U.S. Dist.

12  LEXIS 57165, at *4 (E.D. Cal. Apr. 12, 2017) (certifying a "security check class" of "all non-

13  exempt or hourly paid employees who worked for Defendant in its DSG retail stores"); *Rodriguez

14  v. Nike Retail Servs.*, 2016 U.S. Dist. LEXIS 110961, at *24 (N.D. Cal. Aug. 19, 2016) (granting

15  motion for class certification; "Nike's arguments that employees are not suffered or permitted to

16  work when they have clocked out and are waiting for an exit inspection, and that this time is not

17  compensable as work, are unpersuasive"); *Chavez v. Converse, Inc.*, 15-cv-03746-NC, Dkt. No.

18  89 (N.D. Cal. Sept. 22, 2016);[4] *Miranda v. Coach, Inc.*, No. 14-CV-02031-JD, 2015 WL

19  1788955, at *2 (N.D. Cal. Apr. 17, 2015) (holding that the "plaintiffs' claims under the California

20  Labor Code are viable and will go forward"; the plaintiffs alleged that all employees were

21  required to undergo security checks before leaving the store); *Otsuka v. Polo Ralph Lauren Corp.*,

22  No. C 07-02780 SI, 2010 WL 366653, at *5 (N.D. Cal. Jan. 25, 2010) ("Polo does not dispute

23  that it maintains a uniform policy requiring employees to submit to bag searches, or that it does

24  not compensate employees for time spent waiting for these searches"); *Kurihara v. Best Buy Co.*,

25  2007 WL 2501698, at *6 (N.D. Cal. Aug. 30, 2007) ("whether Best Buy's employee inspection

26  policy was unlawful and/or interfered with its employees' entitlement to meal and rest periods-is

27  the 'dominant issue' in the case").

28

---

[4] The *Chavez* Order Granting Class Certification is attached as Exhibit E to Plaintiff's RJN.

3

1

2

### B.    California Prohibits Issuance of Wages Through the Use of an ATM-like Paycard Without Employee Consent

Labor Code section 212(a) unequivocally prohibits the payment of wages in any manner that is not "negotiable and payable in cash, on demand, without discount, at some established place of business in the state, the name and address of which must appear on the instrument." Cal. Lab. Code § 212(a). An employer also may not pay wages using "[a]ny scrip, coupon, cards, or other thing redeemable, in merchandise or purporting to be payable or redeemable otherwise than in money." *Id.* Labor Code section 213(d) further states, in relevant part, that an employer may pay employees by "depositing wages due or to become due or an advance on wages to be earned in an account in any bank, savings and loan association, or credit union of the employee's choice with a place of business located in this state, ***provided that the employee has voluntarily authorized that deposit***." Cal. Lab. Code § 213(d) (emphasis added). Taken together, sections 212(a) and 213(d) require that an employer obtain the employee's authorization before issuing wages in the form of a paycard.

The Department of Labor Standards Enforcement ("DLSE"), moreover, has issued two opinion letters on the legality of payment by electronic paycards. *See* DLSE Opinion Letters 2008.07.07 and 2008.07.07-2.[5] In fact, one of the DLSE opinion letters was in response to questions from the Money Network—the very same company that issued the Paycard in this case—regarding the legality of its paycards under California's Labor Code. The other Opinion Letter issued by the DLSE to National Debit Card/Hewitt Associates (issued on the same day as the DLSE Opinion Letter to Money Network) also dealt with the identical issue of the legality of the issuance of pay via paycard method. In both instances, the DLSE issued near identical requirements.

Both Opinion Letters provide that the paycard method is only to be used as an "alternative for employees receiving their wage payment"—*i.e.* participation in the program must be "optional." *See* RJN, Ex. C at p. 3. The DLSE further stated that the employee must "voluntarily and specifically authorize" the payment of wages via paycard. *See* RJN, Ex. B at p. 6.

---

[5] Copies of DLSE Opinion Letters 2008.07.07 and 2008.07.07-2 are attached as Exhibits B and C, respectively, to Plaintiff's RJN.

4

1   Additionally, if the paycard imposes any fees and charges on employees in accessing their wages,

2   the paycard also violates Labor Code sections 212 and 213. The paycard can also violate Labor

3   Code sections 201to 203 if the employee cannot fully access their earned wages as a result of any

4   fees or charges incurred as a result of using the paycard. In this regard, the paycard program must

5   "provide for immediate and free access to an employee's wages in full." *See* RJN, Ex. B at p. 9.

6       Here, there is no dispute that H&M's Money Network Paycard policy violates these legal

7   principles.

8   **C.      California Law Requires All Overtime Wage Payments, Including Overtime
            Adjustments, to Specify the Applicable Hourly Rates and Number of Hours**

9   **Worked**

10      California Labor Code section 510(a) provides that overtime "shall be compensated at the

11  rate of no less than one and one-half times ***the regular rate of pay for an employee***." (Emphasis

12  added). It is well-settled that all non-discretionary and/or incentive compensation, including

13  bonuses, must be included in the regular rate of pay. As recently explained by the Court of

14  Appeal in *Faulkinbury v. Boyd & Assocs., Inc*., "[b]onus payments, with certain exceptions[,] are

15  included in the calculation of overtime. Bonuses based on incentive must be calculated into the

16  employee's wages to determine the 'regular rate of pay.'" 216 Cal. App. 4th 220, 239-40 (2013)

17  (citing DLSE Opinion Letter 1991.03.06).

18      The regular rate when a bonus is paid is calculated by:

19      [D]ividing the bonus by the total hours worked during the period to which the
        bonus applies. The total hours worked for this purpose will be all hours, including

20      overtime hours…. The employee will be entitled to an additional half of the
        regular bonus rate for each time and one-half hour worked and to an additional full

21      amount of the bonus rate for each double time hour, if any.

22  *Marin v. Costco Wholesale Corp*., 169 Cal. App. 4th 804, 813 (2013) (citing DLSE Enforcement

23  Policies and Interpretation Manual, §§ 49.2.4 & 49.2.4.1 (2002)). As further explained by the

24  Court of Appeal in *Marin*, the employee must be paid an ***adjusted overtime rate*** which includes

25  the bonus "at the same time as the other earnings for the week, or no later than the payday for the

26  next regular payroll period." 169 Cal. App. 4th at 813 (citing Cal. Labor Code § 204).

27      In this lawsuit, Plaintiff does not contend that Defendant failed to comply with such

28  adjustment of overtime pay. Rather, in this lawsuit, Plaintiff alleges that the wage statements that

5

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

1   accompanied such overtime adjustment wage payments failed to comply with the strict legal

2   requirements of Labor Code section 226(a). Specifically, Labor Code section 226(a) requires

3   Defendant to provide an itemized wage statement that lists "all applicable hourly rates in effect

4   during the pay period and the corresponding number of hours worked at each hourly rate by the

5   employee." Cal. Lab. Code § 226(a)(9). As discussed herein, Defendant did not identify the

6   applicable rate and hours utilized in its overtime recalculation, but simply listed it as a gross,

7   lump sum amount.

