UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| SER LAO, as an individual and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>H&M HENNES & MAURITZ, L.P.,<br><br>Defendant. | Case No.  5:16-cv-00333-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION**<br><br>Re: Dkt. No. 60 |

## I.  INTRODUCTION

Plaintiff Ser Lao ("Plaintiff") initiated this wage and hour putative class action against Defendant H&M Hennes & Mauritz, L.P. ("Defendant") in Santa Clara Superior Court to challenge three allegedly company-wide policies and practices, namely, (1) requiring employees to undergo security checks without compensating employees for the time spent being inspected or waiting to be inspected; (2) automatically issuing Money Network ATM cards ("Money Network Paycards") for final wage payments to separated employees without first obtaining the employees' consent; and (3) failing to specify the applicable hourly rates and number of hours worked on wage statements for pay periods during which an employee worked overtime and earned a bonus and/or non-discretionary incentive pay.  Defendant removed the matter to this Court pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §1332(d), and 28 U.S.C. §1453.

Presently before the Court is Plaintiff's motion for class certification. The motion was heard on May 31, 2018 and submitted.  Thereafter, each party filed a Notice of New Authority

1  addressing the California Supreme Court's recent opinion in <u>Troester v. Starbucks Corp.</u>, Cal.

2  Case No. S234969, 2018 WL 3582702 (Cal. July 26, 2018). Based upon all pleadings filed to

3  date and comments of counsel at the hearing, Plaintiff's motion is granted in part and denied in

4  part.

5  <u>II. BACKGROUND</u>

6        Defendant is an international clothing retailer that currently operates approximately 80

7  retail and outlet stores throughout California. May Decl. ¶¶ 1-2.[1] Plaintiff was hired by

8  Defendant to work as an hourly, non-exempt employee at Defendant's retail store located in

9  Fresno, California. Complaint, ¶ 8. Plaintiff worked for Defendant from on or about March 3,

10  2014, until on or about September 23, 2015. <u>Id</u>. During his employment with Defendant,

11  Plaintiff elected to have his wages paid to him via direct deposit. Plaintiff's Decl. ¶ 6.

12        Plaintiff asserts claims for (1) violation of California Labor Code section 226(a) for

13  failure to provide accurate wage statements; (2) violation of California Labor Code sections 558,

14  1194, 1197 and 1197.1 for failure to pay minimum wages; (3) violation of California Labor Code

15  sections 558, 1194, 1197 and 1197.1 for failure to pay overtime wages; (4) violation of

16  California Labor Code section 226.7 for failure to provide proper rest breaks; (5) violation of

17  California Labor Code sections 201 to 203 for failure to pay earned and unpaid wages at the time

18  of separation; (6) violation of California Labor Code section 2698, *et seq*. ("PAGA"); and (7)

19  violation of California Business and Professions Code section 17200 *et seq.* for unfair business

20  practices.[2]

21                 The Challenged Company Policy: Security Checks

22        Defendant requires all California retail store employees to undergo a security check

23  before leaving the store for 10-minute rest breaks or at the end of their shifts. Complaint, ¶¶ 18,

24

25  _____

26  [1] Corey May is Defendant's Rule 30(b)(6) witness regarding Defendant's policies, practices and procedures related to employee security checks.
   [2] Plaintiff stipulated to dismissal of the fourth claim for violation of California Labor Code

27  sections 226.7 and 512 for failure to provide proper meal breaks. <u>See</u> Dkt. No. 58.
   Case No.: <u>5:16-cv-00333-EJD</u>

28  ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
   CLASS CERTIFICATION

35-42, 50-54. Plaintiff contends that Defendant's mandatory security checks include a visual inspection of the person as well as a physical inspection of the contents of any bags brought onto the store premises. Security checks are the basis of Plaintiff's second cause of action (unpaid minimum wages), third cause of action (unpaid overtime compensation) and fifth cause of action (unpaid premium pay for missed rest breaks).

Security checks are performed pursuant to Defendant's Internal Theft Prevention Policy, which provides as follows.

### Employee Bag Check

All employees, regardless of position or assignment, that have entered a store carrying a bag, purse, briefcase, backpack, etc[.], will have that bag visually searched by a member of management (or Uniformed Guard where applicable) prior to exiting the store. The only exception is when an employee is **only** shopping on the sales floor. If an employee goes into an 'employee only' area (breakroom, manager's office, etc.) then they must be inspected before exiting the work location if they have a bag, purse, briefcase, backpack, etc.

It is very important that all staff understand that when they leave the store, if a manager or security officer is not at the door, they need to seek out a manager and have their bag inspected. If an employee **does not** have a bag, purse, briefcase, backpack, etc., they **do not** need to wait for a member of management before exiting the store but inform a member of management that they are leaving the store for their safety. Any coats or [j]ackets worn while exiting the store without a bag must be **unzipped and unbuttoned**.

May Decl. ¶¶ 3-5, Ex. B-1 (emphasis in original). Only employees "that have entered a store carrying a bag, purse, briefcase, backpack, etc., will have that bag visually searched." Id. Whether an employee carries a bag when entering or leaving the store is the employee's prerogative. See Lao Dep. at 144:16-23; Brown Dep. at 37:5-11; Richardson Dep. at 52:10-15; Santos Dep. at 25:15-17.

Plaintiff was subject to security checks at the end of his work shift or whenever he needed to leave the store. Plaintiff's Decl. ¶¶ 3-4. According to Plaintiff, security checks always

took place at the entrance or exit at the front of the store.  Id. ¶ 4. The Internal Theft Prevention

Policy, however, does not require security checks to be conducted in any particular place.

