United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

SER LAO,

          Plaintiff,

   v.

H&M HENNES & MAURITZ, L.P.,

          Defendant.

Case No. 5:16-cv-00333-EJD

**ORDER DENYING MOTION TO DECERTIFY CLASS**

Re: Dkt. No. 122

      This matter is a wage and hour class action against the clothing retailer H&M. Last August, the court certified the class "[a]ll current and former non-exempt retail store employees who were employed by [H&M] in the State of California at any time from December 11, 2011, through the present" with respect to Plaintiff's claims predicated on security checks, and any associated wait times, performed at the end of an employee's shifts or at closing. Dkt. No. 81 (the "Certification Order"). H&M now moves to decertify that class. The court has considered the parties' briefing and exhibits, their oral arguments, and the relevant law. The court now denies the motion.

    I.    <u>Background</u>

      The court previously certified two classes in this litigation. Certification Order at 23. One class concerns former employees of H&M that received their final wages in the form of a Money Network Paycard. This class is not at issue here. The other class encompasses all H&M retail employees, and its claims turn on H&M's alleged policy of requiring all retail employees to undergo a visual inspection by a manager (or other designated person) after they clock out—either at the end of a shift or at closing—but before they leave the H&M store where they work (the

"Class"). Plaintiff contends that H&M uses two types of security checks: (1) bag inspections, where only retail employees that have a bag must allow a manager to check the bag before leaving, and (2) visual inspections, where every retail employee—regardless of whether they have a bag—must inform a manager of when they leave, allowing the manager to observe their person. Plaintiff argues that, under California law, the time taken for the visual inspections and for any waiting prior to the inspections is compensable.

In the Certification Order, the court considered H&M's written Internal Theft Prevention Policy (the "Policy"), and the depositions of H&M's witnesses and various class members. The Policy, in relevant part, provides:

> All employees, regardless of position or assignment, that have entered a store carrying a bag, purse, briefcase, backpack, etc., will have that bag visually searched by a member of management (or Uniformed Guard where applicable) prior to exiting the store. The only exception is when an employee is only shopping on the sales floor. If an employee goes into an 'employee only' area (breakroom, manager's office, etc.) then they must be inspected before exiting the work location if they have a bag, purse, briefcase, backpack, etc.
>
> It is very important that all staff understand that when they leave the store, if a manager or security officer is not at the door, they need to seek out a manager and have their bag inspected. If an employee does not have a bag, purse, briefcase, backpack, etc., they do not need to wait for a member of management before exiting the store but <u>inform a member of management that they are leaving the store</u> for their safety. <u>Any coats or jackets worn while exiting the store without a bag must be unzipped and unbuttoned</u>.

Certification Order at 3 (emphasis added). H&M's corporate designee on the security check policy, Corey May, testified, "If an employee in California was wearing outerwear, I suppose they would need to have it open as they walked out." May Dep. at 156:12-22. Another H&M witness testified that retail employees had to check in with the appropriate manager before leaving, and, at that point, the manager would see whether the employee had a bag, jacket, or coat. Fritt Dep. at 34:17-35:6. Class members testified to H&M's policy of requiring employees to be seen by a manager before leaving. Bynes Depo at 30:13-24 (manager must visually see the employee before the employee leaves); Lalas Depo at 47:12-22, 48:2-6 (manager must see the employee leave); Loke Depo at 58:23-59:3, 63:16-19 (H&M's policy requires manager to check outerwear when

