**DIVERSITY LAW GROUP, P.C.**
Larry W. Lee, State Bar No. 228175
E-mail: lwlee@diversitylaw.com
Kristen M. Agnew, State Bar No. 247656
E-mail: kagnew@diversitylaw.com
Nicholas Rosenthal, State Bar No. 268297
E-mail: nrosenthal@diversitylaw.com
Max W. Gavron, State Bar No. 291697
E-mail: mgavron@diversitylaw.com
Kwanporn "Mai" Tulyathan, State Bar No. 316704
E-mail: ktulyathan@diversitylaw.com
515 S. Figueroa Street, Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Class
(Additional Counsel on Next Page)

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SER LAO, as an individual and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>H & M HENNES & MAURITZ, L.P., a New York limited partnership; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. 5:16-cv-333 EJD<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Date:        April 30, 2020<br>Time:        9:00 a.m.<br>Courtroom: 4, 5th Floor<br>Judge:       Hon. Edward J. Davila |

**POLARIS LAW GROUP LLP**
William L. Marder, State Bar No. 170131
Email: bill@polarislawgroup.com
501 San Benito Street, Suite 200
Hollister, CA 95023
(831) 531-4214
(831) 634-0333 facsimile

**HYUN LEGAL, APC**
Dennis S. Hyun, State Bar No. 224240
E-mail: dhyun@hyunlegal.com
515 S. Figueroa Street, Suite 1250
Los Angeles, CA  90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Class

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 5:16-CV-333 EJD**

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on April 30, 2020, at 9:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 4 of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, CA 95113, before the Honorable Edward J. Davila, Plaintiff Ser Lao ("Plaintiff") will and hereby does move the Court for preliminary approval of the proposed class action settlement.  Specifically, Plaintiff respectfully requests that the Court:  (1) grant preliminary approval for the proposed class action settlement; (2) grant conditional certification of the proposed Settlement Class, comprised of all non-exempt retail store employees of Defendant in California at any time from January 8, 2013, through October 31, 2019; (3) authorize the mailing of the proposed notice to the class of the settlement; and (4) schedule a "fairness hearing," i.e., a hearing on the final approval of the settlement.

Plaintiff makes this unopposed motion on the grounds that the proposed settlement is within the range of possible final approval, and notice should, therefore, be provided to the class. This Motion is based upon this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, the attached Memorandum of Points and Authorities in Support, the Declarations of Larry W. Lee, Kristen M. Agnew, Nicholas Rosenthal, Max W. Gavron, Kwanporn "Mai" Tulyathan, Dennis S. Hyun, William L. Marder, and Ser Lao filed herewith, the Joint Stipulation of Class Action Settlement and Release filed herewith, any oral argument of counsel, the complete files and records in the above-captioned matter, and such additional matters as the Court may consider.

DATED:  March 6, 2020                    DIVERSITY LAW GROUP, P.C.

By:      /s/ Larry W. Lee
                Larry W. Lee
                Attorneys for Plaintiff and the Class

3

**TABLE OF CONTENTS**

Page(s)

I. INTRODUCTION AND SUMMARY OF AGREEMENT ............................................. 9

    A. Factual Allegations ......................................................................................... 9

    B. Procedural Background. ................................................................................ 10

        *a. Summary of the Litigation.* ................................................................... 10

        *b. Summary of Investigation and Discovery.* ......................................... 12

    C. Summary of the Current Settlement. ........................................................... 13

    D. The Settlement is Fair, Reasonable, and Adequate. .................................. 15

II. LEGAL ANALYSIS ....................................................................................................... 16

    A. The Class at Issue and the Settlement Fund .............................................. 16

    B. Two-Step Approval Process. ....................................................................... 17

    C. The Standard for Preliminary Approval. .................................................. 18

    D. The Court Has Already Certified the Classes and Therefore Should Certify the Settlement Class For the Same Reasons. ......................................................... 19

    E. The Settlement is Fair and Reasonable and Not the Result of Fraud or Collusion. ................................................................................................................ 20

        1. The Settlement May be Presumed Fair and Reasonable. ....................... 20

            a. Experience of Class Counsel. ........................................................ 21

            b. Investigation and Discovery Prior to Settlement. ...................... 22

        2. The Settlement is Fair, Reasonable, and Adequate. .............................. 24

            a. Risks of Proceeding with Trial and Any Appeals. ...................... 24

            b. The Settlement is Within the Range of Reasonableness ............ 25

            c..The Complexity, Expense, and Likely Duration of Continued Litigation Against the Settling Defendant Favors Approval. ......................... 26

            d. Non-Admission of Liability by Defendant. .................................. 27

4

**F.**   **The Notice to be Given is the Best Practicable.**......................................................... **27**

**G.**   **Attorney's Fees, Costs, and Class Representative Enhancement.**......................... **28**

**H.**   **Settlement Administrator**.......................................................................................... **28**

**III.**   **CONCLUSION** ........................................................................................................... **29**

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**
**CASE NO. 5:16-CV-333 EJD**

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Aris Jefferson v. H & M Hennes & Mauritz L.P. et al*, Case No. CV 11-7683 CAS (JCGx)....... 15

*Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 616-17 (N.D. Cal. 1979)................................................ 24

*Frlekin v. Apple Inc.*, 2015 WL 6851424 (N.D. Cal. Nov. 7, 2015) ...................................... 12, 25

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)................................................................ 24, 26

*Hammon v. Barry*, 752 F. Supp. 1087, 1093-1094 (D.D.C. 1990)................................................ 21

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ........................... 21

*In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 962 (N.D. Ga. 1980)......................................... 21

*In re Excess Value Ins. Coverage Litig.*, No. M-21-84 (RMB), 2004 WL 1724980, at *10

   (S.D.N.Y. July 30, 2004) ......................................................................................................... 20

*In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir. 1995)..................................................... 24

*In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001) ................... 20

*Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co.*, 834 F.2d 677, 682 (7th Cir.