8   **III.   FACTUAL AND PROCEDURAL BACKGROUND**

9        **A.   Defendant's Mandatory, Off-the-Clock Security Check Policy**

10       As there is no dispute about the actual policy at issue, the factual recitation necessary for

11   the instant Motion is relatively simple. H&M operates approximately 80 retail and outlet stores

12   throughout the State of California. (May Depo. at 49:17-50:1.)[6] H&M maintains set company

13   policies that apply to all of its California retail locations and with which all California employees

14   are to comply. (May Depo. at 130:7-16, 132:17-133:19, 136:10-17, 142:10-143:10, 143:15-25,

15   144:21-145:12, 146:10-147:3, 147:8-23, 148:3-20, 149:12-150:3, 150:4-14, 151:19-22.)

16   Specifically, H&M mandates that <u>all</u> of its retail employees submit to a "security check" before

17   exiting the store at any time—whether at the end of a shift or during a break—regardless of

18   whether they have a bag or not. (May Depo. at 106:6-107:21, 110:15-111:18, 113:25-114:4,

19   128:22-129:1, 130:7-16, 135:1-24, 136:18-137:1, 140:14-141:5, 144:1-16, 145:5-12, 146:22-

20   147:3, 147:8-23, 150:4-14, 150:22-151:6, 156:3-22; Fritt Depo. at 34:17-35:6, 46:11-15; Lao

21   Depo. at 114:21-115:6, 115:22-116:4, 119:21-121:4, 136:9-20, 139:3-12, 139:24-140:4, 144:2-

22   15; May Depo. Ex. 104-10; May Depo. Ex. 105-22; May Depo. Ex. 106-10; May Depo. Ex. 107-

23   10; May Depo. Ex. 108-10; May Depo. Ex. 109-10; May Depo. Ex. 110-16; May Depo. Ex. 110-

24   22.) In other words, whenever an employee leaves the store, he or she must meet with the

25   manager at the store entrance/exit and undergo a visual inspection, which consists of the manager

26   visually inspecting the employee to ensure that the employee does not have a bag or any unpaid

27

28   [6] Deposition testimony is referenced as "([Last Name] Depo., [page]: [lines])." Deposition testimony and deposition exhibits cited herein are attached to Plaintiff's Compendium of Evidence as follows: Plaintiff (Ex. 3); Corey May (Ex. 4); Naomi Fritt (Ex. 5); Monica Frank (Ex. 6); and Cindy Bernabe (Ex. 7).

merchandise. (May Depo. at 120:9-13, 144:6-16; Fritt Depo. at 33:3-9, 33:24-34:2, 34:17-35:6, 46:11-15.) Further, when an employee brings a bag, the employee must also open his or her bag so the manager can conduct a visual inspection of the contents of the bag. (May Depo. at 161:10-19; Fritt Depo. at 33:3-9.) All security checks are to be performed at the point of exit, which is at the front entrance of each store. (May Depo. at 112:11-17, 120:9-13, 144:6-16; Fritt Depo. at 46:11-15). H&M has not changed its off-the-clock security check policy and the same policy has been in place over the entire class period. (May Depo. Ex. 104-10; May Depo. Ex. 105-22; May Depo. Ex. 106-10; May Depo. Ex. 107-10; May Depo. Ex. 108-10; May Depo. Ex. 109-10; May Depo. Ex. 110-16).

H&M's admitted company policy, moreover, is that time spent waiting for and submitting to security or bag checks *is off-the-clock:*

> Q: But regardless of when they clock out, whether it's before or after notifying the manager, the search itself is always done after the employee clocks out, correct?
> A: I can't think of a time when it wouldn't be.

(May Depo. at 107:6-11, 123:5-19.)

Indeed, the layout of the store, including the placement of time clock in relation to where the security check occurs, makes it so that employees must clock-out before initiating the security check process. In this regard, there are no stores in California that have a time clock at a point of ingress or egress used by employees. (May Depo. 99:14-17.) H&M houses all employee time-clocks in the "back of the house" away from the sales floor. (May Depo. 51:20-52:22, 53:1-14, 54:3-12, 54:13-23, 65:25-66:8, 69:3-14, 70:19-25, 77:6-12, 81:3-10, 84:21-24, 88:2-17, 90:21-91:7, 93:25-94:3, 96:10-12.) Although the store layouts may vary, the back of the house is generally not in close proximity to the front entrance of the store. (May Depo. 54:13-23.) The back of the house is always located in the rear of the store for single-level stores, and in the basement or the top floor for most of Defendant's multi-level stores. (May Depo. 60:8-61:5, 76:16-18, 79:17-80:15, 98:25-99:7.) Additionally, there are no California stores where "the back of the house has a clear line of sight to the exit." (May Depo. 145:17-22.)

As further shown above, all security checks are to take place at the front entrance of each retail store. (May Depo. at 112:11-17, 120:9-13, 144:6-16; Fritt Depo. at 46:11-15.) Thus, it

would clearly be impractical and illogical for employees to first be checked at the front of the store, then walk all the way through to store to clock out, and then walk through the store again to the front entrance without having to be checked again. Rather, and as supported by Defendant's own testimony, the logical process is for the employees to first clock out, then walk through the store, and finally get checked at the front entrance and released from the store, and thereby resulting in the security check being performed off-the-clock.

**B.      Defendant's Class-Wide Practice Regarding the Use of a Money Network Paycard For Payment of Final Wages**

When an employee starts employment with Defendant, he/she is given an option of having his/her wages paid via direct deposit or a Money Network Paycard, an ATM-like paycard. (Bernabe Depo. 23:11-24:17, 43:10-19.) The employee is paid his/her normal payroll period wages in the manner the employee previously designated. (Bernabe Depo. 94:3-16.) With respect to the Money Network Paycard, there are various fees associated with its usage. (Bernabe Depo. 48:24-49:9, 78:22-79:4, 79:7-10.)

However, if the employee previously rejected the Money Network Paycard option (i.e., selected payment via live check or direct deposit), it is undisputed that Defendant still automatically issues the Money Network Paycard to its separated employees (by termination or resignation) for their final wages:

> Q. So would you agree with me that for all California employees their final paycheck are always issued through a pay card?
> A. Yes.
> Q. Whether or not they've agreed to accept the pay card option previously; is that correct?
> A. Yes.

(Bernabe Depo. 52:5-20, 57:19-59:12, 67:7-21, 126:22-127:9, 128:13-17, Bernabe Depo. Ex. 123). Defendant admits that does not obtain any sort of authorization from such employees in order to pay the final wages via Money Network Paycard. (Bernabe Depo. 57:6-59:12, 127:5-25, 129:17-25, 130:10-19, 130:20-132:17.)