Plaintiff describes the process as follows:

> The manager conducting the check would conduct a visual
> inspection to look at me to make sure that I did not have a bag,
> merchandise, or was wearing a coat/jacket.  Whenever employees
> wore coats, or jackets, the supervisor/manager would check the
> insides and pockets of the coat and/or jacket to ensure that the
> associate was not hiding any stolen items.  If I had a bag with me,
> then during the visual inspection, I was required to open my bag
> and allow the manager to inspect the contents of the bag.

Plaintiff's Decl. ¶ 4.

Security checks at the end of a shift are conducted after an employee clocks out.  Id. ¶ 4;

May Depo. at 107:6-11, 123:5-19.  Plaintiff clocked out at the back of the store where the time

clock is located, and then walked to the front of the store and waited for a manager to conduct a

security check.  Plaintiff's Decl., ¶4.  Plaintiff contends that the entire security check process—

clocking out, waiting for a manager and undergoing a visual or bag inspection—could take

significant time, all of which was unpaid.  Plaintiff's Motion, p. 9.  Plaintiff estimates that

security checks conducted at the end of a shift took 3 to 4 minutes or more to complete.

Plaintiff's Decl., ¶5.

### Challenged Company Policy:  Money Network ATM Cards

Defendant has a company-wide policy and practice of automatically issuing Money

Network Paycards as a method of paying employees final wages.  When Plaintiff's employment

ended on September 23, 2015, he received his final wages in the form of a Money Network

Paycard and incurred various charges to use the Paycard.  Plaintiff's Decl. ¶ 6.  Plaintiff never

authorized receipt of his final wages by Paycard.  Id.  Rather, Defendant automatically issued the

Money Network Paycard in accordance with company policy.  Bernabe Depo. at 52:5-20, 57:19-

59, 67:7-21, 126:22-127:9, 128:13-17, Bernabe Depo., Ex. 123.[3]  Plaintiff contends that

---

[3] Cindy Bernabe is Defendant's Rule 30(b)(6) witness for Defendant's policies, practices and

Case No.: 5:16-cv-00333-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION

1    employees are compelled to accept payment through Money Network Paycards and are forced to

2    incur charges to access their earned wages, in violation of the Labor Code.  The issuance of

3    Money Network Paycards is the basis for Plaintiff's sixth cause of action for violation of

4    California Labor Code §§ 201-203.[4]

5         Defendant explains that employees are given an information packet, the ADP "TotalPay

6    Packet," which explains that final wages are deposited into a TotalPay® account.  Bernabe Dep.

7    Ex. 121, 1.  The TotalPay® account is accessible using either an ADP TotalPay® Visa® Paycard

8    or Money Network® Checks, or both.  Id.  The TotalPay® Packet explains that if an employee

9    chooses to use the enclosed check(s), the employee is able to deposit the check or cash the check

10   "for free at select locations to get up to 100% of your wages without charge."  Id.  If an

11   employee chooses to use the Paycard, the employee may withdraw funds up to the full amount,

12   without discount, at numerous in-network locations in California.  Id. at p.4.  Alternatively, an

13   employee may use the Paycard to make purchases, which incur fees as set forth in the TotalPay®

14   Packet.  Id.  Thus, it is possible for an employee to access all of his or her full wages without

15   incurring any fees.  Defendant does not record or have data showing which of these options an

16   employee elects to access wages.  Id. at p. 20.  Defendant does not receive or maintain any

17   records from ADP showing which employees incurred fees when accessing wages.  Id.; May

18   Decl. ¶ 10.

19   _____

20   procedures related to the payment of wages.
     [4] In the Complaint, Plaintiff alleges that issuance of the Money Network Paycards violates

21   sections 201 to 203 of the Labor Code, which are provisions that essentially require employers to
     pay wages earned and unpaid in a timely manner.  Complaint ¶¶ 55-59.  In the instant motion,

22   Plaintiff contends that the issuance of the Money Network Paycards also violates section 212(a),
     which prohibits (1) the payment of wages in a manner that is not "negotiable and payable in

23   cash, on demand, without discount, at some established place of business in the state, the name
     and address of which must appear on the instrument" and (2) payment of wages by any "script,

24   coupon, cards or other thing redeemable, in merchandise or purporting to be payable or
     redeemable otherwise than in money.  Plaintiff's Motion, p. 4.  Plaintiff further contends that

25   Defendant has violated section 213(d), which permits an employer to pay employees by
     "depositing wages due or to become due or an advance on wages to be earned in an account in

26   any bank, savings and loan association, or credit union of the employee's choice with a place of
     business located in this state, provided that the employee has voluntarily authorized that

27   deposit."  Id.
     Case No.: 5:16-cv-00333-EJD

28   ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
     CLASS CERTIFICATION

                                                    5

<u>Challenged Company Policy:  Overtime Recalculations</u>

Plaintiff contends that whenever Defendant pays "overtime recalculations," Defendant fails to provide an "accurate itemized statement in writing" specifying the applicable hourly rates and number of hours worked in violation of Labor Code § 226(a)(9).  <u>Id</u>.  During his employment, Plaintiff worked overtime and earned non-discretionary bonus payments during a quarter which were reflected in his wage statement.  Plaintiff challenges only the lack of specificity in his wage statement; he does not challenge the methodology or accuracy of Defendant's overtime recalculations, which Plaintiff acknowledges are consistent with California law.[5]

## III. STANDARDS

A party seeking class certification must provide facts sufficient to satisfy the requirements of Federal Rule of Civil Procedure 23.  <u>Doninger v. Pacific Northwest Bell, Inc.</u>, 564 F.2d 1304, 1308–09 (9th Cir. 1977).  Under Rule 23(a), a class may only be certified if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a).  "In addition to the explicit requirements of Rule 23, an implied prerequisite to class certification is that the class must be sufficiently definite; the party seeking certification must demonstrate that an identifiable and ascertainable class exists."  <u>Xavier v. Philip Morris USA Inc.</u>, 787 F. Supp. 2d 1075, 1089 (N.D. Cal. 2011).  "In order for a proposed class to satisfy the ascertainability requirement, membership must be determinable from objective, rather than subjective, criteria."  <u>Id</u>.  "Without

---

[5] Plaintiff acknowledges that "consistent with California law, when an employee works overtime in the same period that he or he earns a bonus and/or non-discretionary incentive pay, [Defendant] factors the extra compensation into the employee's regular rate of pay."  Motion, p.2.  "However, rather than provide wage statements that specified the higher actual regular rate of pay and number of hours worked, [Defendant] opted to combine the additional compensation with the bonus itself, such that it would be paid in one lump sum."  <u>Id</u>.