they are leaving); Pund Depo at 35:7- 11 (employee leaving store with a coat or jacket but no bag must be inspected before leaving); Vergara Depo at 36:2-24 (manager must confirm that an employee is not exiting the store with a zipped jacket or coat). These checks occur after the employees are off the clock. May Dep. at 107:6-11, 123:5-19. Based on this evidence, the court found that H&M had a common practice of requiring employees to undergo a visual inspection after clocking out and before leaving, regardless of whether they brought a bag to work. Whether H&M was required to compensate employees for the time in between clocking out and completing the visual inspection is a question common to the Class. Certification Order at 14-15. Because the evidence indicated that this policy and procedure applied to all H&M employees, the court found that Plaintiff had satisfied the requirements for commonality and predominance under Rule 23. *Id.* at 11-16, 18-19. The court also found that H&M's arguments that individual questions— *e.g.*, whether an employee brought a bag on a particular day, whether the manager on duty followed the policy, how long the wait and/or inspection took—primarily related to damages and did not defeat the predominance arising from H&M's purported companywide policy of requiring uncompensated visual inspections. *Id.* at 19.

Both parties moved for summary judgment on the claims connected to the Class. Dkt. Nos. 112, 113. The court found that whether H&M mandated security checks for all retail employees or only retail employees with bags was a disputed question of material fact. Dkt. No. 139 at 5. This dispute was sufficient to deny H&M's motion. *Id.* It was also sufficient to deny Plaintiff's motion because if a reasonable fact finder concluded that the Policy only applied to bags, then whether the checks occurred with such irregularity as to make it unreasonable to expect employers to compensate employees for the time was also a disputed question of material fact. *Id.* at 6. The court based its reasoning on the 25 depositions of class members that were conducted after the court issued the Certification Order. *Id.* at 1-2.

II.   Legal Standard

A district court may exercise its sound discretion to decertify a class. *O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 409 (C.D. Cal. 2000) (citing *Knight v. Kenai Peninsula Borough*

*School Dist.*, 131 F.3d 807, 816 (9th Cir.1997); *see* Fed. R. Civ. P. 23(c)(1)(C). The "party seeking decertification of a class bears the burden of demonstrating that the elements of Rule 23 have not been established." *Zakaria v. Gerber Prod. Co*., 2017 WL 9512587, at *16 (C.D. Cal. Aug. 9, 2017) (collecting cases). "This burden is relatively heavy, since any doubts regarding the propriety of class certification should be resolved in favor of certification." *Sandoval v. M1 Auto Collisions Ctrs*, 2016 WL 6561580, at *12 (N.D. Cal. Sept. 23, 2016) (quoting *Rosales v. El Rancho Farms*, 2014 WL 321159, at *4 (E.D. Cal. Jan. 29, 2014)). Decertification should not be granted "'except for good cause,' such as 'discovery of new facts or changes in the parties or in the substantive or procedural law.'" *Morales, et al. v. Kraft Foods Grp., Inc*., 2017 WL 2598556, at *20 (C.D. Cal. June 9, 2017) (quoting *Ramirez v. Trans Union, LLC*, 2016 WL 6070490, at *2 (N.D. Cal. Oct. 17, 2016). On a motion to decertify, the court must engage in a "rigorous analysis into whether the prerequisites of Rule 23 are met." *O'Connor*, 197 F.R.D. at 409 (quotation and citation omitted); *see also Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Rule 23(a) requires that (1) the members of the class must be so numerous that joinder is impracticable, (2) there must be questions of law or fact common to the class, (3) the representative's claims and defenses must be typical of the class members' claims and defenses, and (4) the representative must fairly and adequately protect the interests of the class. The class must also meet one of the requirements of Rule 23(b). Here, Plaintiff seeks to maintain the Class subject to Rule 23(b)(3)'s requirements that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

"In California, wage and hour claims are . . . governed by two complementary and occasionally overlapping sources of authority: the provisions of the Labor Code, enacted by the Legislature, and a series of 18 wage orders, adopted by the [Industrial Welfare Commission ("IWC")]." *Troester v. Starbucks Corp*., 5 Cal. 5th 829, 839 (2018), *as modified on denial of reh'g* (Aug. 29, 2018) (citation and quotation omitted). "The IWC's wage orders are to be accorded the same dignity as statutes. They are presumptively valid legislative regulations of the

employment relationship, regulations that must be given independent effect separate and apart from any statutory enactments." *Id.* (citations and quotations omitted). IWC Order No. 2001-7 defines "hours worked" as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code Regs., tit. 8, § 11070(2)(G). "Hours worked" by an employee are compensable. *See id.* § 11070(3)(A)(1), 4(B); *see also Troester*, 5 Cal. 5th at 840; *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575, 587 (2000), *as modified* (May 10, 2000).