   1987) ........................................................................................................................................ 21

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004).... 21, 26

*Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625

   (9th Cir. 1982)............................................................................................................ 18, 19, 26

*Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp.*, 323 F. Supp. 364, 372

   (E.D. Pa. 1970).......................................................................................................................... 18

*Priddy v. Edelman*, 883 F.2d 438, 447 (6th Cir. 1989)................................................................ 21

*Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*, 79 F.R.D. 571, 576 (E.D. Pa. 1978) 21

*Steinberg v. Carey*, 470 F. Supp. 471, 478 (S.D.N.Y. 1979)........................................................ 21

*Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).......... 18, 19

*Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ......................................... 27

*Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997) ............................... 19

*Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ...................................................... 20

*Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971) ................................................................. 26

**State Cases**

*Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 517 (2018) ........................................ 23, 24

*Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000) ........................................................ 11

*Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018) ...................................................... 12, 24, 25

**Statutes**

Business & Professions Code §17200 ............................................................................... 10

California Civil Code § 1542 ............................................................................................ 28

Labor Code § 1194 ........................................................................................................ 10

Labor Code § 1197 ........................................................................................................ 10

Labor Code § 1197.1 ..................................................................................................... 10

Labor Code § 203 .......................................................................................................... 23

Labor Code § 226 .......................................................................................................... 23

Labor Code § 226(a) ...................................................................................................... 10

Labor Code § 226.7 ....................................................................................................... 10

Labor Code § 510 .......................................................................................................... 10

Labor Code § 512 .......................................................................................................... 10

Labor Code § 558 .......................................................................................................... 10

Labor Code §§ 201-203 .................................................................................................. 10

Labor Code § 2698 ........................................................................................................ 10

Labor Code § 2699(f)(2) ................................................................................................ 23

**Other Authorities**

4 Conte & Newberg, *Newberg on Class Actions*, § 11.26 (4th ed. 2010) ............................ 17, 19

4 Conte & Newberg, *Newberg on Class Actions*, § 11.41 (4th ed. 2010) ................................ 27

4 Conte & Newberg, *Newberg on Class Actions*, § 11.45 (4th ed. 2010) ................................ 25

4 Conte & Newberg, *Newberg on Class Actions*, §11.47 (4th ed. 2010) ................................. 21

5 James Wm. Moore et al., *Moore's Federal Practice* § 23.165 (3d ed. 2010) ........................ 18

Manual for Complex Litigation ("MCL") (4th ed. 2004), § 21.632 ............................... 17, 18, 24

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 5:16-CV-333 EJD**

**Rules**

Fed. R. Civ. P. 23 ................................................................................................ 20

Fed. R. Civ. P. 23(a) ........................................................................................... 17

Fed. R. Civ. P. 23(b) ........................................................................................... 17

Fed. R. Civ. P. 23(b)(3) ....................................................................................... 27

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................. 27

Fed. R. Civ. P. 23(e)(B) ....................................................................................... 27

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION AND SUMMARY OF AGREEMENT

Plaintiff Ser Lao ("Plaintiff") respectfully requests that the Court grant preliminary approval of the Joint Stipulation of Class Action Settlement and Release (hereinafter referred to as "Settlement Agreement") that he has reached in the above-captioned matter with Defendant H & M Hennes & Mauritz, L.P. ("Defendant" or "H&M") (Plaintiff and Defendant collectively referred to as the "Parties").

####      A.      Factual Allegations.

H&M is an international clothing retailer with over 80 stores in California. Plaintiff was hired by Defendant to work as non-exempt employee at one of Defendant's California retail stores. (Declaration of Ser Lao ("Lao Decl.") ¶ 2.) Plaintiff was employed by Defendant from on or about March 3, 2014, until on or about September 23, 2015. (*Id.*)

Plaintiff alleges, as with all other non-exempt retail store employees of Defendant in the State of California, that he was required to undergo off-the-clock security checks and/or visual inspections conducted at the end of each shift. Plaintiff claims that although said security checks and visual inspections were required after clocking out and before leaving the store, Defendant did not pay Plaintiff and other non-exempt employees any applicable minimum, regular, and/or overtime wages in connection with the time spent waiting and undergoing said security checks and visual inspections.

Additionally, Plaintiff further alleges that Defendant did not pay all wages owed to Plaintiff and other separating employees at the time of separation of employment, based on Defendant's policy and practice of issuing final wages in the form of pay cards. In this regard, Plaintiff received his final wages in the form of a pay card at the time of his termination of employment. However, Plaintiff asserts that he did not provide his consent or authorization to receive his final wages via a pay card. Thus, Plaintiff alleges that Defendant's issuance of final wages in the form of pay cards was not compliant with California law, as Defendant did not obtain authorization from Plaintiff or from each of the separating employees to pay final wages via pay card. Further, Plaintiff also alleges that the pay cards impose fees in order to use the

1  card, and thus denies Plaintiff and other employees access to all wages earned.

2        On the other hand, Defendant denies that it has engaged in any alleged unlawful conduct

3  and maintains that it has complied with California law and properly paid its employees in all

4  respects.  In this regard, Defendant alleges that its security checks and visual inspections do not

5  fail to compensate employees for all wages earned or for all time worked.  Defendant contends

6  that only employees who bring a bag are required to undergo security checks before leaving the

7  store, and thus employees are not necessarily under the "control" of Defendant as they have a

8  choice of whether to bring a bag to work.  Defendant further alleges that any time spent

9  undergoing a security check is brief or a split-second absurdity, and does not constitute

10  compensable time.  With respect to Plaintiff's pay card issue, Defendant maintains that its use of

11  pay cards to issue final wages to separating employees did not violate the California Labor Code.

12  In this regard, Defendant alleges that the pay cards did not deny employees access to their final

13  wages in a timely manner after separation of employment.

14        **B.**    **Procedural Background.**

15          *a.*  *Summary of the Litigation.*

16        On or about December 11, 2015, Plaintiff commenced this action in the Santa Clara

17  Superior Court, alleging the following causes of action:  (1) violation of California Labor Code §

18  226(a) for failure to provide accurate wage statements; (2) violation of California Labor Code §§

19  558, 1194**Error! Bookmark not defined.**, 1197, and 1197.1 for failure to pay minimum wages;

20  (3) violation of California Labor Code §§ 510, 558, 1194, and 1197.1 for failure to pay overtime

21  wages; (4) violation of California Labor Code §§ 226.7 and 512 for failure to provide proper

22  meal breaks; (5) violation of California Labor Code § 226.7 for failure to provide proper rest

23  breaks; (6) violation of California Labor Code §§ 201-203 for failure to pay earned and unpaid

24  wages at the time of separation; (7) violation of the Private Attorneys General Act ("PAGA"),

25  Labor Code § 2698, *et seq*., based on the above-stated Labor Code violations; and (8) violation

26  of the California Business and Professions Code § 17200, *et seq.* for unfair business practices.

27  On January 21, 2016, Defendant filed a Notice of Removal of Civil Action to the United States

28  District Court for the Northern District of California pursuant to the Class Action Fairness Act of

2005.  (Dkt. No. 1.)