**C.      Defendant's Class-Wide Practice Regarding Defective Wage Statements**

Defendant pays various non-discretionary incentive pay to its California non-exempt employees, which is then included in the recalculation of overtime pay. (Frank Depo. 34:7-35:12, 36:5-18, 38:5-40:2, 42:21-44:10, 46:25-47:3, 53:6-20, 56:4-57:17; Frank Depo. Exhs. 135-139).

8

Although the overtime recalculation consists of a computation of the employee's adjusted higher hourly overtime rate of pay and the applicable number of hours, the overtime recalculation is rolled into the bonus itself, such that it appears as a gross, lump sum on the employee's wage statement. (Frank Depo. 68:7-25). Thus, the applicable hourly rate and number of hours worked for the recalculated overtime payment does not appear on the wage statement and the only way for the employee to verify whether the item was correctly calculated is to call the compensation department. (Frank Depo. 69:2-24).

### D.   The Common Experiences of Plaintiff and Putative Class Members As to the Alleged Claims[7]

Plaintiff was employed by Defendant as an hourly, non-exempt employee from on or about March 7, 2014 to on or about September 23, 2015, at Defendant's retail store located in Fresno, California. (Lao Depo. at 29:25-30:4, 58:21-59:8.). During his employment with Defendant, Plaintiff selected to have his wages paid to him via direct deposit. (Lao Depo. at 91:13-23; Lao Decl. ¶ 6.)

Similar to other putative class members, Plaintiff was subject to security checks whenever he left the store, which included undergoing a visual inspection, as well as opening any bags he had with him.[8] (Lao Depo. at 114:21-115:6, 115:22-116:4, 119:21-121:4, 136:9-20, 139:3-12, 139:24-140:4, 144:2-15; Lao Decl. ¶¶ 3-5.) This entire process, from the point of clocking out to waiting for a manager to perform the security check and allowed to leave the store, could take significant time, all of which was unpaid.[9] (Lao Depo. at 130:21-24, 132:3-5; Lao Decl. ¶¶ 3-5.) With respect to rest breaks, while rest breaks were taken on-the-clock, because of the security check, the actual amount of time an employee received for an unfettered rest break was cut short to less than ten (10) minutes.[10] (Lao Decl. ¶ 3.)

---

[7] The declarations of Plaintiff and putative class members Deshanay Harris, Shawn'Nel Brown, Wayne Santos, Ian Mitchinson, Malik Richardson, Charlotte O'Connor, Lily Llagas, Alexander Martinez, and Duart Souza are attached to the Compendium of Evidence as Exhibits 8 to 17.

[8] *See also* A. Martinez Decl. ¶ 3; C. O'Connor Decl. ¶ 3; D. Harris Decl. ¶ 3; L. Llagas Decl. ¶ 3.

[9] *See also* A. Martinez Decl. ¶ 5 ("The entire check-out process would take 10-15 minutes."); C. O'Connor Decl. ¶ 3 ("During holidays and busier times, the security checks…could take up to 8 minutes…"); D. Harris Decl. ¶ 3 ("The average amount of time it took to undergo the security check was approximately 10-15 minutes"); M. Richardson Decl. ¶ 3 ("On average, the security check process took about 15 minutes"); W. Santos Decl. ¶ 3 ("On average, the security check process took 5-10 minutes, with the longest security checks taking 15 minutes").

[10] *See also* C. O'Connor Decl. ¶ 4 ("…the security check time would cut into my breaks…"); I. Mitchinson Decl. ¶ 4 ("A lot of employees complained to me that they were actually getting 4-5 minute rest breaks"); D. Sousa Decl. ¶ 7

9

Significantly, Plaintiff was subjected to a security check even on the days where he did not carry a bag. (Lao Decl. ¶ 4; Lao Depo. 119:21-120:11.) Several putative class member declarations support the conclusion that, even without a bag or jacket, employees remain subject to a visual inspection.[11]  During his employment, Plaintiff also worked overtime hours and earned non-discretionary bonus pay during such pay periods. (Lao Depo. 189:14-25; Frank Depo. 64:16-65:25; Frank Depo. Ex. 140.) As such, Plaintiff also received recalculated overtime wage payments. (Frank Depo. 64:16-65:25, 68:21-25, 69:2-24, 72:17-74:2, Frank Depo. Ex. 140.) However, consistent with its admitted practice, Defendant's wage statements issued to its California employees are all in this same format, including those issued to Plaintiff—i.e., they lacked the applicable rate and overtime hours for such recalculated overtime wage payments. (Frank Depo. 63:22-64:9, 68:21-25, 69:2-24, 72:17-74:2, Frank Depo. Ex. 140).

Finally, despite having rejected the payment of wages via paycard, when Plaintiff's employment was terminated, Plaintiff was forced to receive his final pay via paycard. (Lao Depo. 88:15-19, 88:25-89:3, 90:2-6; Lao Decl. ¶ 6). In that regard, Plaintiff also incurred fees in the use of his paycard, which thus resulted in his final wages being shorted. (Lao Dep. 96:13-20, 97:12-17; Lao Decl. ¶ 6).

### E.    Procedural Background

Plaintiff filed a class-action complaint on December 11, 2015, in Santa Clara Superior Court. The Complaint alleges causes of action for: (1) violation of California Labor Code section 226(a) for failure to provide accurate wage statements; (2) violation of California Labor Code section 558, 1194, 1197 and 1197.1 for failure to pay minimum wages; (3) violation of California

---

("Even though my 10-minute breaks and lunches were frequently delayed as a result of the mandatory bag checks, I was not allowed to extend them to recoup the time").

[11] (*See* A. Martinez Decl. ¶ 3 [ "At both the Topanga and San Diego Stores, I would have to wait and undergo a visual inspection even if I did not have a bag"]; D. Harris Decl. ¶ 3 ["I still had to undergo a security check even if I did not have a bag"]; D. Sousa Decl. ¶ 8 ["…even if I was not carrying a bag, I was still subject to the security check protocol. I had to locate a manager or supervisor and wait for his or her 'okay' to leave. Only then, was I allowed to physically leave the premises"]; L. Llagas Decl. ¶ 3 ["If I did not have a bag, I still had to undergo visual inspection. I had to find the manager and wave to him/her so that they could make sure that I did not have a bag"]; S. Brown Decl. ¶ 3 ["I still had to undergo the security check even if I did not have a bag. Specifically, I had to undergo a visual inspection by the manager, meaning that the manager had to look at me to make sure that I did not have any merchandise or a bag"]; W. Santos Decl. ¶ 3 ["Even if I did not have a bag, I still had to undergo a visual inspection, which included allowing the manager to physically see me and look at my hands to make sure that I did not have a bag, or any merchandise. In other words, the security check was done while I was off-the-clock"]).