Case No.: <u>5:16-cv-00333-EJD</u>
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

an objective, reliable way to ascertain class membership, the class quickly would become

unmanageable, and the preclusive effect of final judgment would be easy to evade." Id.

In addition, the party seeking certification must show that the action falls within one of

the three subsections of Rule 23(b). In this case, Plaintiff seeks certification pursuant to Rule

23(b)(3), which permits certification of cases where "the court finds that the questions of law or

fact common to class members predominate over any questions affecting only individual

members, and that a class action is superior to other available methods for fairly and efficiently

adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiff bears the burden of demonstrating that the four requirements of Rule 23(a), as

well as the predominance and superiority requirements of Rule 23(b)(3), have been met. See

Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001). "A party seeking

class certification must affirmatively demonstrate his compliance with the Rule—that is, he must

be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of

law or fact, etc." Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011) (emphasis in

original). When considering class certification under Rule 23, district courts must perform "a

rigorous analysis" to ensure that Rule 23(a) has been satisfied. Id. at p. 351. When performing a

"rigorous analysis," "it may be necessary for the court to probe behind the pleadings before

coming to rest on the certification question." Id. (quoting General Telephone Co. of Southwest

v. Falcon, 457 U.S. 147, 160 (1982). Frequently an analysis of the certification question "will

entail some overlap with the merits of the plaintiff's underlying claim." Id. "[A] district court

must consider the merits if they overlap with the Rule 23(a) requirements." Ellis v. Costco

Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011).

## IV. EVIDENTIARY OBJECTIONS

Defendant objects to three declarations submitted by Plaintiff on the grounds that each

declarant's testimony lacks foundation and includes or consists of speculation about facts not

within the declarant's personal knowledge. Defendant's Opposition, p.1, n.1. Defendant's

1    objections to the declarations are overruled.  At this stage in the proceedings, the Court is free to

2    consider evidence that many not be admissible at trial.  See Ogiamien v. Nordstrom, Inc., No.

3    13-5639 ODW, 2015 WL 773939, at *3 (C.D. Cal. Feb. 24, 2015) (citing Vedachalam v. Tata

4    Consultancy Servs., Ltd., No. 06-963 CW, 2012 WL 1110004, at *4 (N.D. Cal. April 2, 2012)

5    (quoting Keiholtz v. Lennox Hearth Prods. Inc., 268 F.R.D. 330, 337 n.3 (N.D. Cal. 2010)).  In

6    any event, Defendant's objections go to the weight of each declarant's testimony, not to its

7    admissibility.

8    V. DISCUSSION

9          Plaintiff seeks an order certifying the following classes.

10              a. All current and former non-exempt retail store employees who
11              were employed by Defendants in the State of California at any
               time from December 11, 2011, through the present (the "Class");

12              b. All former employees who were employed by Defendants in the
13              State of California at any time from December 11, 2012, through
               the present, who during their employment received their normal
14              payroll wages through check or direct deposit, but upon their
               separation of employment received their terminating wages in the
15              form of a Money Network ATM Paycard [ ] (the "Money Network
               Paycard Class"); and

16              c. All current and former non-exempt retail store employees who
17              received non-discretionary incentive pay and worked overtime in
               the same pay period at any time from December 11, 2014, through
18              the present, such that the employee received an overtime
               recalculation, and received a wage statement (the "Overtime
19              Recalculation Wage Statement Class").

20    Motion, p. i-ii.[6]  Plaintiff also seeks an order certifying him as the class representative and

21    appointing his counsel and their respective firms, Larry W. Lee and Kristen M. Agnew of

22    Diversity Law Group, P.C., Dennis S. Hyun of Hyun Legal, APC, and William L. Marder of

23    Polaris Law Group LLP, as class counsel.  Id. at p. ii.

24

25

26    ―――――――――――――
    [6] Plaintiff does not seek certification of the seventh cause of action for violation of PAGA.
27    Plaintiff's Motion, p. 11, n. 12.
    Case No.: 5:16-cv-00333-EJD
28    ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
    CLASS CERTIFICATION

### A.  Numerosity of All Classes

Defendant has identified at least 10,860 non-exempt retail store employee who belong to The Class.  Lee Decl. ¶2, Ex. 2. Defendant has identified at least 1,194 individuals who received their final pay via a Paycard  (Lee Decl. ¶ 2, Ex. 1) and at least 3,325 non-exempt employees who belong to the Overtime Recalculation Wage Statement Class (Lee Decl. ¶ 2, Ex. 2).  The proposed classes are thus numerous and Defendant does not contend otherwise.

### B. Certification of The Class (Security Checks)

#### 1.  Commonality of The Class

Under Rule 23, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This "commonality" requirement "has been construed permissively" such that all questions of fact and law need not be common to satisfy the Rule.  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  "The existence of even one significant issue common to the class is sufficient to warrant certification."  Californians for Disability Rights, Inc. v. California Dept. of Transp., 249 F.R.D. 334, 346 (N.D. Cal. 2008).