### III. Discussion

H&M argues that the Class should be decertified because it cannot met the commonality requirement of Rule 23(a)(2), it fails the predominance requirement of Rule 23(b)(b)(3), it is not ascertainable, and Plaintiff has not submitted a manageable trial plan. The court considers each argument.

#### a. Commonality

H&M's first argument is that testimony from 25 class members deposed after the Certification Order shows that the Class lacks commonality. "[C]ommonality requires that the class members' claims 'depend upon a common contention' such that 'determination of its truth or falsity will resolve an issue that is central to the validity of each claim in one stroke.'" *Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014) (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 588 (9th Cir. 2012)). "The existence of even one significant issue common to the class is sufficient to warrant certification." *Californians for Disability Rights, Inc. v. California Dept. of Transp.*, 249 F.R.D. 334, 346 (N.D. Cal. 2008). "[A]ll that Rule 23(a)(2) requires is a single significant question of law or fact." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 603 (C.D. Cal. 2015) (quoting *Abdullah v. U.S. Sec. Assocs., Inc.* 731 F.3d 952, 957 (9th Cir. 2013)).

H&M contends that these depositions indicate (a) that it did not have a uniform policy requiring security check of retail employees who did not have bags, (b) that any security checks of retail employees without bags was the product of inconsistent or incorrect applications of the

United States District Court
Northern District of California

Policy, and (c) that the visual inspections, when they did occur, were so brief as to be non-compensable under California law. As to the first argument, H&M primarily relies on the deposition testimony of class members Kimberly Cuevas, Javier Lopez, Juan Sanchez, and Duarte Sousa to argue that it does not require security checks of employees without bags. Cuevas testified about the security check process as follows:

> Q:      [D]o you always have to go through a security inspection before you can leave?
>
> A:      Yes.
>         . . . .
>
> Q:      And whether you had a bag or you didn't have a bag, you still need a manager to check you; is that right?
>         . . . .
>
> A:      [Y]es, because even if I don't have anything, I still have to let somebody know that I'm going to walk out with no bag. So yes, like I still have to get inspected.
>
>         * * * *
>
> Q:      Could you describe for me what the visual inspection consists of?
>
> A:      I can let one of my peers know that I don't have a bag and I'm about to walk out of the store. They can simply walkie it over the walkie and let them know that Kim is walking out with no bag and they will copy as a yes that I can go. That's the visual one. Sometimes they don't even have to look. They can verify it from the peer who I'm asking that I'm walking out.
>
>         * * * *
>
> A:      [W]hen I don't have a bag or any personal belongings . . . . We can call for a walkout with a walkie-talkie and they just verbally say that I am walking out with no bag and they – we'd just hear a "yes" and an "okay" and we can leave and that's when they don't even have to inspect us, the manager.
>
> Q:      So they don't even have to see you before you leave?
>
> A:      Yes, they don't even have to see me.

Cuevas Dep. at 16:4-12, 17:10-20, 43:14-23 (emphasis added). She further testified that the security check process could take up to two to three minutes. *Id.* at 34:22-36:14. Lopez testified:

Q:     So whether it's an actual physical inspection of your bag or a visual inspection when you don't have a bag, are you required to undergo some sort of check every time you leave the store?

A:     Yes.