The Parties thereafter fully briefed Defendant's first Partial Motion for Summary Judgment, which this Court denied on October 25, 2017.  (Dkt. No. 58.)  Specifically, Defendant contended that a prior settlement in the case *Tran v. H & M Hennes & Mauritz*, barred Plaintiff's claim for waiting time penalties.  (*Id.*)  This Court disagreed and denied Defendant's Motion. (*Id.*)  In connection with Defendant's Motion for Partial Summary Judgment, Plaintiff offered to dismiss his fourth cause of action for failure to provide proper meal breaks without prejudice. This Court, however, dismissed the claim with prejudice.  (*Id.*)

On or about December 13, 2017, Plaintiff filed his Motion for Class Certification.  (Dkt. No. 60.)  On August 8, 2018, the Court granted Plaintiff's motion in part, certifying a class with respect to Plaintiff's security check claims conducted at the end of shift and at store closing, which includes "[a]ll current and former non-exempt retail store employees who were employed by Defendants in the State of California at any time from December 11, 2011, through the present."  (Dkt. No. 81, pp. 8, 23.)  In addition, the Court also certified Plaintiff's pay card claims, consisting of "[a]ll former employees who were employed by Defendants in the State of California at any time from December 11, 2012, through the present, who during their employment received their normal payroll wages through check or direct deposit, but upon their separation of employment received their terminating wages in the form of a Money Network ATM Paycard."  (*Id.*)  The Court, however, declined to certify Plaintiff's rest break and wage statement claims.  (*Id.*)

Based on the Court's class certification ruling, the Parties thus continued to extensively litigate only the certified class claims.  With respect to the certified security check claims, the Parties filed cross-motions for summary judgment on liability over the security check policy.  On August 29, 2019, Plaintiff filed his motion for partial summary judgment, arguing that Defendant exercised "control" over class members by requiring all class members to undergo off-the-clock security checks and visual inspections at the end of their shift or at store closing.  (Dkt. No. 112.) Thus, Plaintiff believes that this constitutes compensated paid time pursuant to *Morillion v. Royal Packing Co.*, 22 Cal. 4th 575 (2000) and *Troester v. Starbucks Corp.*, 5 Cal. 5th 829

1  (2018).  (*Id.*)  Defendant subsequently filed its cross-motion on September 26, 2019, arguing that

2  it is entitled to summary judgment because it only requires employees who bring a bag to

3  undergo security checks prior to leaving the store.  (Dkt. No. 113.)  Thus, pursuant to *Frlekin v.*

4  *Apple Inc.*, 2015 WL 6851424 (N.D. Cal. Nov. 7, 2015), Defendant argues that class members

5  have a choice as to whether to bring a bag to work, and thus are not necessarily under the

6  "control" of Defendant.  (*Id.*)  Subsequently, on November 7, 2019, Defendant also moved to

7  decertify the class solely with respect to Plaintiff's certified security check claims.  (Dkt. No.

8  122.)  On November 25, 2019, the Court denied both Parties' summary judgment motions,

9  finding that whether Defendant mandated security checks for all retail stores or only employees

10  with bags was a disputed question of material fact.  (Dkt. No. 139.)  The Court also denied

11  Defendant's motion to decertify the class on December 30, 2019.   (Dkt. No. 149.)

12  *b.   Summary of Investigation and Discovery.*

13  With respect to investigation and discovery, Plaintiff conducted extensive investigation

14  of the facts surrounding the claims in this action before filing suit, as well as conducted extensive

15  discovery during the course of litigating and prosecuting this case.  (Declaration of Larry W. Lee

16  ("Lee Decl.") at ¶ 3; Declaration of Dennis S. Hyun ("Hyun Decl.") at ¶ 8.)  The Parties

17  propounded and responded to multiple rounds of written discovery, including interrogatories and

18  requests for production of documents.  (*Id.*)  In connection with written discovery, Plaintiff also

19  obtained and reviewed Defendant's document production, including policy documents, class

20  contact information, and class time and payroll data.  (*Id.*)  Plaintiff's counsel also defended

21  Plaintiff's deposition and took multiple depositions of Defendant's FRCP 30(b)(6) Corporate

22  Representatives on various topics that impacted class certification and liability, including

23  traveling to New York to complete these depositions.  (Lee Decl. at ¶ 4; Hyun Decl. at ¶ 8.)

24  Over the course of litigation, Plaintiff took the depositions of approximately 40 current and

25  former employees of Defendant.  (*Id.*)  Plaintiff also subpoenaed and reviewed documents from

26  the third party company that generates the pay cards distributed by Defendant to its separated

27  employees. (Lee Decl. at ¶ 3.)   In addition, Plaintiff retained an expert, Brian Kriegler, Ph.D.

28  for purposes of liability and damages. (Lee Decl. at ¶ 5.)  Similarly, Defendant also retained

12

their own experts.  The Parties have conducted expert discovery, including deposing Dr. Kriegler, and submitting and reviewing expert and rebuttal expert reports.  (Lee Decl. at ¶ 5; Hyun Decl. at ¶ 8.)

In sum, as evidenced from the docket from the time of removal to the instant settlement, this case has been substantively and vigorously litigated by both Parties.  The Parties have also conducted extensive investigation and discovery, including formal written discovery; taking and defending depositions of Plaintiff, Defendant's corporate representatives, class members, and Plaintiff's expert; subpoenaing and reviewing relevant records from third parties; exchanging class data and documents; and conducting expert discovery.  (Lee Decl. at ¶ 6; Hyun Decl. at ¶ 8.)

### C.    Summary of the Current Settlement.

On January 9, 2019, the Parties attended an all-day mediation before Mark S. Rudy, Esq. After a full day of negotiations, the Parties were not able to reach a settlement.  (Lee Decl. at ¶ 7.)  The Parties then continued to negotiate for approximately one year after the mediation with Mr. Rudy's assistance.  (*Id.*)  Despite extensive arm's length negotiations during the mediation and further negotiations facilitated by Mr. Rudy, the Parties were unable to resolve the matter. (*Id.*)

The Parties were then able to resolve the case on a class-wide basis through a subsequent Settlement Conference held on January 10, 2020, before Magistrate Judge Nathanael M. Cousins.  (Lee Decl. at ¶ 8.)   As a result thereof, the Parties have reached the current settlement, as detailed fully in the Settlement Agreement.  The Settlement Agreement provides for a total settlement sum of $3,800,000.00, inclusive of payments to Settlement Class Members, the class representative enhancement, payment to the Labor & Workforce Development Agency ("LWDA") pursuant to the PAGA, attorneys' fees and costs, and settlement administration costs. (Settlement Agreement at § III(B)(1)).