Labor Code sections 558, 1194, 1197 and 1197.1 for failure to pay overtime wages; (4) violation

of California Labor Code sections 226.7 and 512 for failure to provide proper meal breaks; (5)

violation of California Labor Code section 226.7 for failure to provide proper rest breaks; (6)

violation of California Labor Code sections 201 to 203 for failure to pay earned and unpaid wages

at the time of separation; (7) violation of California Labor Code section 2698 ("PAGA"); and (8)

violation of California Business and Professions Code section 17200 *et seq.* for unfair business

practices. [12] On January 21, 2016, Defendant removed the matter to this Court.

On September 12, 2016, Defendant took the deposition of Ser Lao. (Lee Decl. ¶ 3). On

November 1, 2016, Plaintiff took the deposition of Naomi Fritt, who was designated as

Defendant's FRCP 30(b)(6) witness for topics for topics related to the security camera systems in

Defendant's locations and the storage of video footage, and Corey May, who was designated as

Defendant's FRCP 30(b)(6) witness regarding Defendant's policies, practices and procedures

related to employee security checks. (Lee Decl. ¶¶ 4, 5.) On November 18, 2016, Plaintiff took

the deposition of Cindy Bernabe, who was designated as Defendant's FRCP 30(b)(6) witness for

topics related to Defendant's policies, practices and procedures related to the payment of wages,

including the final payment of wages, and its payroll and timekeeping systems, and Monica

Frank, who was designated as Defendant's FRCP 30(b)(6) witness for topics related to

Defendant's payment of non-discretionary inactive pay and/or bonuses and the inclusion of such

pay into the regular rate, on November 18. (Lee Decl. ¶¶ 6, 7.)

During the discovery phase of this lawsuit related to class certification, Plaintiff also

sought written discovery, including Plaintiff's First Set of Interrogatories, which Defendant

responded to on July 18, 2016. (Lee Decl. ¶ 2, Ex. 1.) Defendant served Supplemental Responses

on August 29, 2016. (Lee Decl. ¶ 2, Ex. 2.)

## IV.   ALL OF THE REQUIREMENTS FOR CLASS CERTIFICATION ARE EASILY ESTABLISHED

Rule 23 of the Federal Rules of Civil Procedure authorizes class actions when the class is

---

[12] For purposes of this Motion for Class Certification, Plaintiff does not seek certification as to the Fourth Cause of Action for failure to provide meal breaks. Moreover, Plaintiff also does not seek certification of the Seventh cause of action for PAGA. It is well-settled that PAGA claims need not be certified, although the PAGA claim will be pursued on behalf of the State of California and other aggrieved employees as a representative action. *See McKenzie v. Fed. Express Corp.*, 765 F. Supp. 2d 1222, 1232-34 (C.D. Cal. 2011).

11

so numerous that joinder of all members is impracticable, there are questions of law or fact common to the class, the claims or defenses of the representative parties are typical of the claims or defenses of the class, and the representative parties will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). Additionally, the requirements of at least one subsection of Rule 23(b) must be satisfied.

### A.   The Requirements of Fed. R. Civ. P. 23(a) are Met

#### 1.   The Classes Are Ascertainable and Meet Numerosity

There can be no dispute that the Class Plaintiff seeks to certify is ascertainable and sufficiently numerous. Rule 23(a)(1) requires the proposed class to be "so numerous that joinder of all members is impracticable." "'Impracticability' does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964) (citation omitted). Here, Defendant has identified at least 10,860 non-exempt retail store employee who belong to the Class. (Lee Decl. ¶ 2, Ex. 2.) With respect to the Money Network Paycard Class, Defendant has refused to provide the exact number of individuals. (Lee Decl. ¶ 2, Ex. 1.) However, Defendant has identified at least 1,194 individuals who received their final pay via a paycard.[13] (Lee Decl. ¶ 2, Ex. 1) and at least 3,325 non-exempt employees who belong to the Overtime Recalculation Wage Statement Class. (Lee Decl. ¶ 2, Ex. 2.) Thus, not only is the class sufficiently numerous, but clearly ascertainable from Defendant's own records.

#### 2.   There Are Common Questions of Law and Fact

The proposed Class satisfies the commonality requirement. There must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). This requirement "has been construed permissively." *Hanlon v. Chrysler Corp*., 150 F.3d 1011, 1019 (9th Cir. 1998). Indeed, "[t]he existence of even one significant issue common to the class is sufficient to warrant certification." *Californians for Disability Rights v. Dept. of Transp*., 249 F.R.D. 334, 346 (N.D. Cal. 2008); *see also Abdullah v. U.S. Sec. Assoc.'s, Inc*., 731 F.3d 952, 957 (9th Cir. 2013) ("all that Rule

---

[13] Plaintiff's counsel is further meeting and conferring with Defendant to obtain the actual number, which may include Plaintiff filing a discovery motion.  Plaintiff expects to obtain this number prior to the filing of his Reply Brief to this Motion.

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

23(a)(2) requires is 'a single significant question of law or fact'"). Commonality is satisfied "where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001). This case contains three distinct issues, each of which contain only a limited question of law and fact and which easily satisfy the commonality requirement as to the Class seeking certification in this action.

### a. There Is a Common Question as to Whether the Security Checks Are Hours Worked Under California Law

The first question presented by this case is quite simple: Should Defendant's mandatory security checks be deemed as "hours worked" under California law?

Plaintiff anticipates that Defendant will focus on alleged differences in the damages suffered by putative class members in an attempt to demonstrate lack of commonality. However, differences in damages are not a proper basis for undermining commonality. Commonality in this instance simply requires that class members be subject to a common policy or practice—unpaid bag or security checks—not that all putative class members suffered the same harm. *Leyva v. Medline Indus. Inc*., 716 F.3d 510, 513-14 (9th Cir. 2013) (holding that purported differences in damages cannot defeat class certification: "the presence of individualized damages cannot, by itself, defeat class certification under Rule 23(b)(3)"); *In re High-Tech Employee Antitrust Litig*., 985 F. Supp. 2d 1167, 1185 (N.D. Cal. 2013) ("even after *Comcast*, under Ninth Circuit law, the fact that damages calculations would require individualized inquiries does not defeat certification of a Rule 23(b)(3) class"; "[t]hus, so long as 'damages will be calculated based on the wages each employee lost due to [defendant]'s unlawful practices,' *Comcast* does not pose a barrier to class certification"); *Tait v. BSH Home Appliances Corp*., 289 F.R.D. 466, 485-86 (C.D. Cal. 2012) ("Statute of limitations defenses—like **damage calculations**, affirmative defenses, and counterclaims—**rarely defeat class certification**.") (emphasis added).

### i. Security Check Cases Are Aptly Suited for Class Treatment

Indeed, several courts have certified a security check claims, notwithstanding argument that variations across employees and stores create individualized issues.