Commonality is satisfied where a plaintiff challenges a system-wide practice or policy that affects all of the putative class members.  Armstrong v. Davis, 275 F.3d 849, 868 (9th Cir. 2001).  If, however, there is no evidence that the entire class was subject to the same practice or policy, there is no question common to the class.  Ellis, 657 F.3d at 983.  The district court is "required to resolve any factual disputes necessary to determine whether there [is] a common pattern and practice that could affect the class as a *whole*."  Id. (italics in original).

Plaintiff contends that The Class was subjected to a common policy or practice—unpaid security checks—that satisfies the commonality requirement.  More specifically, Plaintiff contends that Defendant's admitted company policy is that time spent waiting for and submitting to security or bag checks before leaving the store for breaks or at the end of a shift is off-the-clock.  In light of Defendant's common policy or practice, Plaintiff contends "[t]hat there is

common question as to whether the security checks are hours worked under California law."
Plaintiff's Motion, p.12.

<u>Security Checks Before Rest Breaks</u>

Plaintiff proffers the declarations of several employees to establish that their rest breaks were cut short to less than ten (10) minutes because of security checks. Lao Decl. ¶ 3; <u>see</u> <u>also</u> C. O'Connor Decl. ¶ 4 ("…the security check time would cut into my breaks…"); I. Mitchinson Decl. ¶ 4 ("A lot of employees complained to me that they were actually getting 4-5 minute rest breaks"); D. Sousa Decl. ¶ 7 ("Even though my 10-minute breaks and lunches were frequently delayed as a result of the mandatory bag checks, I was not allowed to extend them to recoup the time"). In light of this evidence, Plaintiff contends that there exists a common question as to whether the security checks denied class members "unfettered rest breaks." Plaintiff's Motion, p.17.

That a few employees experienced shortened rest breaks due to security checks fails to establish commonality under Rule 23. To show commonality, Plaintiff must demonstrate that there are questions of fact and law that are common to the class. <u>See</u> <u>Ellis</u>, 657 F.3d at 981. For example, in the context of a proposed class action suit for gender discrimination "it is insufficient to merely allege a common question, for example, 'Were Plaintiffs passed over for promotion?'" <u>See</u> <u>Ellis</u>, 657 F.3d at 981 (citing <u>Wal–Mart</u>, 564 U.S. at 350). Instead, plaintiff(s) must pose a question that "will produce a common answer to the crucial question *why was I disfavored.*" <u>Id</u>. (italics in original). "What matters to class certification is not the raising of common 'questions'... but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." <u>Wal-Mart</u>, 564 U.S. at 351 (internal citation, alteration, and quotation marks omitted)).

Plaintiff has not established that a classwide proceeding will generate common answers apt to drive the resolution of Plaintiff's claims regarding rest breaks. This is so because there is no evidence of a common practice of conducting security checks in a manner that interferes with

rest breaks. Instead, Defendant's common practice, which is reflected in a written policy entitled California Meal And Rest Period Requirement Policy ("Break Policy"), is to the contrary. The Break Policy specifies that rest breaks begin "once the manager has cleared [the employee] to leave the building." May Decl., Ex. B-2; see also Lalas Decl. ¶ 10 ("When I walk an employee out before her rest break, after I conduct the bag check, I often tell her 'Okay, your break begins now.'"); Pund Decl. ¶ 10 ("In my stores, if any employee leaves the store for her rest break, that employee's rest break begins when she leaves the building, which is after the bag check has already happened."); Vergara Decl. ¶ 11; Bynes Decl. ¶ 13; Lok Decl. ¶ 10. The Break Policy also provides that employees "do not clock out for 10 minute rest breaks." May Decl., Ex. B-1. Thus, security checks for rest breaks are conducted on the clock and there are no records to show when any particular employee took a rest break or how long the rest break lasted.

Plaintiff acknowledges that the breaks were taken on-the-clock. Plaintiff's Motion, p. 9. Plaintiff also acknowledges that no one at H&M instructed him that rest breaks began before a security check. Lao Dep. at 151:2-5. In the absence of a company-wide policy "that would give rise to consistent liability" regarding security checks for rest breaks, the trier of fact would be left to face individualized liability issues that are not suitable for classwide resolution. See Ogiamien, 2015 WL 773939, at *6.

Because Plaintiff has not satisfied the commonality requirement, the Court denies certification of The Class to the extent Plaintiff asserts claims based upon Defendant's alleged failure to provide 10-minute rest breaks (fifth and eighth causes of action).

<u>Security Checks At End of Shift</u>

Unlike security checks for rest breaks that are conducted on-the-clock, security checks at the end of a shift are conducted after an employee clocks out. May Depo. at 107:6-11, 123:5-19. Several courts have certified class actions raising a common question as to whether employees should be compensated for off the clock time spent undergoing a mandatory security check. See e.g. Greer v. Dick's Sporting Goods, Inc., No. 15-01063 KJM, 2017 WL 1354568, at *6 (E.D.

Case No.: 5:16-cv-00333-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

11

Cal. Apr. 13, 2017) (certifying a "security check class" of "all non-exempt or hourly paid employees who worked for Defendant in its DSG retail stores"); <u>Rodriguez v. Nike Retail Services, Inc.</u>, No. 14-1508 BLF, 2016 WL 8729923, at *6 (N.D. Cal. Aug. 19, 2016) ("All employees have to be visually inspected before they can leave the store, and so no individualized inquiries are required."); <u>Chavez v. Converse, Inc.</u>, No. 15-3746 NC, Dkt. No. 89 (N.D. Cal. Sept. 22, 2016) (although Converse did not have an explicit policy requiring off-the-clock bag checks, common questions of fact and law were presented where "most, if not all, Converse stores are set up such that an employee would necessarily be off-the-clock when a bag check occurs."); <u>Otsuka v. Polo Ralph Lauren Corp.</u>, No. C 07-02780 SI, 2010 WL 366653, at *5 (N.D. Cal. Jan. 25, 2010) (denying motion to decertify because "Polo does not dispute that it maintains a uniform policy requiring employees to submit to bag searches, or that it does not compensate employees for time spent waiting for these searches."); <u>Kurihara v. Best Buy Co. Inc.</u>, No. 06-1884 MHP, 2007 WL 2501698, at *6 (N.D. Cal. Aug. 30, 2007) (certifying class challenging company-wide policy whereby employees are subject to inspections, and not compensated for the time spent on those inspections).