Q:     <u>So you can't just leave the store without having a manager's approval?</u>

A:     <u>Yeah, pretty much. Even if you don't have a bag, you have to just let them know, "Hey, I'm walking out without a bag." Or "Hey, I have a bag. It needs to be checked."</u>

Q:     So whether you have a bag or not, you still need a manager to check you?

A:     Yeah.

*Id.* at 10:16-23, 11:4-17 (emphasis added). Sanchez testified:

Q:     So if you did not have a bag, you could just walkie the manager and tell her that you're leaving?

A:     Correct.

Q:     <u>And would the manager have to visually confirm that you did not have a bag?</u>

A:     <u>Correct.</u>

* * * *

Q:     So can you walk me through the process of you leaving the store without a bag? What was it you would have to do?

A:     You would typically let them know through the walkie-talkie that our shift was over. <u>Once that occurred, we would pass by the cashier's station, where they would be located at times, and I believe that would be the way they would just look at us and see, "Oh, he doesn't have a bag," and would let us go.</u>

Q:     So you wouldn't -- you would basically, as you were walking out, just walk by the area that they were located so that they can confirm that you didn't have a bag?

A:     Correct.

Q:     So you didn't actually even have to stop? You just walked by so that they could see that you didn't have a bag?

A:     In my situation, I would just walk by the cashier so they can confirm. I'm not sure about the rest or the others.

Sanchez Dep. at 10:20-11:5, 21:2-6, 26:5-24 (emphasis added).  Sousa testified:

> Q:     Were there ever days in which you weren't wearing a coat and you did not have a lunch bag?
>
> A:     Yes.
>
> Q:     <u>And on those occasions, what would you have to do in order to undergo the security check?</u>
>
> A:     <u>Just find a manager and notify them that you're leaving the store.</u>
>
> Q:     And would that just consist of -- could you go up to them in person and say, "I'm leaving. I'm clocked out, I'm leaving" and proceed to exit?
>
> A:     Yes.

Sousa Dep. at 33:22-34:7 (emphasis added).  H&M also cites testimony from other class members. Those individuals' testimony is materially similar.  *See e.g.*, Llagas Dep. at 47:14-17 ("If they did not have a bag, they weren't allowed to leave the store unless they notified us to confirm that they didn't have any personal belongings to be checked.").

The testimony of these class members does not support H&M's argument.  Instead of indicating that retail employees who bring bags are subject to security checks while retail employees without bags are not, the depositions are evidence that all retail employees are subject to visual inspections, regardless of whether they brought a bag, *and* that retail employees with bags are subject to an additional inspection.  They suggest that the visual inspection required, at minimum, informing a manager that they were about to leave—which provided the manager with the opportunity to observe the employee.  That employees with bags had to undergo a more intensive bag inspection in addition to a visual inspection does not harm the commonality of the Class.  Other deponents confirmed that retail employees must go through this visual inspection process or face disciplinary action.  *See, e.g.*, May Dep. at 142:10-143:10, 145:24-151:22; Perez Dep. at 17:17-23.

For Plaintiff's claims to succeed, he will have to prove that class members were under the control of H&M during the visual inspections.  Showing that "an employee is subject to the

control of an employer" has two elements.  Cal. Code Regs., tit. 8, § 11070(2)(G); *Frlekin v. Apple Inc*., 2015 WL 6851424, at *3 (N.D. Cal. Nov. 7, 2015).  "The first is that the employer restrains the employee's action during the activity in question.  The second is that the employee has no plausible way to avoid the activity; put differently, the activity must be mandatory and not optional at the discretion of the worker."  *Frlekin*, 2015 WL 6851424, at *3.  Whether the visual inspections—apart from the bag inspections—meet these two elements are common questions of law and fact and can be answered with common proof.[1]