Pursuant to the terms of the Settlement Agreement, the Net Settlement Proceeds ("NSP") (after deduction of attorneys' fees in the amount of up to $1,266,666.67, costs up to $250,000.00, the class representative enhancement fee in the amount of up to $15,000.00, PAGA payment in

the amount of $75,000.00 to the LWDA, or 75% of $100,000.00, and costs of settlement administration in the amount of approximately $41,750.00) is approximately $2,151,583.33 (Settlement Agreement at §§ III(B)(1)-(B)(8); Lee Decl. at ¶ 14).  As provided in the Settlement Agreement, 80 percent of the NSP will be allocated as statutory penalties and will not be subject to withholdings, and 20 percent of the NSP will be considered wages and will be subject to all applicable withholdings.  (Settlement Agreement § III(B)(10).)  Defendant has also agreed to be separately responsible for its employer-side share of payroll taxes.  (Settlement Agreement § III(B)(3).)

       **Significantly, this settlement is non-reversionary and claim forms are <u>not</u> required**. (Settlement Agreement § III(B)(1).)  In other words, none of the unclaimed settlement funds will revert back to Defendant and a Settlement Class Member need not do anything to receive his or her share.  Instead, the Class Member will automatically receive his or her share of the settlement funds so long as he or she does not opt-out from the settlement.  Moreover, the NSP available to Class Members will proportionately increase as the result of any opt-outs.  Thus, each Class Member's settlement amount could be further increased depending on the number of exclusions submitted.

       Moreover, any remaining monies from uncashed checks will be distributed equally between Legal Aid at Work (50%) and the Ali Forney Center (50%).  (Settlement Agreement § III(E)(2).)  Legal Aid at Work is a non-profit legal services organization that provides legal assistance to low-income individuals for issues related to employment, including any wage and hour issues, like those presented in this case.  The Ali Forney Center is a non-profit organization that provides various services to LGBT and at-risk homeless youth, including employment assistance, job training and preparation programs, and job placement.  The Parties do not have any relationship with Legal Aid at Work or with the Ali Forney Center.  (Lee Decl. at ¶ 20; Hyun Decl. at ¶ 11; Declaration of Kristen M. Agnew ("Agnew Decl.") at ¶ 12; Declaration of Nicholas Rosenthal ("Rosenthal Decl.") at ¶ 8; Declaration of Max R. Gavron ("Gavron Decl.") at ¶ 13; Declaration of Mai Tulyathan ("Tulyathan Decl.") at ¶ 11; Declaration of William L. Marder ("Marder Decl.") at ¶ 15.)

1    The Settlement Class Members include all non-exempt retail store employees who were

2    employed by Defendant in the State of California from the period of January 8, 2013, through

3    October 31, 2019 (referred to herein as the "Settlement Class").  (Settlement Agreement §

4    III(A)(1)-(A)(2).)  The identities of class members can be ascertained from Defendant's payroll

5    records.  Based upon Defendant's records, the estimated number of unique Settlement Class

6    Members is approximately 13,500 at the time of settlement.  (Lee Decl. at ¶ 9.)  As discussed

7    above, Class Members have the right to opt-out and exclude themselves from the settlement.

8    Pursuant to the Northern District Procedural Guidelines for Class Settlements, class

9    membership for settlement purposes is different than the litigation class that the Court previously

10   certified due to a prior settlement agreement in a similar case that involved Defendant, *Aris*

11   *Jefferson v. H & M Hennes & Mauritz L.P. et al*, Case No. CV 11-7683 CAS (JCGx) (the

12   "*Jefferson* Settlement").  (Lee Decl. at ¶ 10.)  The *Jefferson* Settlement includes the time period

13   of December 11, 2011 through January 7, 2013.  (*Id*.)  Thus, the Parties have agreed that the

14   Settlement Cass period for this case begins from January 8, 2013 onwards.  (*Id*.)  With respect to

15   the Settlement Class end date of October 31, 2019, Plaintiff does not contend that Defendant's

16   security check and visual inspection policies were not compliant after this date.  (*Id*.)  Plaintiff is

17   informed that as of this date, Defendant has revised and implemented new security check

18   policies that include conducting security checks on-the-clock.  Thus, the Settlement Class period

19   cut-off of October 31, 2019 is appropriate.  (*Id*.)  Additionally, while the Court certified two

20   litigation classes including the security check class (which encompasses all current and former

21   non-exempt California retail store employees), and the pay card class (which includes former

22   employees of Defendant in California), the pay card class is already subsumed within the

23   security check class.  (Lee Decl. at ¶ 11.)  Given that the definition of the Settlement Class is

24   similar to the security check class certified by the Court (with the exception of the settlement

25   time period as addressed above), the Parties believe that the Settlement Class is appropriate as

26   the pay card class is necessarily included within the definition of the Settlement Class.  (*Id*.)

27       **D.    The Settlement is Fair, Reasonable, and Adequate.**

28       Based on their own respective independent investigations and evaluations, the Parties and

their respective counsel are of the opinion that settlement for the consideration and on the terms set forth in their Settlement Agreement is fair, reasonable, and adequate and is in the best interests of the class and the Defendant in light of all known facts and circumstances and the expenses and risks inherent in litigation.  (Lee Decl. at ¶¶ 12-13; Hyun Decl. at ¶ 7; Marder Decl. at ¶ 11; Agnew Decl. at ¶ 8; Rosenthal Decl. at ¶ 4; Gavron Decl. at ¶ 9; Tulyathan Decl. at ¶ 7.)

Defendant denies any liability or wrongdoing of any kind associated with the claims alleged by Plaintiff.  Defendant denies certification of the Settlement Class, comprised of all non-exempt retail store employees who were employed by Defendant in the State of California at any time from January 8, 2013, through October 31, 2019, for any purpose other than that of settling this lawsuit.  If this case continued and proceeded to trial, Defendant also would assert that Plaintiff would not be able to prevail on his claims.

Based on the approximately 13,500 Class Members, each Class Member will receive a raw average of approximately $159.38, after deduction for attorneys' fees, class representative enhancement payment, payment to the LWDA, settlement administration costs, and litigation costs.  (Lee Decl. at ¶ 15.)  Each individual Class Member's settlement amount may be more or less than this raw average, depending on each respective Class Member's length of employment with Defendant and the number of opt-outs received.  In order to calculate each Class Member's pro-rata share, the Claims Administrator will use the dates of employment provided by Defendant and divide by seven (7) to determine the number of workweeks worked by each Class Member during the class period.  The number of workweeks worked will then be used to determine the amount each individual Class Member will receive from the settlement. (Settlement Agreement § III(B)(8).)