*Rodriguez v. Nike Retail Services* cements this point. 2016 U.S. Dist. LEXIS 110961, at *1 (N.D. Cal. Aug. 19, 2016). Striking parallels exist between H&M's security check procedures

13

and those at issue in *Rodriguez*: 1) Nike maintained "a uniform policy of requiring all employees to be inspected when they leave the store, even if this means employees have to wait for a manager, supervisor, or security guard to become available to do the inspection;" and 2) Nike lacked a uniform policy "providing payment for time spent for exit inspections," including any potential wait time. *Id*. Despite the existence of its undisputed policy, Nike maintained that individualized inquiries predominated. Judge Freeman directly rejected this argument.

Nike argued that individualized issues are necessary to determine liability because some employees "clock out of work and then linger in the store for personal reasons." *Rodriguez*, 2016 U.S. Dist. LEXIS 110961, at *20. According to Nike, these employees were not subject to its control when they are going through or waiting for an exit inspection. *Id*. Judge Freeman summarily dismissed this "straw man" argument:

> The fact that some employees are engaging in personal activities, says Nike, means that whether employees are subject to the control of their employer after clocking out is an individualized inquiry. But this is irrelevant: Rodriguez is not asking for compensation for all the time between when an employee clocks out and when she walks out the front door. He is asking for compensation only for time spent waiting for an exit inspection or being inspected. **All employees have to be visually inspected before they can leave the store, and so no individualized inquiries are required**.

*Id.* at *20 (emphasis added). Equally unavailing was Nike's "irrelevant" argument that employees make a personal choice whether to bring a bag to work and be subjected to a bag check:

> Since employees make a decision to bring a bag, says Nike, none of them are subject to their employer's control. This argument is true so far as it goes—but it does not go far. It is literally true that only employees who bring bags (or boxes or something similar) to work get their bags checked when they leave. **But this characterization of Nike's employee exit procedures omits the fact that all employees must be visually inspected by a manager, supervisor, or contract security before they can leave the store, whether or not they have a bag**.

*Id. at* *21 (emphasis added). In other words, an employee subject to either type of inspection—a bag check or visual inspection—by the employer "may still be subject to the employer's control." *Id.* at *22. The same logic applies here.

The court in *Chavez v. Converse* also granted class certification on a nearly identical security check claim as the one alleged by Plaintiff. *See* RJN at Ex. E. The *Chavez* Court granted class certification dispute the absence of "a policy explicitly requiring off-the-clock bag checks." For the purpose of certification, it was sufficient for the plaintiff to demonstrate "that most, if not

14

all, Converse stores are set up such that an employee would necessarily be off-the-clock when a bag check occurs."

*Greer v. Dick's Sporting Goods, Inc.* further supports the conclusion that class certification is warranted here. 2017 U.S. Dist. LEXIS 57165 (E.D. Cal. Apr. 12, 2017). Similar to H&M, the defendant-employer maintained a loss prevention policy that instructed employees to "carry your jacket, bags, and other personal belongings to the approved associate exit when you leave the building and request that a member of management, Sales Leader or Front End Coordinator inspect your personal belongings." *Id*. at *12. Class members who did not bring a bag to work, were still required to check in with a manager and subjected to a visual inspection. *Id.* This admitted policy "applied to employees any time they left the building, regardless of whether it was the end of the shift or a shift break." *Id*. Significantly, the *Greer* Court granted class certification, despite argument of "local variation in enforcement." *Id.* at *22. As noted by the Court, "lapses in enforcement" cannot, standing alone, defeat class certification. *Id*.; *see also Kurihara*, 2007 WL 2501698, at *30 ("Where a plaintiff challenges a well-established company policy, a defendant cannot cite poor management to defend against class certification").

The District Court also reached the same conclusion in *Cervantez v. Celestica Corp.*, involved another check-out case. 253 F.R.D. 562 (C.D. Cal. 2008)*.* In that case, the district court also found that "there is a common issue of law as to whether the post-shift security line time is compensable," (*Id*. at 571) and noted that:

> Like the plaintiffs in [*Morrillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000], Plaintiffs are under the control of their employers while in the security line at the end of the shift: they cannot choose to leave the premises without going through the line, nor can they choose to run a personal errand before going through the line.

*Id*. at 572; *see also Otsuka v. Polo Ralph Lauren Corp.*, 251 F.R.D. 439, 442 (N.D. Cal. 2008) (certifying security check case notwithstanding employer's argument that the amount of time undergoing security check was *de minimis* and varied; "[a]nother practice is to conduct loss-prevention inspections (i.e. security checks for stolen merchandise) on all employees every time they leave the store, such as at the end of their shifts or to take lunch breaks").

        **ii.**      **The *De Minimis* Defense Is Not an Impediment to Class Certification**

15

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

1  Plaintiff also anticipates that Defendant will argue its *de minimis* defense as a reason to

2  defeat class certification. While the application of the *de minimis* doctrine to California law is

3  currently pending before the California Supreme Court (*see Troester v. Starbucks Corp*., 2016

4  WL 8347245, at *3 (9th Cir. June 2, 2016) (certified the question of whether the *de minimis*

5  doctrine applies to California Labor Code claims), this defense, even if ultimately viable, is still

6  susceptible to class treatment.

7  *Greer* is particularly instructive on this issue. 2017 U.S. Dist. LEXIS 57165. The *Greer*

8  Court found that variations in the amount of time employees spent off the clock could not serve as

9  a barrier to class certification. *Id*. at *18-21. In this regard, the employer argued that "the amount

10  of time spent off the clock is necessarily an individual determination because *de minimis* time is

11  not compensable." *Id*. at *18. The Court noted, however, that even if the *de minimis* doctrine

12  applied, "***there would be common questions regarding whether the class has satisfied the***

13  ***requirements of the de minimis doctrine***." *Id*. at *19 (emphasis added). Thus, the Court declined

14  "to deny certification on this speculative basis." *Id*.

15  The *Greer* Court is not alone in finding that the *de minimis* defense cannot defeat class

16  certification. In *Kurihara*, the employer also argued that security check time was *de minimis* and,

17  thus, not compensable. 2007 WL 2501698. The *Kurihara* dismissed the argument and noted that

18  the "***de minimis* defense is a matter of degree rather than kind**." *Id*. at *10-11 ("At the bottom

19  of the multi-factor *de minimis* inquiry is the simple question of how many hours were worked").

20  Indeed, as recognized by numerous courts, "the *de minimis* defense can be resolved on a class-

21  wide basis even if the amounts of time for which each representatives and class member seek

22  compensation differ." *See Rai v. Santa Clara Valley Transp. Auth*., 308 F.R.D. 245, 260-61 (N.D.