Defendant nevertheless opposes certification on essentially two grounds. First, Defendant contends that it is not liable for security checks that take only *de minimis* time, and that there is no feasible way to determine which putative class members underwent a security check that lasted more than *de minimis* time other than by conducting individualized inquiries into each class member's experiences.

In <u>Troester</u>, the California Supreme Court considered the applicability of the *de minimis* doctrine to a Starbucks employee who was required to clock out before initiating a "close store procedure" on a computer terminal, activating the store's alarm, locking the front door, and on occasion walking his coworkers to their cars in compliance with Starbuck's policy. The evidence showed that these closing tasks required Troester to work four to ten additional minutes each day. The <u>Troester</u> court held that the relevant California statutes and wage orders have not

incorporated the *de minimis* doctrine found in the Federal Labor Standards Act.  Troester, 2018

WL 3582702, at *10.  The Troester court also held that although California has a *de minimis* rule

as a background principle of law, the rule was not applicable to Troester's claim.  Id.  The

Troester court reasoned that California's "relevant statutes and wage order do not allow

employers to require employees to routinely work for minutes off-the-clock without

compensation."  Id.  In concluding, the Troester court noted, "[w]e leave open whether there are

wage claims involving employee activities that are so irregular or brief in duration that it would

not be reasonable to require employers to compensate employees for the time spent on them."

Id.

Defendant contends this case presents the very issue the California Supreme Court left

open in Troester:  security checks that are irregular or brief.  According to Defendant, its security

check policy is not interpreted and applied uniformly across Defendant's 80 California stores.

Defendant explains that although some employees without bags may have undergone a security

check before exiting the store, numerous managers apply the security check policy so that

employees without bags are free to leave the store, without any security check.  See Lalas Decl.

¶¶ 4, 6 ("As long as the employee announces that she is leaving the store and does not have a bag

or package, she is free to leave the store as soon as she clocks out."); Bynes Decl. ¶¶ 4-5, 10;

Lok Decl. ¶¶ 3, 5; Pund Decl. ¶¶ 4, 6; Vergara Decl. ¶¶ 4, 6-7; Sousa Dep. at 33:22-34:7; Llagas

Dep. at 43:25-44:4, 47:12-17.

In response, Plaintiff asserts that Defendant mandates that all employees submit to a

security check in the form a visual inspection, regardless of whether they have a bag or not.

Naomi Fritt, Defendant's Continental Security Manager, testified that whenever an employee

leaves the store, the manager must visually inspect the employee to ensure that the employee

does not have a bag, zipped outerwear, or any unpaid merchandise:

> Q. So as part of your training for the bag check or exit search, you
> were told to check the employee's bag and to look inside the bag,
> to check the employee's coat and jacket in the United States. To do
> that, how would you confirm whether the employee had a bag, coat

Case No.: 5:16-cv-00333-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
CLASS CERTIFICATION

13

or jacket? Could the employee just leave the store without telling you?

A. They could, with consequence.

Q. So was the employee supposed to check with you first, 'Hi, I'm leaving,' before leaving the store?

A. Yes.

Q. And then at that point you would see whether the employee had a bag, jacket or coat?

A. Yes.

Fritt Depo. at 34:17-35:6; see also May Depo. at 156:12-22 ("If an employee in California was wearing outerwear, I suppose they would need to have it open as they walked out."); Bynes Depo at 30:13-24 (manager must visually see the employee before the employee leaves); Lalas Depo at 47:12-22, 48:2-6 (manager must see the employee leave); Loke Depo at 58:23-59:3, 63:16-19 (H&M's policy requires manager to check outerwear when they are leaving); Pund Depo at 35:7-11 (employee leaving store with a coat or jacket but no bag must be inspected before leaving); Vergara Depo at 36:2-24 (manager must confirm that an employee is not exiting the store with a zipped jacket or coat). Unlike Quinlan v. Macy's Corp. Servs., Inc., No. 12-737 DDP, 2013 WL 11091572 (C.D. Cal. Aug. 22, 2013) upon which Defendant relies, Defendant's security check included a visual inspection component that applied to all employees. For purposes of class certification, Plaintiff has established that Defendant had a common security check practice that included a visual inspection of the employee and a bag check, if the employee carried a bag.

As for regularity, Defendant contends that the time it takes for a security check depends on a number of factors, including, *inter alia*, whether a security guard is on duty, whether an employee is clocking out after a closing shift, which manager was on duty and how many managers were on duty. Martinez Dep. at 40:18-41:8; Richardson Dep. at 63:8-64:1; Mitchinson Dep. at 44:17-45:21; Vergara Decl. ¶ 8; Sousa Dep. at 46:13-25. There is evidence that the wait time to undergo a security check could be as long as 30 minutes, although sometimes there could be no wait at all. Harris Decl. ¶ 3 (30 min.); Bynes Decl. ¶ 12 (no wait since there were always

at least two and up to five managers working).  The variations in weight time, however, do not detract from the common question presented by Plaintiff:  whether time spent waiting for and undergoing mandatory security checks is compensable time.