H&M next argues that the Policy's inconsistent application to various class members and across different times precludes a finding of commonality.  This argument fares no better. Whether retail employees were required to tell a manager that they were leaving—allowing the manager to see them—(*see, e.g.*, Sousa Dep. at 33:22-34:7; Perez Dep. at 15:8-16:1), to stand in front of a security camera so they could be inspected remotely (*see, e.g.*, Camacho Dep. at 39:1-8), or to be escorted to the exit (*see, e.g.*, Johnson Dep. at 25:5-22) has no material impact on the commonality analysis.  These purported inconsistencies do not "negate" Plaintiff's allegations that, before they are permitted to leave, all class members must (1) inform a manager that they are leaving, and (2) submit to a visual inspection of their person.  Nor do the purported inconsistencies suggest that that the visual inspections—whatever precise form they take—are not mandatory. Rather, they are minor and do not defeat commonality.  *See Moore*, 311 F.R.D. at 611.  H&M's cases are inapposite.  In *Quinlan v. Macy's Corp. Servs.*, *Inc.*, 2013 WL 11091572, at *5 (C.D. Cal. Aug. 22, 2013) and *Ogiamien v. Nordstrom, Inc*., 2015 WL 773939, at *4 (C.D. Cal. Feb. 24, 2015), the district courts denied class certification because the security checks were intentionally

---

[1] In its order on the parties' recent cross motions for partial summary judgment, the court found that whether H&M's security checks extended to all employees or only employees with bags was a disputed fact contributing to the court's denial of both parties' motions.  Dkt. No. 139 at 5-6. That finding does not conflict with the court's finding here (and in the Certification Order) that Plaintiff has presented sufficient evidence to certify a class based on a uniform visual inspection policy.  Summary judgment and class certification are separate inquires with different burdens. *See Sali v. Corona Reg'l Med. Ctr*., 909 F.3d 996, 1006 (9th Cir. 2018) ("[T]he proof required to establish standing varies at the complaint, summary judgment and trial phases.  Similarly, the manner and degree of evidence required at the preliminary class certification stage is not the same as at the successive stages of the litigation—i.e., at trial.").

random and did not apply to all retail employees. In contrast, the Policy applies to *all* H&M retail employees so that liability for the uncompensated time would apply for the Class. *Heredia v. Eddie Bauer LLC*, 2018 WL 369032, at *7 n.2 (N.D. Cal. Jan. 10, 2018) (distinguishing *Quinlan, Inc.*, 2013 WL 11091572 and *Ogiamien*, 2015 WL 773939).

H&M also argues that that H&M changed the Policy in 2015, so the court should decertify the Class after 2015. This argument is not persuasive. The relevant witnesses testified that even with the policy change, retail employees still had check in with their managers before they could leave. *See, e.g.*, Carrillo Dep. at 20:11-17 ("A: Now you would clock out, and you would just let the manager know, hey, I'm walking out without a bag. Q: But you would still have to look for a manager to let them know; right? A: Yes."); Laredo Dep. at 13:10-14 ("Q: So after this policy changed sometime in 2015 or 2016, when leaving without a bag, either a different employee or a manager could give you a once-over visual inspection, and then you could leave the store? A: Yes."); Martin Dep. at 46:3-16 (testifying that after the policy change "You just would say visual, hey, I'm leaving, to the manager and show them your keys and that's it. . . . . [W]e visually would see each other."). These depositions are not grounds to decertify the class after the purported policy change.

Finally, H&M argues that the visual inspections could be so brief that they are not compensable under *Troester*.[2] In *Troester*, the California Supreme Court held that "[a]n employer that requires its employees to work minutes off the clock on a regular basis or as a regular feature of the job may not evade the obligation to compensate the employee for that time by invoking the de minimis doctrine." 5 Cal. 5th at 847. But it expressly "le[ft] open whether there are wage claims involving employee activities that are so irregular or brief in duration that employers may not be reasonably required to compensate employees for the time spent on them." *Id.* at 848. The Ninth Circuit adopted *Troester*'s holding and reasoned that its rule "does not require employers to account for split-second absurdities, and it might not apply in cases where work is so irregular that

---

[2] H&M also raises this argument in the context of Rule 23(b)(3)'s predominance requirement. The discussion below applies to both the commonality and predominance requirements.

it is unreasonable to expect the time to be recorded." *Rodriguez v. Nike Retail Servs., Inc.*, 928 F.3d 810, 818 (9th Cir. 2019) (quotations, alterations, and citations omitted). H&M argues that it is not liable for employees who did nothing more than inform employers that they were leaving. Plaintiff counters because the visual inspections took place off the clock, liability is established and the question of how long the visual inspections take goes to damages.