## II.     LEGAL ANALYSIS

### A.     The Class at Issue and the Settlement Fund.

Defendant has agreed to collect information regarding the identity of the members of the Settlement Class.  The Parties have further agreed and stipulated that the Settlement Class be certified on a provisional, non-mandatory basis for the purposes of this settlement only.  As set forth in the Settlement Agreement, the Settlement Class includes all non-exempt retail store

employees who were employed by Defendant in the State of California at any time from January

8, 2013, through October 31, 2019.  (Settlement Agreement § III(A)(1)-(A)(2).)  Again, the

Parties have agreed that the settlement is non-reversionary and that claim forms will not be

required.  (Settlement Agreement § III(B)(1).)

**B.      Two-Step Approval Process.**

Any settlement of class litigation must be reviewed and approved by the Court.  This is

done in two steps: (1) an early (preliminary) review by the court, and (2) a final review and

approval by the court after notice has been distributed to the class members for their comment or

objections.  The Manual for Complex Litigation, Fourth states:

> Review of a proposed class action settlement generally involves
> two hearings.  First, counsel submit the proposed terms of
> settlement and the judge makes a preliminary fairness evaluation.
> In some cases, this initial evaluation can be made on the basis of
> information already known, supplemented as necessary by briefs,
> motions, or informal presentations by parties.  If the case is
> presented for both class certification and settlement approval, the
> certification hearing and preliminary fairness evaluation can
> usually be combined.  The judge should make a preliminary
> determination that the proposed class satisfies the criteria set out in
> Rule 23(a) and at least one of the subsections of Rule 23(b).  If
> there is a need for subclasses, the judge must define them and
> appoint counsel to represent them.  The judge must make a
> preliminary determination on the fairness, reasonableness, and
> adequacy of the settlement terms and must direct the preparation of
> notice of the certification, proposed settlement, and date of the
> final fairness hearing.

Manual for Complex Litigation ("MCL") (4th ed. 2004), § 21.632.

Thus, the preliminary approval by the trial court is simply a conditional finding that the

settlement appears to be within the range of acceptable settlements.  As Professor Newberg

comments:

> The strength of the findings made by a judge at a preliminary
> hearing or conference concerning a tentative settlement proposal
> may vary.  The court may find that the settlement proposal
> contains some merit, is within the range of reasonableness required
> for a settlement offer, or is presumptively valid subject only to any
> objections that may be raised at a final hearing.

4 Conte & Newberg, *Newberg on Class Actions*, § 11.26 (4th ed. 2010).  Accordingly, a court

should grant preliminary approval of a class action settlement where it is within the "range of

reasonableness." Here, the Parties have reached such an agreement that is fair, reasonable, and adequate, and have submitted it to the Court in connection with this filing.

### C.     The Standard for Preliminary Approval.

As a matter of public policy, settlement is a strongly-favored method for resolving disputes. *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989). This is especially true in complex class actions such as this case. *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).

Preliminary approval does not require the Court to make a final determination that the settlement is fair, reasonable, and adequate. Rather, that decision is made only at the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. 5 James Wm. Moore et al., *Moore's Federal Practice* § 23.165 (3d ed. 2010). In considering the settlement, the Court need not reach any ultimate conclusions on the issues of fact and law which underlie the merits of the dispute and need not engage in a trial on the merits. *Officers for Justice*, 688 F.2d at 625. Preliminary approval is merely the prerequisite to giving notice so that "the proposed settlement...may be submitted to members of the prospective class for their acceptance or rejection." *Philadelphia Hous. Auth. v. Am. Radiator & Standard. Sanitary Corp.*, 323 F. Supp. 364, 372 (E.D. Pa. 1970).

"The judge should raise questions at the preliminary hearing and perhaps seek an independent review if there are reservations about the settlement, such as unduly preferential treatment of class representatives or segments of the class, inadequate compensation or harms to the classes, the need for subclasses, or excessive compensation for attorneys." MCL § 21.633. Here, the proposed settlement does not pose such issues. This was a highly-contentious litigation with the Parties each being represented by highly-competent counsel. As discussed above and in the declarations submitted herewith, the Parties engaged in substantial motion practice and conducted thorough investigations related to the claims and defenses alleged in this case. Further, the proposed settlement was reached after Plaintiff obtained class certification, after the Parties utilized the assistance of an experienced mediator, after substantial arm's-length

negotiations between the Parties, and after further assistance from the Court.

As detailed herein, the proposed settlement satisfies the standard for preliminary approval as it is well within the range of possible approval and there are no grounds to doubt its fairness. The Parties' attorneys have extensive experience in employment law, particularly wage and hour litigation, and reached settlement only after mediation and extensive arm's-length negotiations subsequent to the mediation.

### D.   The Court Has Already Certified the Classes and Therefore Should Certify the Settlement Class For the Same Reasons.

The Parties also may, at the preliminary approval stage, request that the court provisionally approve certification of the class—conditional upon final approval of the settlement.  Settlements are highly favored, particularly in class actions.  *Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989); *Officers for Justice*, 688 F.2d at 625; *Wilkerson v. Martin Marietta Corp.*, 171 F.R.D. 273, 284 (D. Colo. 1997).  Plaintiff requests such provisional approval at the preliminary approval hearing:

> The strength of the findings made by a judge at a preliminary hearing or conference concerning a tentative settlement proposal . . . . may be set out in conditional orders granting tentative approval to the various items submitted to the court.  Three basic rulings are often conditionally entered at this preliminary hearing. These conditional rulings may approve a temporary settlement class, the proposed settlement, and the class counsel's application for fees and expenses.

4 Newberg on Class Actions at § 11.26.

As stated above, on August 8, 2018, the Court certified Plaintiff's class claims, including Plaintiff's security check claims with respect to security checks conducted at the end of shifts and at store closing and Plaintiff's pay card claims.  (Dkt. No. 81.)  Pursuant to the Settlement Agreement, the Settlement Class is defined as a class consisting of all non-exempt retail store employees who were employed by Defendant in the State of California from the period of January 8, 2013, through October 31, 2019.  (Settlement Agreement § III(A)(1)-(A)(2).)  This definition is similar to the definition of the security check class previously certified by the Court, with the sole difference being that the certified class period runs from December 11, 2011

through the date of class ceritification, while the Settlement Class period runs from January 8, 2013 to October 31, 2019 for the reasons explained above.   Additionally, given the definition of the Settlement Class, the certified pay card class is already included as a subset of the Settlement Class.

In light of the fact that the Court has previously certified a similar litigation class in this case, the Parties believe that conditional certification of the proposed Settlement Class is appropriate.  Here, the same issues regarding Defendant's policies and practices, legal arguments surrounding the elements of Federal Rule of Civil Procedure 23, class data, and analyses are implicated by the certified classes and the Settlement Class, with the exception of the Settlement Period.  Thus, for purposes of this Motion, the Court need not re-engage in an analysis of whether the Settlement Class can be certified for settlement purposes, given that the Court has already found that the elements of Rule 23 have been established.