23  Cal. 2015) ("VTA's contention that it can assert 'unique' *de minimis* defenses against some of the

24  representative's claims is unpersuasive"); *Bibo v. Fed. Exp., Inc*., No. C 07-2505 TEH, 2009 WL

25  1068880, at *4 (N.D. Cal. Apr. 21, 2009) ("FedEx also asserts that the state's rule on de minimis

26  work undermines Plaintiffs' legal claim for uncompensated pre- and postliminary activities";

27  "[t]he merits of whether Plaintiffs' claims are compensable under this law are not an appropriate

28  subject for a class certification motion"); *Adoma v. Univ. of Phoenix, Inc.*, 270 F.R.D. 543, 550

16

(E.D. Cal. 2010) ("Defendants' third argument about individual inquiries is that compensation is not owed for *de minimis* overtime, and that whether time was *de minimis* must be calculated on a fact specific basis. The need to determine whether overtime was *de minimis* does not itself preclude class or collective certification.").

Here, it is undisputed that all of Defendant's California retail store employees were subjected to the very same security check policy as one another, and that the security checks were to be performed in the very manner mandated by Defendant. Specifically, as shown in Defendant's own testimony, all security checks were to be done ***after*** the employee has already clocked out. (May Depo. at 107:6-11, 123:5-19.) Based thereon, the common question to be litigated in this case is whether such security check time is compensable under California law. Once that question is answered, class-wide liability and damages can then be determined. Accordingly, this claim presents an ideal issue for class-wide adjudication, especially given H&M's undisputed common policy of requiring all of its non-exempt retail store employees to undergo security checks.

**b.    There Are Common Questions of Law and Fact as to Whether Class Members Were Denied Unfettered Rest Breaks Because of the Security Checks**

As made clear by H&M's written policies, all employees must undergo a security check whenever leaving the store, including for purported "off-duty" rest breaks. (*See* May Depo. Ex. 109-10). Thus, these security checks would undisputedly cut into an employee's off-duty rest break, such that the employee is denied the full 10-minute rest break. Courts have held that employers may not impose any limits on rest breaks, such as dictating what the employee can do during breaks, or discouraging or impeding breaks. *See*, *e.g.*, *Augustus v. ABM Sec. Servs., Inc*., 2 Cal. 5th 257, 260 (2016) ("During required rest periods, employers must relieve their employees of all duties and relinquish any control over how employees spend their break time").

Thus, H&M's denial of duty-free 10-minute rest breaks presents a common question, given that it is undisputed that all employees must undergo a security check before leaving the store to take a break. *Kurihara*, 2007 WL 2501698, at *6 ("whether Best Buy's employee inspection policy was unlawful and/or interfered with its employees' entitlement to meal and rest periods-is the 'dominant issue' in the case").

17

       **c.**      **There Are Common Questions of Law and Fact as to Whether Defendant's Policy and Practice of Paying Final Wages on a Money Network Paycard Is Lawful**

Plaintiff's paycard claim is also ideally suited for class treatment. Plaintiff presents a limited question of law and fact: Is Defendant's policy and practice of paying final wages via Money Network Paycard lawful when an employee did not specifically authorize payment of wages in that manner?

As explained in Section III(B), *supra*, Defendant readily admitted, its company-wide policy and practice is to automatically issues terminating wages to departing employees via Money Network Paycard without obtaining employee authorization. Significantly, even where the employee has previously declined payment via paycard and elected payment via direct deposit or live check, Defendant still issues the terminating wages via paycard. Further, the Money Network Paycard imposes various fees on employees, which the DLSE has concluded violate Labor Code sections 212 and 213 and, to the extent that these fees hinder access to the full wages earned, also violate Labor Code sections 201 and 203.

As it remains undisputed that H&M maintains a common corporate policy and practice of automatically issuing final wages via Money Network Paycard, this claim is perfectly suited for class-wide adjudication. Indeed, as explained by the District Court in *Scott-George v. PVH Corp.*:

> Plaintiffs assert they have clearly identified the common policy–automatically issuing the pay cards when an employee was hired– and it is the legality of this policy that is being challenged. (Reply, ECF No. 78 at 12–13.)  Plaintiffs assert that "this Court's determination as to the legality of Defendant's policy in question would "produce in one stroke answers that are central to the validity of [plaintiff's] claims." (ECF No. 78 at 13 (citing *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig*., 722 F.3d 838 (6th Cir. 2013)).)"This Court agrees. The legality of Defendant's policy—which entails automatically issuing paycards to its employees and thus puts the burden on the employees to request a different option—does not require this Court to delve into each employees' subjective perception, as Defendant asserts. The policy is an issue "central to the validity of each one of the claims" and thus predominates Subclass IV.

2015 U.S. Dist. LEXIS 157410, at *17 (E.D. Cal. Nov. 19, 2015); *Pace v. PetSmart*, 2014 U.S. Dist. LEXIS 77727, at *37 (C.D. Cal. June 3, 2014) (holding that the "following common question satisfies the commonality requirement for the Money Network Paycard Class: Is defendant's policy and practice of payment of wage via Money Network Paycard lawful when an employee has not authorized payment of wages in that manner?").

18

1

2

### d.    Defendant's Defective Wage Statements Present Predominant Questions of Law and Fact

3

4

As set forth above, Defendant admitted that it fails to specify the applicable hourly

5

overtime rates and number of hours worked for the overtime recalculations. Instead, this item is

6

lumped into the bonus payment itself, such that it will be listed only as a dollar amount without

7

any corresponding breakdown of the applicable rates and hours worked. The only way for an

8

employee to find out if the item is calculated correctly is to contact the compensation department.

9

Whether this practice complies with Labor Code section 226(a)(9) undisputedly presents a

10

common, class-wide issue.

11

Labor Code section 226(a) requires that an employer issue itemized wage statements to its

12

employees which include, among other things, "***all applicable hourly rates*** in effect during the

13

pay period and the corresponding number of hours worked at ***each hourly rate*** by the employee."

14

(Emphasis added). This section has been interpreted by courts and the DLSE, the agency charged

15

with enforcing and interpreting California's wage and hour laws, to mean that an employer is

16

required to specify each and every hourly rate and the corresponding number of hours. The DLSE

17

was presented with a virtually identical situation when an employer sought an opinion letter as to

18

whether it was required to specify the number of hours worked and applicable hourly rate for an

19

overtime adjustment. DLSE Opinion Letter 2002.05.17. The employer issued pay adjustments to

20

its employees for overtime and missed work, but did not list the hourly rates or number of hours

21

worked for these "adjustments." *Id.* The DLSE found that this practice could violate Labor Code

22

section 226(a) if "it is left to the employee to add up the daily hours shown on the time cards or

23

other records so that the employee must perform arithmetic computations to determine the *total hours worked* during the pay period." *Id.* (emphasis in original).