Apart from the waiting time to undergo a security check, Defendant contends that the actual bag checks take only a few seconds, which Defendant characterizes as *de minimis* time. Llagas Dep. at 32:3-18; see also Harris Dep. at 33:7-15 ("ten to 15 seconds"), 49:11-20 ("maybe a few seconds, just a quick once over"); Richardson Dep. at 52:5-9 (longest was "around 30 seconds"); Sousa Dep. at 25:5-19 ("maybe 30 seconds"); Santos Dep. at 24:18-25:7 ("about 20 seconds"); O'Connor Dep. at 28:21-23 ("Not very long. Five to ten seconds."); Lao Dep. at 128:4- 16 ("a little bit less than about 15 to 20 seconds"); May Dep. at 111:19-25 (check should take no more than "a few seconds"); Brown Dep. at 36:23-37:4 (back check would take two to five seconds).[7]  Even assuming the actual security check may have taken seconds, Plaintiff's claim is that the wait time could prolong the security check process by minutes.  In Troester, the California Supreme Court observed, "[a]n employer that requires its employees to work minutes off the clock on a regular basis or as a regular feature of the job may not evade the obligation to compensate the employee for that time by invoking the de minimis doctrine."  See Troester, 2018 WL 3582702, at *9.  "[A] few extra minutes of work each day can add up."  Id.

In sum, the commonality requirement is satisfied to the extent Plaintiff's claims are based upon security checks conducted at the end of shifts.

### Security Checks At Closing

Defendant contends that the clock out procedure for the closing shift is designed to eliminate wait time for all employees:  employees working the closing shift clock out together only after the manager on duty has indicated that he or she is ready to inspect everyone's bags. Lao Dep. at 168:8-169:8.  Then the group, including the manager, proceeds to the exit together

---

[7]  Some individuals claim to have experienced significantly longer bag checks.  Mitchinson Dep. at 66:22-67:15; 69:5-13 (12 to 15 minutes); Martinez Dep. at 38:15-24 (10 to 15 minutes).

Case No.: 5:16-cv-00333-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

15

and the manager inspects each employee's bag.  Bynes Decl. ¶¶ 11-12; Lalas Decl. ¶ 9; Lok

Decl. ¶ 9; Pund Decl. ¶ 11; Vergara Decl. ¶ 10.  Defendant's argument is essentially that the time

spent for security checks at closing is *de minimis*.  As discussed previously, the *de minimis*

doctrine does not foreclose class certification.  Indeed, the California Supreme Court has

observed that in the age of employee class actions, the *de minimis* doctrine "usually has little

value." Troester, 2018 WL 3582702, at *8.

      The commonality requirement is satisfied to the extent Plaintiff's claims are based upon

security checks conducted at closing.

### 2.  The Class Is Ascertainable

      Defendant contends that The Class is not ascertainable because it includes individuals

who may have suffered no harm as a result of a security check, such as employees who cannot

recall an instance in which they were forced to wait a compensable amount of time for a security

check.

      As previously discussed, Plaintiff's claims are based upon Defendant's security check

policy, which Defendant acknowledges applies to all of Defendant's California employees.

Therefore, The Class can be identified.  It may be that The Class includes employees who do not

remember waiting to undergo a mandatory security check, and that damages will have to be

determined on an employee-by-employee basis.  The potential for individual damages issues,

however, is not enough to defeat certification.  See Leyva v. Medline Indus. Inc., 716 F.3d 510,

513-14 (9th Cir. 2013) ("the presence of individualized damages cannot, by itself, defeat class

certification under Rule 23(b)(3)"); Frlekin v. Apple Inc., 309 F.R.D. 518, 526 (N.D. Cal. 2015).

### 3.  Typicality of Plaintiff's Security Check Claims

      Plaintiff has demonstrated that Plaintiff's security check claims are reasonably co-

extensive with The Class claims, and Defendant does not contend otherwise.  The typicality

requirement is satisfied.  See Hanlon, 150 F.3d at 1020 ("representative claims are 'typical' if

they are reasonably co-extensive with those of absent class members").

United States District Court
Northern District of California

## 4. Plaintiff is an Adequate Representative for The Class

To satisfy Rule 23(a)(4), Plaintiff must demonstrate that he will "fairly and adequately protect the interests of the class." When considering the adequacy of the proposed class representative, courts consider two questions: (1) does the representative or his counsel have any conflicts of interest with other class members; and (2) will the representative and counsel prosecute the action vigorously on behalf of the class. <u>Staton v. Boeing Co.</u>, 327 F.3d 938, 957 (9th Cir. 2003).

Plaintiff represents that he shares common interests with The Class, has claim typical of the class, and is fully prepared to take all necessary steps to fairly and adequately represent all of the proposed class members. Plaintiff further represents that no conflicts of interest exist. Plaintiff's counsel have submitted declarations attesting to their experience handling class action suits involving wage and hour claims.

Defendant contends that there is a conflict of interest between Plaintiff and The Class because as a manger, Plaintiff administered security checks. Defendant reasons that as a former manager, Plaintiff could find himself in the position of defending his own actions with respect to administering security checks for nonsupervisory members of The Class.

"There is no *per se* rule that the presence of supervisory and nonsupervisory employees in a proposed class creates a conflict of interest." <u>Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.</u>, 311 F.R.D. 590, 606 (C. D. Cal. 2015) (citing <u>Staton Boeing Co.</u>, 327 F.3d 938, 958 (9th Cir. 2003)). "[W]hether employees at different levels of the internal hierarchy have potentially conflicting interests is context-specific and depends upon the particular claims alleged in a case." <u>Staton</u>, 327 F.3d at 958.

In this case, Plaintiff alleges that all class members, managerial or not, are subject to the same mandatory security check. There is no evidence that Plaintiff (or other managers) have discretion to excuse or deviate from Defendant's mandatory security check. Under these circumstances, Plaintiff's status as a manager does not create a conflict of interest. <u>See</u>

Rodriguez, 2016 WL 8729923, at *9 (in suit challenging common company-wide inspection

policy, presence of managerial employees in the class does not create a conflict or make plaintiff

an inadequate representative); Pena v. Taylor Farms Pacific, Inc., 305 F.R.D. 197, 215 (E.D. Cal.