The court agrees with H&M that whether off-the-clock time is too brief or irregular to be compensable is a liability question, not a damages question. But the court also finds that it does not defeat commonality. In their concurrences to *Troester*, Justice Cuellar and Justice Kruger addressed whether, in certain circumstances, the "de minimis principle" can still apply to California wage and hour claims as a "rule of reason." 5 Cal. 5th at 848-53 (Cuellar, J. concurring); *id.* at 853-56 (Kruger, J. concurring). The court finds their analyses to be well-reasoned and it adopts their concurrence to address the present question. Justice Kruger reasoned that "[t]he overarching rule is, and must be, that employees are entitled to full compensation for time worked, and employers must make every reasonable effort to ensure they have adequately measured or estimated that time." *Id.* at 855. However, some off-the-clock work may be "so brief, irregular of occurrence, or difficult to accurately measure or estimate, that it would neither be reasonable to require the employer to account for them nor sensible to devote judicial resources to litigating over them." *Id.* Thus, "[a] sensible application of our law does not encompass claims for negligible periods of time that cannot reasonably be measured or estimated with a fair degree of accuracy." *Id.* at 854. Justice Cuellar framed this rule, like the federal de minimis doctrine, as a defense to liability to be proven by a defendant: "[O]nce claimed time is established as compensable, the onus is on the employer to demonstrate that 'reason' requires the employee to go uncompensated for the time she worked given California's strong policy favoring compensation." *Id.* at 850 (Cuellar, J. concurring); *see also Moore*, 311 F.R.D. at 604 & n.18 (pre-*Troester* case applying the federal de minimis defense and noting that "[c]ourts treat the de minimis defense as an affirmative defense or have not objected to the parties' characterization as such."). This post-*Troester* defense is "quite limited" compared to the de minimis doctrine. *Id.* at 850 (Cuellar, J.

concurring).  Accordingly, this inquiry goes to liability not damages.

However, this liability question does not preclude class certification.  Contrary to H&M's arguments, applying this "rule of reason" does not raise a host of individual questions about each class member.  Rather, given the written Policy and the uniformity of class members' testimony that they were required to check in with their managers after they clock out and before they leave, it raises common questions, such as: (a) under these circumstances, how much time would constitute a non-compensable "brief" period of time, and (b) whether it be administratively feasible for H&M to take additional steps to compensate employees for the visual inspections.  Pre-*Troester* U.S. District Courts that considered the federal de minimis doctrine's application to California wage and hour laws found that the de minimis doctrine raised common, not individual questions.  *See e.g.*, *Moore*, 311 F.R.D. at 604, 618 (certifying class of retail employees subject to exit inspections); *Rai v. Santa Clara Valley Transportation Authority*, 308 F.R.D. 245, 259 & n.93 (N.D. Cal. 2015) (certifying class).  Even though the post-*Troester* rule of reason defense is significantly more limited than the federal de minimis doctrine, the court finds these analyses to offer some guidance here.  The sliver of the de minimis doctrine that appears to have survived *Troester* does not defeat commonality or predominance.

H&M has not shown that the class member depositions taken after the court issued the Certification Order warrant decertifying the class.