Accordingly, the Parties respectfully request that the Court conditionally certify the Settlement Class for settlement purposes as defined in the Settlement Agreement.

## E.    The Settlement is Fair and Reasonable and Not the Result of Fraud or Collusion.

### 1.    The Settlement May be Presumed Fair and Reasonable.

There is a presumption that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations.  *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs."); *In re Excess Value Ins. Coverage Litig*., No. M-21-84 (RMB), 2004 WL 1724980, at *10 (S.D.N.Y. July 30, 2004) ("Where 'the Court finds that the Settlement is the product of arm's length negotiations conducted by experienced counsel knowledgeable in complex class litigation, the Settlement will enjoy a presumption of fairness.'") (Citations omitted); *In re Inter-Op Hip Prosthesis Liab. Litig*., 204 F.R.D. 359, 380 (N.D. Ohio 2001) ("When a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair.").

Additionally, Courts presume the absence of fraud or collusion in the negotiation of

1    settlement unless evidence to the contrary is offered.  *See Priddy v. Edelman*, 883 F.2d 438, 447

2    (6th Cir. 1989); *Mars Steel Corp. v. Continental Illinois Nat'l Bank & Trust Co*., 834 F.2d 677,

3    682 (7th Cir. 1987); *In re Chicken Antitrust Litig.*, 560 F. Supp. 957, 962 (N.D. Ga. 1980).

4    Courts do not substitute their judgment for that of the proponents, particularly where, as here,

5    settlement has been reached with the participation of experienced counsel familiar with the

6    litigation.  *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 528 (C.D. Cal.

7    2004); *Hammon v. Barry*, 752 F. Supp. 1087, 1093-1094 (D.D.C. 1990); *Steinberg v. Carey*, 470

8    F. Supp. 471, 478 (S.D.N.Y. 1979); *Sommers v. Abraham Lincoln Federal Sav. & Loan Ass'n*,

9    79 F.R.D. 571, 576 (E.D. Pa. 1978).

10           While the recommendations of counsel proposing the settlement are not conclusive, the

11   Court can properly take them into account, particularly where, as here, they have already

12   obtained class certification, been involved in extensive litigation, extensive informal

13   investigation and formal written discovery, depositions, and expert discovery, appear to be

14   competent, and have experience with this type of litigation.  *Newberg on Class Actions* at §

15   11.47; *Nat'l Rural Telecomms. Coop*., 221 F.R.D. at 528 ("So long as the integrity of the arm's

16   length negotiation process is preserved, however, a strong initial presumption of fairness attaches

17   to the proposed settlement . . . and 'great weight' is accorded to the recommendations of counsel,

18   who are most closely acquainted with the facts of the underlying litigation.") (citations omitted);

19   *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011) ("Prior to formal

20   class certification, there is an even greater potential for a breach of fiduciary duty owed the class

21   during settlement."; pre-certification class action settlements should be scrutinized for "clear

22   sailing" provisions "providing for the payment of attorneys' fees separate and apart from class

23   funds, which carries 'the potential of enabling a defendant to pay class counsel **excessive fees**

24   and costs in exchange for counsel accepting an unfair settlement on behalf of the class'")

25   (emphasis added).  Here, this settlement was reached only after extensive litigation and class

26   certification, as well as several rulings on summary judgment.  Thus, Plaintiff's counsel

27   zealously litigated this case on behalf of the class.

28                    **a.       Experience of Class Counsel.**

21

Here, counsel for Parties have a great deal of experience in wage and hour class action litigation.  Plaintiff's counsel has been approved as class counsel in a number of other wage/hour class actions.  (Lee Decl. at ¶¶ 26-28; Hyun Decl. at ¶¶ 5-6; Agnew Decl. at ¶¶ 5-6; Rosenthal Decl. at ¶ 3; Tulyathan Decl. at ¶¶ 8-9; Gavron Decl. at ¶¶ 6-7; Marder Decl. at ¶¶ 9-10.)  Moreover, Plaintiff's counsel conducted an extensive investigation and discovery of the factual allegations involved in this case prior to filing suit and throughout the course of litigation up until trial.  Thus, based upon such experience and knowledge of the current case, Plaintiff's counsel believe that the current Settlement is fair, reasonable and adequate.  (Lee Decl. at ¶¶ 12-13; Hyun Decl. at ¶ 7; Agnew Decl. at ¶ 8; Rosenthal Decl. at ¶ 4; Gavron Decl. at ¶ 9; Tulyathan Decl. at ¶ 7; Marder Decl. at ¶ 11.)  Pursuant to the Northern District Procedural Guidelines, information regarding Plaintiff's counsel's past comparable class settlement is detailed in their declarations.  (*See* Lee Decl. at ¶ 28; Hyun Decl. at ¶ 13; Marder Decl. at ¶ 16.)

### b.     Investigation and Discovery Prior to Settlement.

As mentioned, Class Counsel conducted significant investigation and discovery in furtherance of the prosecution of this action.  (Settlement Agreement § II(2).)  This investigation and discovery included, among other things: (a) interviewing current and former employees of Defendant and reviewing various documents obtained from those employees regarding the facts surrounding the claims; (b) subpoenaing and taking depositions of approximately 40 current and former employees of Defendant; (c) subpoenaing and reviewing documents from the third party company that generates the pay cards distributed by Defendant to its separated employees; (d) inspection and analysis of thousands of pages of documents, and class time and payroll records, produced by Defendant throughout the course of litigation and in connection with mediation; (e) conducted multiple depositions of Defendant's FRCP 30(b)(6) Corporate Representatives, including Cindy Bernabe, Monica Frank, Naomi Fritt, and Corey May, on a myriad of topics relating to the underlying claims; (f) retaining an expert, Dr. Kriegler, to assess damages and penalties, along with reviewing rebuttal expert reports produced in connection with expert discovery; and (g) extensively researched and litigated the substantive issues in this case from class certification up to summary judgment stage and readied the case for trial.  (Lee Decl. at ¶¶

3-6.)