24

Indeed, as explained by the DLSE:

25

As a general rule, the obligation to list the total hours worked during the pay period can only be satisfied by listing the precise, actual number of hours worked. The only express exception to this requirement is that hours worked need not be listed for "any employee whose compensation is solely based on a salary and *who is exempt from payment of overtime*.... With the enactment of AB 2509, the Legislature amended Labor Code § 226 to require the listing of hours worked for all non-exempt employees, whether they are paid by salary, commission, piece rate, or on an hourly basis. The reason for this requirement is simple enough – it is designed to provide the employee with a record of hours worked, and to assist the

26

27

28

19

1
2
3
4

employee in determining whether he has been compensated properly for all of his or her hours worked. The failure to list the precise number of hours worked during the pay period conflicts with the express language of the statute and stands in the way of the statutory purpose. Thus, the answer to … whether it is permissible under section 226 to list 86.67 hours in the itemized wage statement when that is not a precise reflection of the number of hours worked in the pay period – is no, this practice violates Labor Code § 226.

5    DLSE Opinion Letter 2002.05.17 (emphasis in original).[14]

6         Courts have also repeatedly held that Labor Code section 226(a) requires an employer to

7    specify all applicable hourly rates and number of hours worked on a wage statement. *See, e.g.,*

8    *McKenzie v. Federal Exp. Corp.*, 765 F. Supp. 2d 1222, 1231 (C.D. Cal. 2011) (granted the

9    plaintiff's motion for summary judgment on Labor Code § 226(a) claim; holding that the

10   employer's failure to list all applicable hourly rates and hours worked at the rate violated Section

11   226(a), as a matter of law); *Lopez v. G.A.T. Airline Ground Support, Inc.*, 2010 WL 2839417, *5

12   (S.D. Cal. 2010) (in granting plaintiff's motion for summary judgment on Labor Code § 226(a)

13   claim, court noted that "[i]t is undisputed that GAT's paychecks do not indicate the applicable

14   hourly rate of pay for the employee's regular rate, overtime rate, or double-time rate of pay.

15   Plaintiffs' paychecks included only the total number of hours worked and the total amount paid.

16   Therefore, Plaintiffs had to perform mathematical calculations to determine if their paychecks

17   were accurate. The failure to provide this information violates Section 226(a)").

18        In this regard, Courts have consistently granted class certification of such claims. *See*

19   *Brewer v. Gen. Nutrition Corp.*, 2014 U.S. Dist. LEXIS 159380 (N.D. Cal. Nov. 12, 2014)

20   ("Because the wage statements are uniform across the class with respect to these alleged

21   violations of the statute, and proof of injury is based on what a 'reasonable person' would

22   understand from the face of those wage statements, the issues of fact and law to be determined on

23   these claims are both common and predominant"); *Balasanyan v. Nordstrom, Inc.*, 294 F.R.D.

24   550, 565 (S.D. Cal. 2013) (holding that claim for violation of Labor Code section 226(a) was

25   appropriate for class treatment; rejecting employer's argument that variances in amount of

26   penalties created individualized issues). Indeed, the California Court of Appeal just recently its

27   decision in *Lubin v. The Wackenhut Corp.*, wherein it ordered the certification of a wage

28

---

[14] Attached as Exhibit A to Plaintiff's RJN.

statement claim, rejecting any arguments of individualized injuries. 5 Cal. App. 5th 926, 931 (2016). In *Lubin*, the plaintiffs also alleged a violation of Labor Code section 226. Specifically, it was alleged in *Lubin* that the wage statements the employer provided to the employees were defective in that they failed to state the applicable rates of overtime pay—the very same claim at issue in the current lawsuit. *Id*. at 958. While the trial court originally granted class certification, the trial court later decertified the class, on the grounds that the injury element was not subject to common-wide proof. *Id*. at 958-59.

The California Court of Appeal easily found the trial court's decertification order to be erroneous. *Lubin*, 5 Cal. App. 5th 959-60. In overturning the trial court's decertification order, the *Lubin* Court held that "plaintiffs' wage statement claim is amenable to class treatment." *Id*. As the Court explained, "the question whether Wackenhut's wage statements contained the required elements under Labor Code section 226, subdivision (a) is a common question, and ***Labor Code section 226, subdivision (e)(2)(B)(i) clarifies that injury arises from defects in the wage statement***, rather than from a showing that an individual experienced harm as a result of the defect." *Id*. (emphasis added). Based thereon, the *Lubin* Court ordered that the wage statement claim to be certified as a class claim. *Id*.  The *Lubin* Court's holding is directly on point, both factually and legally. Specifically, just as in *Lubin*, the wage statement claim here involves Defendant's admission that its wage statements failed to identify the applicable rates of pay. Factually, the claims in this lawsuit are nearly identical to the claims in *Lubin*. Thus, *Lubin* further supports the granting of class certification.

### 2. Representative Plaintiff's Claims Are Typical

Typicality is readily satisfied. In *Hanlon*'s permissive standards, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. It is enough if named Plaintiff and class members share a "common issue of law or fact.'" *California Rural Legal Assistance v. Legal Servs. Corp.*, 917 F.2d 1171, 1175 (9th Cir. 1990) (citations omitted). Under the low threshold of typicality, all that is required is that each plaintiff has an incentive to prove defendant's liability. *Thomas & Thomas Rodmakers, Inc. v. Newport Adhesives & Composites, Inc.*, 209 F.R.D. 159,

21

1   165 (C.D. Cal. 2002).

2         Here, the proposed representative Plaintiff seeks recovery based upon the same legal

3   theories and factual circumstances as the Class that he represents. The claims in the current case

4   rise and fall on the determination of whether: 1) employees should have been compensated for

5   time spent undergoing off-the-clock security checks; 2) H&M's policy and practice of payment of

6   wages via Money Network Paycard is lawful when an employee has not authorized payment of

7   wages in that manner; and 3) H&M's failure to specify the adjusted overtime rate of pay and

8   number of hours worked for the overtime recalculations. Based on the same evidence discussed

9   above, Plaintiff and the putative class members were all subjected to these common policies and

10  practices. As shown in both Plaintiff's supporting declaration and deposition testimony, Plaintiff

11  was required to be subjected to off-the-clock security checks, including before being permitted to

12  take his rest breaks, during his employment with Defendant. (Lao Decl. ¶¶ 3-5.) Similarly,

13  Plaintiff and Money Network Paycard Class members were all paid wages via a paycard despite

14  having specifically rejected such a payment instrument.  (Lao Decl. ¶ 6).  Plaintiff also received

15  defective wage statements containing the bonus recalculation, as with all other class members.

16  (Lao Decl. ¶ 7).  Thus, Plaintiff's claims are typical with those of the Class members.

17                    **3.      The Adequacy Requirement Is Met**

18        The adequacy requirement is also met. To determine whether the class representation

19  meets the standard of Rule 23(a)(4), two questions are asked: "(1) Do the representative

20  Plaintiff[s] and their counsel have any conflicts of interest with other class members, and (2) will

21  the representative Plaintiff and their counsel prosecute the action vigorously on behalf of the

22  class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003) (citations omitted).