2015) ("If any uniform policy required non-exempt hourly employees to work without

compensation, both supervisors and subordinates would have been affected similarly.");

Akaosugi v. Benihana Nat. Corp., 282 F.R.D. 241, 254 (N.D. Cal. 2012) (in suit challenging

company-wide vacation policy, there is no conflict of interest in a class of managers and non-

managers where managers retain no discretion regarding the forfeiture of vacation benefits); but

cf. Hadjavi v. CVS Pharmacy, Inc., No. 10-4886 SJO, 2011 WL 3240763, at *6 (C.D. Cal. July

25, 2011) (plaintiff manager who may have contributed to another plaintiff's inability to take

meal breaks is not an adequate representative); and Wagner v. Taylor, 836 F.2d 578 (D.C. Cir.

1987) (in employment discrimination case, supervisor plaintiff inadequate representative for

class that included nonsupervisory personnel); Silva v. AvalonBay Communities, No. 15-4157

JAK, 2016 WL 4251600, at *7 (C.D. Cal. April 20, 2016) ("inherent conflict" where plaintiff

seeks to represent both supervisor and non-supervisor employees because "decision-making by

supervisors is closely related to the ability of supervisees to take meal and rest breaks").

### 5.  Whether Individual Issues Predominate The Class

Rule 23(b)(3), Fed. R. Civ. P., requires the plaintiff to show that common questions of

law and fact "predominate over any questions affecting only individual members" and that a

class action is "superior to other available methods for fairly and efficiently adjudicating the

controversy." The Rule 23(b)(3) predominance inquiry tests whether the proposed class is

sufficiently cohesive to warrant adjudication by group representation. Hanlon, 150 F.3d at 1022.

Defendant contends that individual issues predominate over issues common to The Class,

such as did the employee bring a bag or package on the date in question; if the employee had no

bag, did the manager on duty follow Defendant's security check policy, and if so, did the

employee undergo a compensable security check; if the employee had a bag, how long did the

employee wait for a security check and how long did the security check take; did the employee meet the manager on duty at the register or the sales floor for the security check; was there a security guard on duty at the time the employee was ready to exit the store so that the employee did not have to wait for a manger to conduct the security check; and was the employee clocking out for a closing shift.

As discussed previously, Plaintiff's security check claims challenge Defendant's company-wide policy requiring employees to undergo security checks at the end of shifts and at closing without compensating employees for the time spent waiting for and undergoing security checks. This issue "overarches the entire controversy" and is sufficient to satisfy Rule 23(b)(3), Fed. R. Civ. P. See Frlekin v. Apple Inc., 309 F.R.D. at 524. The individual issues raised by Defendant, which primarily relate to damages, are secondary and do not undermine predominance. See e.g. Greer, 2017 WL 1354568, at *8 (security check subclass satisfied predominance requirement); Chavez v. Converse, Inc., No. 15-3746 NC, Dkt. No. 89 (N.D. Cal. Sept. 22, 2016) ("the overarching question of whether Converse fails to compensate employees for bag checks, and whether such failure is a violation of the California Labor Code, predominates the issue of how much each individual class member waited off-the-clock for a bag check"); Kurihara v. Best Buy Co., 2007 WL 2501698, at *10 (predominance established by "evidence of the existence of a company-wide policy whereby employees are subject to inspections, and not compensated for the time spent on those inspections").

C. Money Network Paycard Class

Plaintiff contends that the Money Network Paycard claim is suitable for class treatment because the claim presents a limited question of law and fact: whether Defendant's practice of paying final wages via Money Network Paycards is lawful when an employee does not specifically authorize payment of wages in that manner. Plaintiff's Motion, p. 18.

1      Defendant does not dispute that its company-wide policy and practice is to issue final

2  wages via Money Network Paycards.  Nevertheless, Defendant contends that Plaintiff has not

3  established commonality and typicality for the Money Network Paycard Class.

4              1.  Commonality of the Money Network Paycard Class

5      Defendant contends that the commonality requirement is not satisfied because of the

6  individualized inquiries necessary to determine whether Defendant is liable to the entire

7  proposed Money Network Paycard Class.  These individualized inquiries include whether the

8  employee authorized the deposit of his/her wages into a Money Network account; whether the

9  employee received the full amount of wages by accessing the funds using a Money Network

10  check or by using the Paycard at an in-network ATM; and whether the employee chose to use the

11  Paycard to make purchases.

12      Notwithstanding Defendant's argument to the contrary, Plaintiff's Money Network

13  Paycard Class is suitable for class certification.  See Scott-George v. PVH Corp., No. 13-441

14  TLN, 2015 WL 7353928, at *11 (E.D. Cal. Nov. 19, 2015) (certifying class of nonexempt

15  employees who received their earned wages via the Money Network Paycard system); Pace v.

16  PetSmart, No. 13-500 DOC, 2014 WL 2511297 (C.D. Cal. June 3, 2014) (certifying class of

17  former employees who upon separation of employment received terminating wages in the form

18  of a Money Network Paycard).  The legality of Defendant's company policy—issuing final

19  wages via Money Network Paycards without the employee's authorization—may be determined

20  without delving into the individualized issues raised by Defendant.  Furthermore, this issue is

21  central to Plaintiff's claim and predominates the Money Network Paycard Class.

22              2.  Typicality of Plaintiff's Money Network Paycard Claim

23      Defendant contends that Plaintiff has not established that he incurred any fees from his

24  use of the Paycard, or that the rest of the Money Network Paycard Class incurred fees from

25  purchases in the same way—as opposed to using the Money Network Checks and/or in-network

26  ATM withdrawals.  Plaintiff, however, clearly states in his Declaration: "I incurred various

27  Case No.: 5:16-cv-00333-EJD

28  ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
   CLASS CERTIFICATION

charges to use the ATM paycard, which resulted in me getting paid less than all of my final wages." Lao Decl., ¶ 6. Whether other putative class members incurred fees is a damages issue, which does not foreclose class certification. See <u>Leyva v. Medline Indus. Inc.</u>, 716 F.3d at 513-14; <u>Frlekin v. Apple Inc.</u>, 309 F.R.D. at 526.