### b.  Predominance

H&M also argues that the Class does not satisfy Rule 23(b)(3)'s requirement that common questions predominate over individualized questions.  "The predominance inquiry tests whether a proposed class is sufficiently cohesive to warrant adjudication by representation."  *Heredia*, 2018 WL 369032, at *10 (N.D. Cal. Jan. 10, 2018).  "The requirement is more demanding than Rule 23(a) and its commonality requirement, because a plaintiff must show not only that common questions of law or fact exist but that they actually predominate over questions only affecting individual class members."  *Id.*  H&M argues that because the *bag* inspections took different lengths of time—depending on a number of factors such as whether the employee was working a

night or day shift, how busy the store was, etc.—that individual questions predominate. However, Plaintiff can establish liability by showing that class members were subject to H&M's control. *Frlekin*, 2015 WL 6851424, at *3, 7-8. So, any variance in the amount of time taken on bag inspections is a question of damages, not liability. However, "damages determinations are individual in nearly all wage-and-hour class actions" and individualized "damage calculations alone cannot defeat certification." *Leyva v. Medline Indus. Inc*., 716 F.3d 510, 513 (9th Cir. 2013). Individualized questions as to the length of the bag checks do not defeat predominance.

### c. Ascertainability

H&M argues that certification should be denied because the Class is not ascertainable: "Determining whether employees were subjected to uncompensated time would require testimony from each of the class members regarding a host of independent and individualized factors. . . . Simply put, not all current and former non-exempt retail employees were harmed by H&M's Security Check Policy." Mot. at 20. H&M raised already raised this argument in its opposition to Plaintiff's motion for class certification. Dkt. No. 66 at 18-19 ("[T]he Class as defined . . . is imprecise and overbroad because it includes individuals who suffered no harm. . . . [A]n individualized inquiry is the only way to ascertain which members of the Class suffered harm due to the security check process."). In the decertification motion, H&M cites no facts discovered after the Certification Order. Instead, H&M merely repeats an argument that the court has already considered and rejected. *See* Certification Order at 16. This repeated argument is not grounds for decertification. *See Morales*, 2017 WL 2598556, at *20.

### d. Trial Plan

H&M's final argument is that class certification should be denied because Plaintiff has not provided an adequate trial plan. H&M is incorrect as a matter of law. As H&M concedes, Rule 23 does not require a plaintiff to offer a trial plan to maintain class certification. The Ninth Circuit does not require it either. *Chamberlan v. Ford Motor Co*., 402 F.3d 952, 961 n.4 (9th Cir. 2005) (declining to "graft[] a requirement for a trial plan onto [Rule 23]"); *see also, e.g.*, *United States ex rel. Terry v. Wasatch Advantage Grp., LLC*, 327 F.R.D. 395, 419 (E.D. Cal. Jul. 30, 2018);

*Waldrup v. Countrywide Fin. Corp.*, 2018 WL 799156, at *17 (C.D. Cal. Feb. 6, 2018); *Martino v. Ecolab, Inc.*, 2016 WL 614477, at *10 (N.D. Cal. Feb. 16, 2016). The Ninth Circuit cases cited by H&M—*Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180 (9th Cir. 2001), and *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1233 (9th Cir.1996)—do not help its argument. In *Zinser*, the plaintiff sought to certify a nationwide class that would potentially require the application of the law of 48 states. 253 F.3d at 1189. That case is simply not analogous to this case, where the Class consists of California workers and the claims are based solely on California law. And in *Valentino*, the Ninth Circuit vacated the district court's class certification order because the predominance requirement had not been met—not solely because the plaintiff had not submitted a trial plan. 97 F.3d at 1234. In *Chambelain*, the Ninth Circuit clarified that "*Valentino* does not stand for this proposition." 402 F.3d at 961 n.4. This argument does not persuade the court.

IV.    Conclusion

For the reasons discussed above, H&M's motion to decertify the Class is denied.

**IT IS SO ORDERED.**

Dated: December 30, 2019

EDWARD J. DAVILA
United States District Judge