Plaintiff was provided with the class time and payroll data and class list for the entire class.  (Lee Decl. at ¶ 5.)  Thereafter, Plaintiff deposed a random sample of 25 class members.  (*Id*.)  Plaintiff then hired an expert to process and analyze deposition data, and calculate maximum exposure of damages and penalties that is extrapolated and applicable to the entire class for the entire class period.  (*Id*.)  Based thereon, the following represents Plaintiff's analysis of Defendant's potential liability:

For unpaid wages, Plaintiff's expert calculated the maximum exposure of class-wide damages that Defendant could face anywhere between approximately $806,012 to $4,030,059, depending on the number of compensable minutes attributable to the off-the-clock security check process. (Lee Decl. at ¶ 16.)  In addition, Defendant also faces derivative penalties resulting from Plaintiff's off-the-clock claims including Labor Code § 226 wage statement penalties, Labor Code § 203 waiting time penalties, and PAGA penalties.  (Lee Decl. at ¶ 17.)

With respect to the class-wide derivative penalties stemming from the off-the-clock security checks, including Section 226 wage statement penalties and Section 203 waiting time penalties, the potential maximum is as high as approximately $35,736,496.  (Lee Decl. at ¶ 17.)  However, the potential recovery of maximum penalties is uncertain.  To the extent that Defendant raises good faith defenses at the time of trial, then the amount of derivative penalties recoverable would be $0.  (*Id*.)

For PAGA penalties, Defendant faces penalties as high as approximately $100 million.  (Lee Decl. at ¶ 18.)  However, that amount is also subject to any good faith defenses that Defendant may raise.  Moreover, PAGA penalties are discretionary and subject to reduction by this Court.  Pursuant to Labor Code § 2699(f)(2), the Court can decline to award the full amount of PAGA penalties where "…if, based on the facts and circumstasnces of the particular case, to do otherwise, would result in an award that is unjust, arbitrary and oppressive, or confiscatory."  Indeed, courts have affirmed the reduction of PAGA penalties in the past.  As recently shown in *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 517 (2018), the Court of Appeal affirmed the trial court's reduction of PAGA penalties by 90 percent, citing the employer's good faith

1  attempt at complying with the law.  Here, if the Court reduced the potential PAGA penalties by

2  90 percent as in *Carrington*, total exposure would be only $10,006,770.  (Lee Decl. at ¶ 18.)

3  Thus, $3.8 million would account for about **9.6 percent** of the total exposure that

4  includes the maximum class-wide damages of $4,030,059 and the maximum class-wide

5  derivative penalties of $35,736,496.  (Lee Decl. at ¶ 19.)

**2.      The Settlement is Fair, Reasonable, and Adequate.**

6

7  The settlement for each participating Class Member is fair, reasonable, and adequate,

8  given the inherent risk of going forward with trial, the risk of appeals, the risks in an area where

9  it is argued that the law is unsettled, and the costs of pursuing such litigation.

**a.      Risks of Proceeding with Trial and Any Appeals.**

10

11  To assess the fairness, adequacy and reasonableness of a class action settlement, the

12  Court must weigh the immediacy and certainty of substantial settlement proceeds against the

13  risks inherent in continued litigation.  *In re General Motors Corp.*, 55 F.3d 768, 806 (3d Cir.

14  1995) ("present value of the damages plaintiffs would likely recover if successful, appropriately

15  discounted for the risk of not prevailing, should be compared with the amount of the proposed

16  settlement.");  *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *Boyd v. Bechtel Corp.*, 485 F.

17  Supp. 610, 616-17 (N.D. Cal. 1979); MCL § 21.62 at 316.

18  Here, the Settlement affords fair relief to the Class, while avoiding significant legal and

19  factual battles, especially at trial, that otherwise may have prevented the Class from obtaining

20  any recovery at all.  Although Plaintiff's attorneys believe the certified claims are meritorious,

21  they are experienced and realistic, and understand that the outcome of a trial, and the outcome of

22  any appeals that would inevitably follow if the class prevailed at trial, are inherently uncertain in

23  terms of both outcome and duration.

24  Indeed, one issue which will continue to pose risks at trial is the *de minimis* doctrine.

25  Significantly, in *Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018), the California Supreme

26  Court has issued its opinion on July 26, 2018 holding that *de minimis* doctrine does not apply to

27  regularly occurring work under the California Labor Code.  However, the Court left open the

28  question and did not address whether there are other activities that are so irregular or brief that it

24

is unreasonable to require compensation.  *Id.*  While this Court previously addressed *Troester* in its Order Denying Class Certification, the Court only found that whether time spent off-the-clock for security checks and visual inspections did not defeat commonality.  (Dkt. No. 122.)  The Court has yet to rule rule on liability with respect to the certified security check claims. As this issue remains undecided, this Settlement provides concrete relief to the Class without having to proceed with trial on this issue.

While *Frlekin* was finally decided by the California Supreme Court in February 2020, at the time this settlement was reached, it was still undecided and thus presented another risk factor for liability as to whether time spent waiting for and undergoing security inspections are compensable are "hours worked" within the meaning of Wage Order No. 7.

In light of these risks and uncertainties in connection with proceeding with trial, Plaintiff asserts that this settlement is fair, adequate and reasonable.

### b.      The Settlement is Within the Range of Reasonableness.

The standard of review for class settlements is whether the settlement is within a range of reasonableness.  As Professor Newberg comments:

> Recognizing that there may always be a difference of opinion as to the appropriate value of settlement, the courts have refused to substitute their judgment for that of the proponents. Instead the courts have reviewed settlements with the intent of determining whether they are within a range of reasonableness....

4 Newberg on Class Actions, at §11.45.

Here, the settlement fund is non-reversionary, such that 100 percent of the Net Settlement Proceeds will be available for distribution to Settlement Class Members who do not opt-out. Moreover, the settlement does not require claim forms.  Rather, Class Members who do not opt-out will automatically receive a check.  Assuming that every Class Member elects to participate in the settlement, each Class Member will receive his or her pro rata share, with each person receiving on average an approximate amount of $159.38.  Further, the settlement fund will be paid out entirely in cash (as opposed to a voucher, coupon, etc.).

In addition, as set forth in the Settlement Agreement, the release for Settlement Class

Members is limited to only the certified class claims, including the claims for unpaid wages and penalties associated with the payment of final wages through a pay card and the claims for unpaid wages and penalties associated with any time spent undergoing security checks and visual inspections off-the-clock.  (Settlement Agreement § III(A)(4) and (G).)  Pursuant to the Northern District Procedural Guidelines for Class Settlements, the release is appropriate as the released claims is tailored and limited only to the certified class claims.

For these reasons, and for the reasons set forth above relating to the total liability and the risks of prevailing on the theories of liability alleged, Plaintiff believes that the current Settlement is fair, reasonable, and adequate.

### c.     The Complexity, Expense, and Likely Duration of Continued Litigation Against the Settling Defendant Favors Approval.