23                    **a.      Plaintiff is an Adequate Representative**

24        As established above, Plaintiff shares common interests with the defined Class, has claims

25  typical of class members' claims, and is fully prepared to take all necessary steps to fairly and

26  adequately represent the Class he represents. (Lao Decl. ¶¶ 3-9.) No conflicts of interests exist

27  and Plaintiff will continue to adequately and vigorously prosecute this action. (*Id.*) Plaintiff has

28  agreed to abide by all of the necessary duties of a class representative, including assisting counsel

22

in the litigation. (*Id*.) Accordingly, Plaintiff is an adequate representative.

### b.     Competent Class Counsel

As detailed in their declarations, Plaintiff's Counsel are experienced class action litigators who have litigated many wage and hour class actions and/or have been certified as class counsel in numerous other class actions, particularly wage and hour class actions. (Lee Decl., ¶¶ 10-12; Declaration of Kristen Agnew ("Agnew Decl.") ¶¶ 3-7; Declaration of Dennis S. Hyun ("Hyun Decl.") ¶¶ 3-6; Declaration of William L. Marder ("Marder Decl.") ¶¶ 3-10.) Plaintiff's Counsel have diligently litigated this case, and will continue to do so. Plaintiff's Counsel have taken the depositions of Defendant's 30(b)(6) witness, propounded and responded to discovery, and have pursued matters in law and motion as deemed necessary. (Lee Decl. ¶ 2, 14; Hyun Decl. ¶ 7-8.) Accordingly, Plaintiff's Counsel are adequate and will continue to vigorously prosecute this action on behalf of the class. (Lee Decl. ¶ 13; Hyun Decl. ¶¶ 7-8; Agnew Decl. ¶ 8; Marder Decl. ¶ 11.)

### B.     The Predominance Requirement of Fed. R. Civ. P. 23(b)(3) is Met

Rule 23(b)(3) requires two separate inquiries:  (1) do issues common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy. *See* Fed. R. Civ. P. 23(b)(3) Here, the requirements of Rule 23(b)(3) are satisfied.

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Hanlon*, 150 F.3d at 1022 (citation omitted); *see also Avilez v. Pinkerton Gov't Serv*., 286 F.R.D. 450, 466-67 (C.D. Cal. 2012) (explaining that predominance is met if the focus is on the defendant's conduct, even if individualized defenses may apply); *Jimenez v. Allstate Ins. Co*., 2012 WL 1366052, *17-18 (C.D. Cal. 2012); *Otsuka v. Polo Ralph Lauren Corp*., 251 F.R.D. 439, 447 (N.D. Cal. 2008). In this case, it is undisputed that Defendant has uniform practices and policies which resulted in Labor Code violations. In other words, the claims are predicated on common off-the-clock security check, paycard policies and wage statement practices making Plaintiff's claims ideally suited for class action treatment.

23

1    This undisputed evidence shows that H&M's operations were standardized as far as

2    security checks and the issuance of a paycard for final wages—all employees had to undergo off-

3    the-clock security checks, were paid final wages on a paycard even if the employee previously

4    rejected the paycard option, and all employees received the same defective wage statements

5    containing the lumped in overtime recalculations without specifying the applicable rate of pay

6    and hours worked. Thus, Plaintiff's claims are ideally suited for class treatment. *See*, *e.g.*,

7    *Abdullah*, 731 F.3d at 966-6 (holding that common questions predominated in claim for Labor

8    Code violations because liability and damages could be adjudicated by reliance on the employer's

9    records); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-14 (9th Cir. 2013) (same); *McKenzie v.*

10   *Federal Exp. Corp.*, 275 F.R.D. 290, 300 (C.D. Cal. 2011) (same).

11   Here, Defendant has openly represented that there are over 10,860 individuals who were

12   subject to the security check policy at issue, and at least 1,194 employees who received payment

13   of their final wages on a paycard. Thus, as to the security check claim, the only question that

14   needs to be answered in order to determine liability for the Class is whether the time spent by

15   employees waiting for and submitting to security checks should have been compensated. If the

16   time is not compensable, then Plaintiff and the Class have no claim. However, if the time in

17   question is compensable, then Plaintiff and the Class are entitled to an award.

18   The same logic applies to Plaintiff's claim regarding the paycard violation because

19   Defendant openly admits that it automatically issues paycards to separated employees even if the

20   employee did not consent to such payment method.  Likewise, Defendant issues defective wage

21   statements to all non-exempt employees who received overtime recalculations.

22   **C.    A Class Action is the Superior Method for Adjudication**

23   Class treatment is clearly superior to any other method of resolving Plaintiff's claims.

24   *Sav-On Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319, 340 (2004). Because Plaintiff's

25   claims are based on common policies and practices, these claims can be most efficiently litigated

26   on a class-wide basis. The alternative would be the unrealistic filing of hundreds, or even

27   thousands, of individual claims, posing the serious disadvantages pointed out by the *Sav-On*

28   court. Because the putative class members are hourly employees, with relatively modest

24

1   individual claims and limited resources, there is a strong likelihood that individual actions would

2   never be brought. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund*, 244 F.3d 1152,

3   1163 (9th Cir. 2001) (superiority requirement met where class members would recover, at most,

4   about $1,330). Moreover, many class members might not bring individual actions out of fear of

5   retaliation. *See O'Donnell v. TD Ameritrade, Inc.*, 2008 U.S. Dist. LEXIS 49829, at *11 (S.D.

6   Cal. 2008) ("federal courts have widely recognized that fear of retaliation for individual suits

7   against an employer is a justification for class certification in the arena of employment litigation")

8   (emphasis in original). Finally, this action is manageable and well-suited for class certification

9   where Defendant's own payroll records, including dates of employment and rates of pay, can be

10  used to show the violations and measure damages.  The factors discussed above support a finding

11  of superiority pursuant to Rule 23(b)(3), and there are no factors weighing against it, as class

12  members have no adverse individual interests.

13  ## V.      A CLASS-WIDE TRIAL IS MANAGEABLE

14       "The amount of damages is invariably an individual question and does not defeat class

15  action treatment." *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975). Here, the parties can

16  file cross motions for summary judgment to decide the issue of whether Defendant's security

17  checks should be deemed as hours worked under California law and whether Defendant's method

18  for calculating the regular rate of pay is legal under California law. If this Court rules in

19  Defendant's favor, then this case is over. If this Court rules in Plaintiff's favor, however, the

20  parties can proceed to the damage phase, in which the parties can agree to a representative sample

21  to extrapolate to the class. *Jimenez*, 2012 WL 1366052, at *20.

22  ## VI.     CONCLUSION

23       For the reasons stated above, Plaintiff's Motion for Class Certification should be granted.

24  Dated: June 23, 2017                         DIVERSITY LAW GROUP, P.C.

25

26  By:/s/ Larry W. Lee
    LARRY W. LEE
    KRISTEN M. AGNEW

27  Attorneys for Plaintiff and the Class

28

25

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION; AND
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**