Defendant also argues that Plaintiff has failed to propose a viable plan for establishing classwide liability. As Plaintiff points out, however, ADP's records will show which employees incurred fees.

Defendant also contends that the typicality requirement is not satisfied because Plaintiff asserts that he was unaware of fees associated with purchases made with the Paycard (Lao Dep. at 92:7-95:17), whereas other class members may have chosen to use the Paycard and therefore incurred fees for their own reasons (Martinez Dep. at 64:22-25, 66:9-25). This hypothetical raises liability and damages issues, which do not defeat class certification. See <u>Pace v. PetSmart</u>, 2014 WL 2511297, at *11.

In sum, the typicality requirement is satisfied for the Money Network Paycard Class.

<u>D. Overtime Recalculation Wage Statement Class</u>

Defendant contends that Plaintiff cannot satisfy the typicality, commonality and adequacy requirements for the Recalculation Wage Statement Class. Fundamentally, Defendant argues that Plaintiff's wage statement indicates he is not a member of the Overtime Recalculation Wage Statement Class. According to Defendant, Plaintiff's wage statement dated February 6, 2015, reflects quarterly bonuses that would have been earned in Q4 of 2014. Defendant's fiscal year begins December 1st and ends November 30th. Frank Dep. at 34:15-25. [8] Bonuses for Q4 of 2014 would therefore have been earned sometime between September through November 30th of 2014, which is before the proposed class period of December 11, 2014 through the present.

---

[8] Monica Frank is Defendant's Rule 30(b)(6) witness for topics related to Defendant's payment of non-discretionary inactive pay and/or bonuses and the inclusion of such pay into the regular rate.

Case No.: 5:16-cv-00333-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

In response, Plaintiff construes Defendant's argument as a statute of limitations defense and asserts that his claim is timely, having been filed within one year of receiving the February 6, 2015 wage statement. Plaintiff also appears to argue that even if the February 6, 2015 wage statement reflects bonuses earned before the proposed class period, he is a member of the Overtime Recalculation Wage Statement Class because he received his wage statement within the class period. Plaintiff contends the only issue that is relevant is whether the February 6, 2015 wage statement violates Labor Code section 226, and not when the bonus was paid.

Plaintiff's arguments are unpersuasive. The Overtime Recalculation Wage Statement Class is defined as "[a]ll current and former non-exempt retail store employees who received non-discretionary incentive pay and worked overtime in the same pay period at any time from December 11, 2014, through the present, such that the employee received an overtime recalculation, and received a wage statement." Motion, p. i-ii. Plaintiff's February 6, 2015 wage statement does not reflect that Plaintiff "received non-discretionary incentive pay and worked overtime in the same pay period at any time from December 11, 2014, through the present." Because Plaintiff has not established that he is a member of the class he seeks to represent, Plaintiff's motion to certify the Overtime Recalculation Wage Statement Class is denied.[9]

E. Superiority

Rule 23(b)(3) also requires Plaintiff to show that a class action is "superior" to other available methods of adjudication. Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation cost and promote greater efficiency, a class action may be superior to other methods of litigation" Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234-35 (9th Cir. 1996) (citing In re Northern Dist. of California, Dalkon Shield IUD Prods. Liab. Litig., 693 F.2d 847, 856 (9th Cir. 1982), cert. denied, 459 U.S. 1171 (1983)). "A class action is

---

[9] Because Plaintiff is not a member of the proposed Overtime Recalculation Wage Statement Class, it is unnecessary to address Defendant's contention that Plaintiff released his wage statement claim pursuant to a settlement in Tran et al. v. H&M Hennes & Mauritz, L.P., Santa Clara County Superior Court, Case No. 111cv215599.

Case No.: 5:16-cv-00333-EJD
ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR CLASS CERTIFICATION
22

1    the superior method for managing litigation if no realistic alternative exists." Id.

2        As already discussed, Plaintiff's claims challenge Defendant's common policies and

3    practices. The alternative to this case proceeding as a class action would be the filing of

4    hundreds, if not thousands, of individual claims. Individual suits would not be economically

5    feasible because the putative class members are hourly employees with relatively modest

6    individual claims. Under these circumstances, a class action is superior to other available

7    methods for the fair and efficient adjudication of the claims in this case.

8                               VI. CONCLUSION

9        For the reasons set forth above, Plaintiff's motion for class certification is GRANTED in

10   part and DENIED in part as follows:

11        1. Plaintiff's motion to certify The Class is granted with respect to the security check

12           claims to the extent these claims are predicated upon wait time and security checks at

13           the end of a shift and at closing. Plaintiff's motion to certify The Class with respect

14           to security checks conducted before rest breaks is denied.

15        2. Plaintiff's motion to certify the Money Network Paycard Class is granted.

16        3. The Court certifies Plaintiff as class representative for The Class (as limited by this

17           Order) and the Money Network Paycard Class.

18        4. Plaintiff's counsel of record, Larry W. Lee and Kristen M. Agnew of the Diversity

19           Law Group, P.C., Dennis S. Hyun of Hyun Legal, APC, and William L. Marder of

20           Polaris Law Group LLP, are appointed as class counsel.

21        5. Plaintiff's motion to certify the Overtime Recalculation Wage Statement Class is

22           DENIED.

23        **IT IS SO ORDERED.**

24   Dated: August 8, 2018

25                                        _____

26                                EDWARD J. DAVILA
                                    United States District Judge

27

28   Case No.: 5:16-cv-00333-EJD
     ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR
     CLASS CERTIFICATION