Another factor considered by courts in approving a settlement is the complexity, expense, and likely duration of the litigation.  *Officers of Justice*, 688 F.2d at 625; *Girsh*, 521 F.2d at 157. In applying this factor, the Court must weigh the benefits of the settlement against the expense and delay involved in achieving an equivalent or more favorable result at trial.  *Young v. Katz*, 447 F.2d 431, 433-34 (5th Cir. 1971).

The Settlement Agreement provides to all Class Members fair relief in a prompt and efficient manner.  Were the Parties to engage in continued litigation of this matter and proceed to trial, Plaintiff may risk losing at trial on liability for both of his certified class claims based on the reasons explained above.  Moreover, following a decision at trial, there is also the possibility of appeal.  Given the realities of litigation, this process places ultimate relief several years away. The idea of balancing a fair recovery now, with settlement dollars being paid out now, as opposed to battling at trial and a lengthy appeal process, is a significant factor to be considered. *DIRECTV*, 221 F.R.D. at 526-27 ("Avoiding such a trial and the subsequent appeals in this complex case strongly militates in favor of settlement rather than further protracted and uncertain litigation.").

The settlement in this case is therefore consistent with the "overriding public interest in settling and quieting litigation" that is "particularly true in class action suits."  *See Van*

1   *Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); 4 Newberg on Class Actions, at §

2   11.41.

### d.      Non-Admission of Liability by Defendant.

4          Finally, Defendant denies any liability or wrongdoing of any kind associated with the

5   claims alleged in this lawsuit.  Defendant maintains that it has complied at all times with

6   California wage and hour laws.  Because of such denial and as is evidenced by the history of

7   litigation in this case, if this case is not resolved, there is a high likelihood that the case will

8   continue even after trial and into the process of appeal.

### F.      The Notice to be Given is the Best Practicable.

10          "For any class certified under Rule 23(b)(3), the court must direct to class members the

11   best notice practicable under the circumstances, including individual notice to all members who

12   can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  "The court must direct

13   notice in a reasonable manner to all class members who would be bound by a proposed

14   settlement, voluntary dismissal or compromise."  Fed. R. Civ. P. 23(e)(B).

15          Here, the terms of the Settlement Agreement provide for a notice distribution plan that is

16   designed to achieve the best notice that is practicable under the circumstances.  The Claims

17   Administrator is to mail via first-class U.S. mail a copy of the Court-approved Notice of Class

18   Action Settlement ("Notice Packet") to all class members.  (Settlement Agreement § III(C)(5).)

19   The Claims Administrator will use a single skip-trace, computer or other search using the name,

20   address and/or Social Security Number of the individual involved for undeliverable Notice

21   Packets.  (Settlement Agreement § III(C)(6).)  The Notice Packet provides Class Members with

22   the information needed to make an informed decision.  It provides a brief summary of the

23   proposed settlement and information about the lawsuit, a summary of the allocations under the

24   Settlement and the amount that the Settlement Class Member is estimated to receive, the

25   Settlement Class Member's rights and claims that are included in the release, the Settlement

26   Class Member's options including procedures on how to object and opt-out of the settlement,

27   Class Counsel contact information for any questions, information regarding the final approval

28   hearing and how to appear, procedures on how to obtain more information or access Pacer and/or

court records, and contact information and website of the Claims Administrator. It also explains that those who do not opt out will be bound by the settlement.

**G.    Attorney's Fees, Costs, and Class Representative Enhancement.**

Pursuant to the terms of the Settlement Agreement, and without opposition from Defendant, Plaintiff will also be entitled to request an enhancement up to a maximum of $15,000.00. (Settlement Agreement § III(B)(4).) This amount is to compensate Plaintiff for his efforts and work in prosecuting this case, participating in discovery, including preparing for, traveling to, and sitting for his deposition; meeting and communicating with his counsel; preparing for, traveling to, and attending the settlement conference; reviewing the pleadings and documents in this case; and for executing a general release under California Civil Code § 1542. (Lao Decl. ¶ 5.)

Similarly, Class Counsel will seek an award of attorneys' fees of not more than 1/3 of the Class Settlement Amount ($1,266,666.67) and reimbursement of actual litigation costs of up to $250,000.00. (Settlement Agreement § III(B)(5).) To date, Class Counsel estimates that they have incurred at least 2,000 hours in the prosecution of this matter, with an average hourly rate of approximately $600 per hour. (Lee Decl. at ¶ 29.) Based thereon, Class Counsel believes that either a very minimal multiplier will be requested, or that no multiplier will be necessary.

Finally, Plaintiff and Class Counsel will seek the reimbursement of costs, which mainly includes filing fees, deposition costs, mediation costs, class notice costs, expert fees and travel expenses. To date, such costs are approximately $200,000.00. (Lee Decl. at ¶ 30.) Both the requested enhancement amounts and attorneys' fees and costs will be requested simultaneously with Plaintiff's motion seeking final approval of this class action settlement.

**H.    Settlement Administrator.**

The Parties have selected Phoenix Settlement Administrators as the Claims Administrator. (Settlement Agreement § III(B)(6).) Pursuant to the Northern District Procedural Guidelines for Class Settlements, the selection process of the Claims Administrator is as follows: Plaintiff's counsel obtained quotes from Phoenix Settlement Administrators, Simpluris, and JND Legal Administration. (Lee Decl. at ¶ 22.) Given that Phoenix Settlement Administrators provided the

lowest quote, the Parties subsequently agreed to use Phoenix Settlement Administrators. (*Id.*) Further, notice by U.S. mail along with the National Change of Address search and skip trace for undeliverable mail has been approved by numerous courts and, therefore, the Parties agreed to notice by U.S. mail. (*Id.*) Additionally, a list of cases in which Phoenix Settlement Administrators was appointed as the claims administrator in cases involving Plaintiff's counsel over the last two years is set forth in their declarations. (Lee Decl. at ¶ 22; Hyun Decl. at ¶ 12.)

Moreover, the anticipated costs for the settlement administration are not to exceed $41,750.00. (Settlement Agreement § III(B)(6); Lee Decl. at ¶ 22, Exh. A.) Plaintiff and his counsel believe that this amount is reasonable in relation to the value of the settlement, as the administration costs account for only 1.1% of the Class Settlement Amount. (Lee Decl. at ¶ 22.) The administration costs will be deducted from the Class Settlement Amount.

## III.   CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court (1) grant preliminary approval for the proposed class action settlement; (2) authorize the mailing of the proposed notice to the Class of the settlement; and (3) schedule a "fairness hearing," i.e. a hearing on the final approval of the settlement.

DATED:  March 6, 2020                           DIVERSITY LAW GROUP

                                                By:____*/s/ Larry W. Lee*_____
                                                        Larry W. Lee
                                                        Attorneys for Plaintiff and the Class