**DIVERSITY LAW GROUP, P.C.**
Larry W. Lee, State Bar No. 228175
E-mail: lwlee@diversitylaw.com
Kristen M. Agnew, State Bar No. 247656
E-mail: kagnew@diversitylaw.com
Nicholas Rosenthal, State Bar No. 268297
E-mail: nrosenthal@diversitylaw.com
Max W. Gavron, State Bar No. 291697
E-mail: mgavron@diversitylaw.com
Kwanporn "Mai" Tulyathan, State Bar No. 316704
E-mail: ktulyathan@diversitylaw.com
515 S. Figueroa Street, Suite 1250
Los Angeles, CA 90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Class
(Additional Counsel on Next Page)

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SER LAO, as an individual and on behalf of all others similarly situated, | Case No. 5:16-cv-333 EJD |
| Plaintiffs, | **DECLARATION OF LARRY W. LEE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| vs. | |
| H & M HENNES & MAURITZ, L.P., a New York limited partnership; and DOES 1 through 50, inclusive, | Date:        April 30, 2020<br>Time:        9:00 a.m.<br>Courtroom:   4, 5th Floor<br>Judge:       Hon. Edward J. Davila |
| Defendants. | |

1

**POLARIS LAW GROUP LLP**
William L. Marder, State Bar No. 170131
Email: bill@polarislawgroup.com
501 San Benito Street, Suite 200
Hollister, CA 95023
(831) 531-4214
(831) 634-0333 facsimile

**HYUN LEGAL, APC**
Dennis S. Hyun, State Bar No. 224240
E-mail: dhyun@hyunlegal.com
515 S. Figueroa Street, Suite 1250
Los Angeles, CA  90071
(213) 488-6555
(213) 488-6554 facsimile

Attorneys for Plaintiff and the Class

2

1

2

<u>**DECLARATION OF LARRY W. LEE**</u>

I, LARRY W. LEE, hereby declare and state as follows:

3

4

5

1.      I am an attorney at law duly admitted to practice before all courts in the State of California and am a member of the law firm of the Diversity Law Group, P.C., one of the attorneys of record for Plaintiff Ser Lao ("Plaintiff"), in the above entitled action.

6

7

2.      I have personal knowledge of the matters set forth herein, and if called upon as a witness to testify thereto, I could and would competently do so.

8

9

10

11

12

13

14

15

16

17

18

3.      Plaintiff's counsel conducted a very extensive investigation of the facts surrounding the claims in this action before filing suit, as well as conducted extensive discovery during the course of litigating and prosecuting this case.  This included propounding and responding to multiple rounds of written discovery, including multiple sets of interrogatories and requests for production of documents.  In connection with written discovery, Plaintiff's counsel also obtained and reviewed Defendant's document production, including policy documents, class contact information, and class time and payroll data.  Plaintiff's counsel also subpoenaed and reviewed documents from the third party company that generates the pay cards distributed by Defendant to its separated employees.  In addition, Plaintiff's counsel extensively researched and litigated the substantive issues in this case from class certification up to summary judgment stage and readied the case for trial.

19

20

21

22

23

24

25

26

4.      Plaintiff 's counsel also took numerous depositions of parties and witnesses.  This included depositions of Defendant's FRCP 30(b)(6) Corporate Representatives on various topics that impacted class certification and liability, including Cindy Bernabe, Monica Frank, Naomi Fritt, and Corey May.  Some of Defendant's FRCP 30(b)(6) witnesses were located in New York, New York and required travel to complete.  Furthermore, over the course of the litigation, Plaintiff took the depositions of approximately 40 current and former employees of Defendant located throughout the State of California, and at least 1 individual now residing in the State of Nevada.

27

28

5.      Plaintiff was provided with the class time and payroll data and class list for the

3

entire class.  Thereafter, Plaintiff deposed a random sample of 25 class members.  Plaintiff then retained an expert, Brian Kriegler, Ph.D. for purposes of liability and damages.  Dr. Kriegler also processed and analyzed deposition data, and calculated maximum exposure of damages and penalties that is extrapolated and applicable to the entire class for the entire class period.  In connection with expert discovery, the Parties submitted and reviewed expert and rebuttal expert reports detailing the amount of potential penalties and damages.  On December 10, 2019, Plaintiff's counsel defended the deposition of Dr. Kriegler.

6.      In sum, Plaintiff's counsel conducted extensive investigation and discovery, including formal written discovery; taking and defending numerous depositions, including that of Plaintiff, Defendant's FRCP 30(b)(6) Corporate Representatives, over 40 class members, and Plaintiff's expert; subpoenaing and reviewing relevant records from third parties; reviewing class time and payroll data and documents produced by Defendant; and conducting expert discovery

7.      On January 9, 2019, the Parties attended an all-day mediation before Mark S. Rudy, Esq.  However, after a full day of negotiations, the Parties were not able to reach a settlement.  The Parties then continued to negotiate for approximately one year after the mediation with Mr. Rudy's assistance.  Despite extensive arm's length negotiations during the session and further discussions facilitated by Mr. Rudy over the course of a year, the Parties were unable to resolve the matter at that time.

8.      On January 10, 2020, the Parties participated in a Settlement Conference before Magistrate Judge Nathanael M. Cousins, at which time the Parties were able to reach a general settlement of Plaintiff's claims, subject to approval by the Court.  Thus, at all times, the negotiations leading to the Settlement Agreement have been adversarial, non-collusive, and at arm's length.

9.      The Settlement Class Members include all non-exempt retail store employees who were employed by Defendant in the State of California from the period of January 8, 2013, through October 31, 2019.  Based on Defendant's records, there are approximately 13,500 Settlement Class Members.  Thus, the Settlement Class is ascertainable based on Defendant's

payroll records.

10.      Given that this case involves two certified classes that were certified by the Court on August 8, 2018, the Settlement Class is different than the previously certified classes due to a prior settlement agreement in a similar case that involved Defendant, *Aris Jefferson v. H & M Hennes & Mauritz L.P. et al*, Case No. CV 11-7683 CAS (JCGx) (the "*Jefferson* Settlement"). The *Jefferson* Settlement includes the time period of December 11, 2011 through January 7, 2013.  Thus, the Parties have agreed that the Settlement Cass period for this case begins from January 8, 2013 onwards.  With respect to the Settlement Class end date of October 31, 2019, Plaintiff does not contend that Defendant's security check and visual inspection policies were not compliant after this date.  Plaintiff's counsel is informed that as of this date, Defendant has revised and implemented new security check policies that include conducting security checks on-the-clock.  Thus, Plaintiff's counsel believes that the Settlement Class period cut-off of October 31, 2019 is appropriate.

11.      Additionally, while the Court previously certified two litigation classes including the security check class (which encompasses all current and former non-exempt California retail store employees), and the pay card class (which includes former employees of Defendant in California), the pay card class is already subsumed within the security check class.  Given that the definition of the Settlement Class is similar to the security check class certified by the Court (with the exception of the settlement time period), Plaintiff's counsel believes that the Settlement Class is appropriate as the pay card class is necessarily included within the definition of the Settlement Class.

12.      Based on their own respective independent investigations and evaluations, the Parties and their respective counsel are of the opinion that settlement for the consideration and on the terms set forth in their Settlement Agreement is fair, reasonable, and adequate and is in the best interests of the class and the Defendant in light of all known facts and circumstances and the expenses and risks inherent in litigation.

13.      Plaintiff also believes in the fairness of the settlement that is based on factoring in

**DECLARATION OF LARRY W. LEE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:16-CV-333 EJD**

1   the uncertainty and risks to Plaintiff involved in not prevailing on his certified class claims at

2   trial and the possibility of appeals.

3          14.     Pursuant to the terms of the Settlement Agreement, the Net Settlement Proceeds

4   ("NSP") (after deduction of attorneys' fees in the amount of up to $1,266,666.67, costs up to

5   $250,000.00, the class representative enhancement fee in the amount of up to $15,000.00, PAGA

6   payment in the amount of $75,000.00 to the LWDA, or 75% of $100,000.00, and costs of

7   administration in the amount of approximately $41,750.00) is approximately $2,151,583.33.

8          15.     Based on the approximately 13,500 Settlement Class Members, each Settlement

9   Class Member will receive a raw average pro-rata share of approximately $159.38 after

10  deduction for attorneys' fees, class representative enhancement payment, payment to the LWDA,

11  settlement administration costs, and litigation costs.  Because this is a non-reversionary

12  settlement, all monies resulting from Setltement Class Members who elect to opt-out will be

13  redistributed to the Net Settlement Amount for payment to participating Settlement Class

14  Members.  The amounts for each person could increase or decrease depending on a number of

15  factors, including for any opt-outs, the amount awarded for fees, costs, and enhancement

16  payments.  The approximate amount each person will be entitled to will not be known until the

17  class data is transferred to the claims administrator for processing.

18         16.     Based on all the evidence and class data, Plaintiff's expert calculated the

19  maximum exposure of damages and penalties in the case.  For unpaid wages, Plaintiff's expert

20  calculated the maximum exposure of class-wide damages that Defendant could face anywhere

21  between approximately $806,012 to $4,030,059, depending on the number of compensable

22  minutes attributable to the off-the-clock security check process.

23         17.     In addition to the class-wide damages, Defendant also faces derivative penalties

24  resulting from Plaintiff's off-the-clock claims including Labor Code § 226 wage statement

25  penalties, Labor Code § 203 waiting time penalties, and PAGA penalties.  Dr. Kriegler

26  calculated the maximum exposure for derivative class-wide penalties as high as approximately

27  $35,736,496.  However, the potential recovery of maximum penalties is uncertain.  Plaintiff's

28

**DECLARATION OF LARRY W. LEE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:16-CV-333 EJD**

1    counsel believes that if Defendant raises good faith defenses at the time of trial, the amount of

2    derivative class-wide penalties recoverable would be $0.

3        18.    For potential PAGA penalties, Dr. Kriegler calculated that Defendant faces

4    penalties as high as $100,067,700.  However, that amount is also subject to any good faith

5    defenses that Defendant may raise.  Moreover, PAGA penalties are discretionary and subject to

6    reduction by this Court pursuant to Labor Code § 2699(f)(2).  If this Court reduced the PAGA

7    penalties by 90%, as the trial court did in *Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504,

8    517 (2018), then the total exposure would be only $10,006,770.

9        19.    The gross settlement amount of $3.8 million would account for about 9.6 percent

10   of the total exposure that includes the maximum class-wide damages of $4,030,059 and the

11   maximum class-wide derivative penalties of $35,736,496.  Although Plaintiff believes that he

12   can prevail on liability at trial, given the uncertainty and risks associated with trial and appeals,

13   Plaintiff submits that this settlement is fair, adequate and reasonable.

14       20.    Plaintiff's counsel does not have any relationship with Legal Aid at Work or with

15   the Ali Forney Center.

16       21.    Plaintiff and Plaintiff's counsel are adequate representatives in that they have no

17   conflicts with the class and will adequately represent the class.

18       22.    My office obtained quotes from Phoenix Settlement Administrators, Simpluris,

19   and JND Legal Administration.  The quotes my office received from these respective firms are

20   attached herewith as **Exhibit A**.  Given that Phoenix Settlement Administrators provided the

21   lowest quote, the Parties subsequently agreed to use Phoenix Settlement Administrators.

22   Further, notice by U.S. mail along with the National Change of Address search and skip trace for

23   undeliverable mail has been approved by numerous courts and, therefore, the Parties agreed to

24   notice by U.S. mail.  Pursuant to the quote Plaintiff's counsel received from Phoenix Settlement

25   Administrators, settlement administration costs are estimated not to exceed $41,750.00.

26   Plaintiff's counsel believes that this amount is reasonable in relation to the value of the

27   settlement, as the administration costs account for only 1.1% of the Class Settlement Amount.  A

28

**DECLARATION OF LARRY W. LEE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY
APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:16-CV-333 EJD**

list of the ten most recent cases over the last two years in which Phoenix Settlement

Administrators was appointed as the settlement administrator in cases involving my firm are as

follows:

A.  *Sarahi Lopez v. King Taco Restaurant, Inc.*, Case No. BC664175 (Los Angeles County)

B.  *Estella Hughes v. Lincare Inc.*, Case No. M124764 (Monterey County)

C.  *Peterson v. Redwood Memorial Hospital of Fortuna, et al.*, Case No. DR170615  (Humboldt county)

D.  *Servando Perez v. Standard Drywall Inc.*, Case No. RG15761142 (Alameda County)

E.  *Ramon Singley v. BLS Limousine Service of Los Angeles, Inc.*, Case No. BC619822 (Los Angeles County)

F.  *Alvillar v. DUA Medical*, Case No. BC673735 (Los Angeles County)

G.  *William Mankin v. Taste Catering*, Case No. 17-CIV-03497 (San Mateo County)

H.  *Manning v. The LASIK Vision Institute, LLC*, Case No. CU-17-00061 (San Benito County)

I.  *Sarah Rodriguez v. Manpower, Inc.*, Case No. 16CV294904 (Santa Clara County)

J.  *Juan Calvillo v. Longo Food, LLC*, Case No. BC 474973 (Los Angeles County)

23.     I am one of the primary attorneys on this matter.  My qualifications are as

follows:  I received my JD from Arizona State University College of Law in 2003.  During law

school, I was a summer associate at the law firm of Brobeck, Phleger & Harrison.  I graduated

cum laude from Arizona State University College of Law in the top 10% of my class.  While I

was in law school, I was the Associate Managing Editor of the Arizona State University College

of Law, Law Journal.

24.     For more than one and one half years I practiced law as an associate at the Los

Angeles County offices of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., a national

employment defense law firm that represents a significant number of Fortune 50 companies,

including may actions involving wage and hour matters.

25.     My primary practice is employment law.  I have handled a number of class

actions and individual actions, on both plaintiff and defense sides.  I have a practice that

encompasses cases in the Los Angeles Superior courts, the Orange County Superior Courts, the

Los Angeles County Superior Courts, the San Diego County Superior courts, and the United States District Courts for the Central, Northern and Eastern Districts of California.

26.     I have been approved as Class Counsel in a number of class actions, including but not limited to *Chan-Lanier v. Citibank* (Case No. CGC-050445143); *Hernandez v. CVS Pharmacy, Inc.* (Judicial Council Coordination Proceeding No. 4539), *Tse v. Best Buy Co, Inc.* (Case Number BC 393717), *Orgeta v. AIG, Inc* (Case Number CV 06—196-RSWL (PJWx)), and *Castro v. UPS Freight, Inc.* (Case Number CV 08-4898 ODW (CWx)) and by this Court in *Chavez v. PVH* (Case No. C 13-01797 LHK).

27.     In addition, I was certified as class counsel by the United States District Court, Central District of California in the case of *Abdullah v. U.S. Security* (Case Number CV 09-09554 GHK), *Avilez v. Pinkerton Government Services, Inc*. (Case Number SACV 11-0493-DOC), *Dynabursky v. Allied Barton Security Services* (Case Number SACV 12-02210 JST); and *Pace v. Petsmart, Inc.* (Case Number SACV 13-500-DOC); by the Northern District of California in the cases of *Harris v. Vector Marketing Corp.,* (Case Number CV 08 5198 EMC), and *Lemus et al. v. H&R Block Enterprises, LLC* (Case Number CV-09-03179-SI); and by the Superior Court of California, Orange County in the cases of *De la Cruz v. Abercrombie & Fitch Co. et al.* (Case Number 30-2007-00036240) and *Wu v. General Nutrition Corporation* (Case Number 30-2012-00593759), all as part of the Courts' orders granting class certification pursuant to Rule 23 of the FRCP and California Code of Civil Procedure § 382.

28.     On April 19, 2018, I was finally approved as class counsel by the United States District Court, Central District of California in a comparable class action settlement, *Eric Chavez v. Adidas America, Inc.* (Case Number 5:16-cv-06533-LHK).  The *Chavez* settlement similarly involved issues relating to time spent waiting and undergoing security checks that were conducted off-the-clock, as well as issues relating to the defendant's issuance of final wages via pay cards.  The *Chavez* settlement was also non-reversionary, and did not require any claim forms.  The following chart details the information regarding the *Chavez* settlement:

///

**DECLARATION OF LARRY W. LEE IN SUPPORT OF PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT CASE NO. 5:16-CV-333 EJD**

| | |
|---|---|
| • Total settlement fund | $1.5 million |
| • Total number of class members | 4,023 |
| • Total number of class members to whom notice was sent | 4,023 |
| • Method of notice distribution | First Class U.S. mail, postage prepaid |
| • Average recovery per class member | $245.90 |
| • Amounts distributed to cy pres recipient | $34,820.97 to State Treasury (Ttrial Court Improvement and Monetization Fund); $34,820.97 to State Treasury (Equal Access Fund of the Judicial Branch); $69.641.94 to Legal Aid Employment Law Section |
| • Administrative costs | $27,000 |
| • Attorneys' fees | $375,000 |
| • Costs | $18,935.49 |
| • Class representative enhancement | $10,000 |

29.     To date, Class Counsel estimates that they have incurred at least 2,000 hours in the prosecution of this matter, with an average hourly rate of approximately $600 per hour.

30.     To date, Class Counsel has incurred costs in the approximate amount of $200,000.00.  These costs are all litigation-related costs, which include filing fees, deposition costs, mediation costs, class notice costs, expert fees, and travel expenses.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on March 6, 2020, at Los Angeles, California.

                                    _/s/ Larry W. Lee_____
                                    Larry W. Lee

10

EXHIBIT A



| CASE ASSUMPTIONS | |
| --- | --- |
| Class Members | 13500 |
| Opt Out Rate | 2% |
| Opt Outs Received | 270 |
| Total Class Claimants | 13230 |
| Subtotal Admin Only | **$41,750.00** |
| **WILL NOT EXCEED** | **$41,750.00** |
| **For 13500 Class Members** | |

## March 3, 2020
## Case: Lao v. H&M Opt-Out Administration

**Phoenix Contact: Jodey Lawrence**

**Contact Number: 949.566.1455**

**Email: Jodey@phoenixclassaction.com**

**Requesting Attorney: Dennis Hyun**

**Firm: Hyun Legal**

**Contact Number: 213.488.6555**

**Email: dhyun@hyunlegal.com**

Assumptions and Estimate are based on information provided by counsel. If class size changes, PSA will need to adjust this Estimate accordingly. Estimate is based on **13500** Class Members. PSA assumes class data will be sent in Microsoft Excel or other usable format with no or reasonable additional formatting needed. A rate of $150 per hour will be charged for any additional analysis or programming.

| Case & Database Setup / Toll Free Setup & Call Center / NCOA (USPS) | | | |
| --- | --- | --- | --- |
| **Administrative Tasks:** | **Rate** | **Hours/Units** | **Line Item Estimate** |
| Programming Manager | $100.00 | 4 | $400.00 |
| Programming Database & Setup | $100.00 | 4 | $400.00 |
| Toll Free Setup* | $152.85 | 1 | $152.85 |
| Call Center & Long Distance | $0.45 | 1,350 | $607.50 |
| NCOA (USPS) | 13500 | 0.015 | $202.50 |
| | | **Total** | **$1,762.85** |

* Up to 120 days after disbursement

| Data Merger & Scrub / Notice Packet, Opt-Out Form & Postage / Spanish Translation / Website | | | |
| --- | --- | --- | --- |
| **Project Action** | **Rate** | **Hours/Units** | **Line Item Estimate** |
| Notice Packet Formatting | $100.00 | 3 | $300.00 |
| Data Merge & Duplication Scrub | $0.10 | 13,500 | $1,350.00 |
| Notice Packet & Opt-Out Form | $0.42 | 13,500 | $5,670.00 |
| Postage Notice Packet | $0.55 | 13,500 | $7,425.00 |
| Static Website | $200.00 | 1 | $200.00 |
| | | **Total** | **$14,945.00** |

* Prices good for 90 days. Subject to change with the USPS Rate or change in Notice pages or Translation, if any.



PHOENIX

CLASS ACTION ADMINISTRATION SOLUTIONS

| Skip Tracing & Remailing Notice Packets / Tracking & Programming Undeliverables | | | |
|---|---|---|---|
| **Project Action:** | **Rate** | **Hours/Units** | **Line Item Estimate** |
| Case Associate | $50.00 | 3 | $150.00 |
| Skip Tracing Undeliverables | $0.45 | 2,025 | $911.25 |
| Remail Notice Packets | $0.42 | 2,025 | $850.50 |
| Estimated Postage | $0.55 | 2,025 | $1,113.75 |
| Programming Undeliverables | $50.00 | 3 | $150.00 |
| | | **Total** | **$3,175.50** |

| Database Programming / Processing Opt-Outs, Deficiencies or Disputes | | | |
|---|---|---|---|
| **Project Action:** | **Rate** | **Hours/Units** | **Line Item Estimate** |
| Programming Claims Database | $100.00 | 3 | $300.00 |
| Non Opt-Out Processing | $150.00 | 2 | $300.00 |
| Case Associate | $50.00 | 5 | $250.00 |
| Opt-Outs/Deficiency/Dispute Letters | $1.00 | 338 | $337.50 |
| Case Manager | $50.00 | 5 | $250.00 |
| | | **Total** | **$1,437.50** |

| Calculation & Disbursement Programming/ Create & Manage QSF/ Mail Checks | | | |
|---|---|---|---|
| **Project Action:** | **Rate** | **Hours/Units** | **Line Item Estimate** |
| Programming Calculations | $100.00 | 4 | $400.00 |
| Disbursement Review | $100.00 | 4 | $400.00 |
| Programming Manager | $65.00 | 4 | $260.00 |
| QSF Bank Account & EIN | $75.00 | 3 | $225.00 |
| Check Run Setup & Printing | $100.00 | 4 | $400.00 |
| Mail Class Checks, W2 and 1099 * | $0.43 | 13,230 | $5,688.90 |
| Estimated Postage Checks, W2 and 1099 | $0.55 | 13,230 | $7,276.50 |
| | | **Total** | **$14,650.40** |

* Checks are printed on 8.5 x 11 in. sheets with W2/1099 Tax Filing



| Tax Reporting & Reconciliation / Re-Issuance of Checks / Conclusion Reports and Declarations | | | |
|---|---|---|---|
| **Project Action:** | **Rate** | **Hours/Units** | **Line Item Estimate** |
| Case Supervisor | $100.00 | 5 | $500.00 |
| Remail Undeliverable Checks (Postage Included) | $0.75 | 1,323 | $992.25 |
| Case Associate | $55.00 | 6 | $330.00 |
| Reconcile Uncashed Checks | $75.00 | 3 | $225.00 |
| Conclusion Reports | $120.00 | 2 | $240.00 |
| Case Manager Conclusion | $85.00 | 3 | $255.00 |
| Final Reporting & Declarations | $100.00 | 2 | $200.00 |
| State ControllerReminder Postcard and Postage | $1.00 | 662 | $661.50 |
| QSF Tax Filing | $125.00 | 3 | $375.00 |
| IRS & Annual Tax Reporting * (State Tax Reporting Included) | $2,000.00 | 1 | $2,000.00 |
| | | **Total** | **$5,778.75** |

\* All applicable California State & Federal taxes, which include SUI, ETT, and SDI, and FUTA filings. Additional taxes are Defendant's responsibilty.

**Estimate Total:**  **$41,750.00**



# **TERMS AND CONDITIONS**

**Provisions:** The case estimate is in good faith and does not cover any applicable taxes and fees. The estimate does not make any provision for any services or class size not delineated in the request for proposal or stipulations. Proposal rates and amounts are subject to change upon further review, with Counsel/Client, of the Settlement Agreement. Only pre-approved changes will be charged when applicable. No modifications may be made to this estimate without the approval of PSA (Phoenix Settlement Administrators). All notifications are mailed in English language only unless otherwise specified. Additional costs will apply if translation into other language(s) is required. Rates to prepare and file taxes are for Federal and California State taxes only. Additional charges will apply if multiple state tax filing(s) is required. **Pricing is good for ninety (90) days.**

**Data Conversion and Mailing:** The proposal assumes that data provided will be in ready-to-use condition and that all data is provided in a single, comprehensive Excel spreadsheet. PSA cannot be liable for any errors or omissions arising due to additional work required for analyzing and processing the original database. A minimum of two (2) business days is required for processing prior to the anticipated mailing date with an additional two (2) business days for a National Change of Address (NCOA) update. Additional time may be required depending on the class size, necessary translation of the documents, or other factors. PSA will keep counsel apprised of the estimated mailing date.

**Claims:** PSA's general policy is to not accept claims via facsimile. However, in the event that facsimile filing of claims must be accepted, PSA will not be held responsible for any issues and/or errors arising out of said filing. Furthermore, PSA will require disclaimer language regarding facsimile transmissions. PSA will not be responsible for any acts or omissions caused by the USPS. PSA shall not make payments to any claimants without verified, valid Social Security Numbers. All responses and class member information are held in strict confidentiality. Additional class members are $10.00 per opt-out.

**Payment Terms**: All postage charges and 50% of the final administration charges are due at the commencement of the case and will be billed immediately upon receipt of the data and/or notice documents. PSA bills are due upon receipt unless otherwise negotiated and agreed to with PSA by Counsel/Client. In the event the settlement terms provide that PSA is to be paid out of the settlement fund, PSA will request that Counsel/Client endeavor to make alternate payment arrangements for PSA charges that are due at the onset of the case. The entire remaining balance is due and payable at the time the settlement account is funded by Defendant, or no later than the time of disbursement. Amounts not paid within thirty (30) days are subject to a service charge of 1.5% per month or the highest rate permitted by law.

## **Tax Reporting Requirements**

PSA will file the necessary tax returns under the EIN of the QSF, including federal and state returns. Payroll tax returns will be filed if necessary. Under the California Employment Development Department, all taxes are to be reported under the EIN of the QSF with the exception of the following taxes: Unemployment Insurance (UI) and Employment Training Tax (ETT), employer-side taxes, and State Disability Insurance (SDI), an employee-side tax. These are reported under Defendant's EIN. Therefore, to comply with the EDD payroll tax filing requirements we will need the following information:

1. Defendant's California State ID and Federal EIN.

2. Defendant's current State Unemployment Insurance (UI) rate and Employment Training Tax (ETT) rate. This information can be found in the current year DE 2088, Notice of Contribution Rates, issued by the EDD.

3. Termination dates of the class members, or identification of current employee class members, so we can account for the periods that the wages relate to for each class member.

4. An executed Power of Attorney (Form DE 48) from Defendant. This form is needed so that we may report the UI, SDI, and ETT taxes under Defendant's EIN on their behalf. If this form is not provided we will work with the EDD auditors to transfer the tax payments to Defendant's EIN.

5. Defendant is responsible for reporting the SDI portion of the settlement payments on the class member's W-2. PSA will file these forms on Defendant's behalf for an additional fee and will issue an additional W-2 for each class member under Defendant's EIN, as SDI is reported under Defendant's EIN rather than the EIN of the QSF. The Power of Attorney (Form DE 48) will be needed in order for PSA to report SDI payments.



3194-C Airport Loop Drive
Costa Mesa, CA 92626
800-779-2104  www.simpluris.com

| Estimate #: | 11479V2 | Prepared By: | Kimberly Sutherland |
| Estimate Date: | 1/28/2020 | Direct Dial # | 321.223.5067 |
| Estimate Expiration Date: | 4/27/2020 | Email: | ksutherland@simpluris.com |

| | Plaintiff Attorney | | | Defense Attorney |
|---|---|---|---|---|
| Attorney/Client: | **Dennis S. Hyun, Esq.** | | Attorney/Client: | |
| Firm: | Hyun Legal | | Firm: | |
| Email: | | | Email: | |

**Case Name:  Lao v. Hennes & Mauritz: Opt Out Settlement**

| **Anticipated Total Cost** | **$44,959** |
|---|---|
| **Professional Courtesy Applied** | **$1,353** |
| **Capped Fee\*** | **$43,606** |

**Terms:**
1) Capped Fees assume that Simpluris will receive data in a Single Excel file with no substantial change in class size or response rate.

| Total Possible Class Size: | 13,500 | Undeliverable Rate: | 15% |
|---|---|---|---|
| Response Rate: | 1% | Call Rate: | 5% |
| Length of Response Period: | 30-90 Days | Fund Distribution: | Simpluris |
| Mailing Document Language: | English | Redistribution: | No |
| Reminder Postcard: | No | State: | CA |
| Unclaimed funds | Cy Pres | | |

## Case Setup

| Data Compilation - Develop Case Specific Response Tracking - Error Reports | | | |
|---|---|---|---|
| Category | Unit Value | # of Units | Total |
| Project Manager - Case Setup/Posting documents online | $125.00 | 6 | $750.00 |
| Database Manager - Initial Data Analysis | $140.00 | 6 | $840.00 |
| | | Total | $1,590.00 |

## Notification

| Mailing Notice Pack: 4 pg Notice - Double Sided - English | | | |
|---|---|---|---|
| Category | Unit Value | # of Units | Total |
| Mailing Notice Pack | $0.35 | 13,500 | $4,725.00 |
| Postage | $0.44 | 13,500 | $5,940.00 |
| NCOA/CASS/LACS | $0.05 | 13,500 | $675.00 |
| Undeliverable Processing | $0.25 | 2,025 | $506.25 |
| Skip Trace RUM | $1.00 | 2,025 | $2,025.00 |
| Remail | $0.60 | 1,721 | $1,032.75 |
| Postage | $0.44 | 1,721 | $757.35 |
| Mailing Supervisor | $50.00 | 3 | $150.00 |
| | | Total | $15,811.35 |

## Call Center

| Establish Case Specific Toll Free Number | | | |
|---|---|---|---|
| Category | Unit Value | # of Units | Total |
| Customer Service Reps/Call Center Support | $75.00 | 5 | $375.00 |
| 800 # Charges | $0.10 | 300 | $30.00 |
| | | Total | $405.00 |

Confidential and Proprietary



3194-C Airport Loop Drive
Costa Mesa, CA 92626
800-779-2104  www.simpluris.com

## Administration

| Process Mail, Opt-Outs or Objections | | | |
|---|---|---|---|
| Category | Unit Value | # of Units | Total |
| Database Manager | $125.00 | 2 | $250.00 |
| Resolving Mismatched TINs | $75.00 | 4 | $300.00 |
| Dispute/Deficiencies - Send One Cure Letter | $2.50 | 9 | $23.63 |
| Opt Out Processing | $1.50 | 95 | $141.75 |
| Data Entry | $50.00 | 1 | $50.00 |
| Project Manager | $125.00 | 2 | $250.00 |
| Weekly Reporting to Counsel | WAIVED | 12 Wks of Reporting | $0.00 |
| | | Total | $1,015.38 |

## Distribution

| Setup a Disbursement Account | | | |
|---|---|---|---|
| Print & Mail Checks to Class Members - W2's / 1099's - File Reports with Appropriate Federal & State Taxing Authorities | | | |
| Account Management & Reconciliation | | | |
| Category | Unit Value | # of Units | Total |
| Disbursement Data Preparation | $140.00 | 3 | $420.00 |
| Disbursement Manager - Data Validation | $75.00 | 1 | $75.00 |
| Setup Banking Account/QSF | $300.00 | 1 | $300.00 |
| Print & Mail-Check | $1.00 | 13,500 | $13,500.00 |
| Postage | $0.44 | 13,500 | $5,940.00 |
| Process Returned Checks | $0.50 | 135 | $67.50 |
| Skip Trace Search Undeliverable Checks | $3.00 | 135 | $405.00 |
| Remail Checks | $4.00 | 135 | $540.00 |
| QSF Account Reconciliation | $250.00 | 1 | $250.00 |
| Individual Federal/State Tax Reporting | $500.00 | 1 | $500.00 |
| QSF Reporting/Declaration | $500.00 | 1 | $500.00 |
| QSF Annual Tax Preparation Fee | $1,000.00 | 1 | $1,000.00 |
| Reissuing Checks/Mailing | $3.00 | 203 | $607.50 |
| Reissuing W2s/1099s | $3.00 | 203 | $607.50 |
| Responding to IRS, State, Agency Inquiries | $75.00 | 1 | $75.00 |
| Disbursement Manager | $125.00 | 6 | $750.00 |
| | | Total | $25,537.50 |



3194-C Airport Loop Drive
Costa Mesa, CA 92626
800-779-2104  www.simpluris.com

## Case Wrap Up

| Send Final Reports to Counsel | | | |
|---|---|---|---|
| Category | Unit Value | # of Units | Total |
| Data Manager-Final Reporting | $125.00 | 2 | $250.00 |
| Clerical-Clean Up Any Misc | $50.00 | 2 | $100.00 |
| Project Manager-Wrap-up Final Issues | $125.00 | 2 | $250.00 |
| | | Total | $600.00 |

**Total Case Costs**                          **$44,959.23**

Confidential and Proprietary



3194-C Airport Loop Drive
Costa Mesa, CA 92626
800-779-2104  www.simpluris.com

All administration services to be provided by Simpluris to Client, are provided subject to the following terms and conditions:

1.   **Services.** Simpluris agrees to provide Client those services set forth in the Bid (the "Services") to which these terms and conditions are attached and which has been provided to Client.  As compensation for such Services, Client agrees to pay the fees for Services outlined in the Bid. However, Client such fees for Services are estimated based on the requirements provided by Client and actual fees charged by Simpluris may be greater or less than such estimate and Client will be responsible for the payment of all such fees.

2.   **Billing and Payment.** Simpluris will invoice Client on a regular basis unless a specific timeframe is otherwise set forth in the Bid.  Client shall pay all invoices within 30 days of receipt.  Amounts unpaid after thirty (30) days are subject to a service charge at the rate of 1.5% per month or, if less, the highest rate permitted by law.  Services are not provided on a contingency basis and Client shall remain liable to Simpluris for all fees for the Services, regardless of any court decisions, and/or actions by the parties, including disapproval or withdrawal of a settlement.

3.   **Retention of Documents.**  Unless directed otherwise in writing by the Client, Simpluris will destroy all undeliverable mail (except for undeliverable checks) on the date that it is processed and retained in Simpluris' system.  Simpluris will maintain records to establish that the subject mail is undeliverable.  Simpluris will retain undeliverable checks until the Qualified Settlement Fund is closed.  Simpluris will also retain all other class member and putative class member correspondence (including without limitation, claims forms and opt out forms) for one year after final distribution of funds or benefits, or until the date that the disposition of the case is no longer subject to appeal or review, whichever is later.  Lastly, Simpluris will retain bank & tax documents for such period of time as it determines is required to maintain compliance with various federal and state requirements.

4.   **Limitation of Liability; Disclaimer of Warranties.** Simpluris warrants that it will perform the Services diligently, with competence and reasonable care.  Simpluris' only obligation will be to correct any non-conformance with the foregoing warranty. In no event will Simpluris be liable for any lost profits/opportunities, business interruption or delay or, special, consequential , or incidental damages incurred by Client relating to the performance of the Services, regardless of whether Client's claim is for breach of contract, tort (including negligence and strict liability) or otherwise.  Under no circumstances will Simpluris be liable to Client for any claims, losses, costs, penalties, fines, judgment or damages, including court costs and reasonable attorney's fees (collectively, "Losses"), whether direct or indirect, arising out of, related to, or in connection with Services in an amount in excess of the total fees charged or chargeable to Client for the particular portion of the Services affected by Simpluris' omission or error.    THE WARRANTIES SET FORTH IN THIS SECTION ARE EXCLUSIVE AND IN LIEU OF ALL OTHER WARRANTIES, EXPRESS, IMPLIED OR STATUTORY, INCLUDING WITHOUT LIMITATION ANY IMPLIED WARRANTY OF MERCHANTABILITY OR OF FITNESS FOR A PARTICULAR PURPOSE.

5.   **Force Majeure.** To the extent performance by Simpluris of any of its obligations hereunder is substantially prevented by reason of any act of God or because of any other matter beyond  Simpluris' reasonable control, then such performance shall be excused and this Agreement, at  Simpluris' option, be deemed suspended during the continuation of such condition and for a reasonable time thereafter.

6.   **Rights in Data.**  Client agrees that it will not obtain, nor does Simpluris convey, any rights of ownership in the programs, system data, or materials provided or used by Simpluris in the performance of the Services.

7.   **Electronic Communications.**  During the provision of the Services the parties may wish to communicate electronically with each other at a business e-mail address. However, the electronic transmission of information cannot be guaranteed to be secure or error free and such information could be intercepted, corrupted, lost, destroyed, arrive late or incomplete or otherwise be adversely affected or unsafe to use. Accordingly, each party agrees to use commercially reasonable procedures to check for the then most commonly known viruses and to check the integrity of data before sending information to the other electronically, but each party recognizes that such procedures cannot be a guarantee that transmissions will be virus free. It remains the responsibility of the party receiving an electronic communication from the other to carry out a virus check on any attachments before launching any documents whether received on disk or otherwise.

8.   **Notice.** Any notice required or permitted hereunder shall be in writing and shall be delivered personally, by, or sent by registered mail, postage prepaid, or overnight courier and shall be deemed given when so delivered personally, or, if mailed, five days after the date of deposit in United States mail, or, if sent by courier, one business day after delivery to such courier service. Notice should be addressed to an officer or principal of Client and Simpluris, as the case may be.

9.   **Waiver.**  Failure or delay on the part of a party to exercise any right, power or privilege hereunder shall not operate as a waiver thereof or any of other subject, right, power or privilege.

10.  **Termination.** Client may terminate the Services at anytime upon 30 days prior written notice to Simpluris.  Termination of Services shall in no event relieve Client of its obligation make any payments due and payable to Simpluris in respect of Services rendered up to the effective date of Termination. Simpluris may terminate this Agreement (i) for any reason upon no less than 90 days prior written notice to the Client; or (ii) upon 15 calendar days' prior written notice, if the Client is not current in payment of fees.

11.  **Jurisdiction.** The parties hereto irrevocably and unconditionally submit to the jurisdiction of the Court of the applicable case for purposes of any suit, action or proceeding to enforce any provision of, or based on any right arising out of, this Agreement. The parties hereto hereby irrevocably and unconditionally waive any objection to the laying of venue of any such suit, action or proceeding in such Court.

12.  **Survival.**  Any remedies for breach of this Agreement, this Section and the following Sections will survive any expiration or termination of this Agreement: Section 4 - Limitation of Liability; Disclaimer of Warranties, Section 6 – Rights in Data, and Section 12- Jurisdiction, 14 -Confidentiality, and Section 15 – Indemnification.

13.  **Entire Agreement.** These Terms and Conditions and the proposal embody the entire agreement between the parties with respect to the subject matter hereof, and cancels and supersedes all prior negotiations, representations, and agreements related thereto, either written or oral, except to the extent they are expressly incorporated herein. No changes in, additions to, or waivers of, the terms and conditions set forth herein will be binding upon any party, unless approved in writing by such party's authorized representative.

14.  **Confidentiality.** Simpluris maintains reasonable and appropriate safeguards to protect the confidentiality and security of data provided by Client to Simpluris in connection with the Services.  If, pursuant to a court order or other proceeding, third party requests that Simpluris to disclose any confidential data provided by or for Client, Simpluris will promptly notify the Client unless prohibited by applicable law.  Client will then have the option to provide Simpluris with qualified legal representation at Client's expense to defend against such request.  If, pursuant to a court order, Simpluris is required to disclose data, produce documents, or otherwise act in contravention of the obligation to maintain confidentiality set forth in these terms and conditions, Simpluris will not be liable for breach of said obligation.

15.  **Indemnification.** Client will indemnify and hold Simpluris (and the officers, employees, affiliates and agents harmless against any Losses incurred by Simpluris, arising out of, in connection with , or related to (i)  any breach of the terms by Client; (ii) the processing and handling of any payment by Simpluris in accordance with Client's instructions, including without limitation, the imposition of any stop payment or void payment on any check or the wrongful dishonor of a check by Simpluris pursuant to Client's instructions.

16.  **Severability.** If any term or condition or provisions of this Agreement shall be held to be invalid, illegal, unenforceable or in conflict with the law of any jurisdiction, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

17.  **Database Administration.** Simpluris' database administration for Client assumes that Client will provide complete data that includes all information required to send notifications and calculate and mail settlement payments.  Data must be provided in a complete, consistent, standardized electronic format. Simpluris' standardized format is Microsoft Excel, however, Simpluris may accept other formats at its discretion. Further developments or enhancements to non-standardized data will be billed to Client by Simpluris on a time and materials basis according to Simpluris' Standard Rates.

 

## Simpluris Security Summary – White Paper

Simpluris is committed to the security and overall protection of not only our data and information but our client's data and information, as well.  As a demonstration of our commitment, we maintain SOC 2 Certification which requires strict adherence to policies and procedures surrounding information security, including processing and storage of confidential customer data. Simpluris  supports a comprehensive, written Information Security Program that complies with all applicable laws and regulations (e.g. HIPAA, Gramm-Leach-Bliley Act, MA 201 CMR 17.00) and is designed to (a) ensure the security, privacy and confidentiality of Client and Class Member Information, (b) protect against any reasonably anticipated threats or hazards to the security or integrity of Client or Class Member Information, and (c) protect against unauthorized access to, use, deletion, or modification of Class Member Information.  Simpluris has designated specific employees to be responsible for the administration of its Information Security Program.  Also, Simpluris regularly and routinely monitors, tests, and updates our Information Security Program.

Simpluris uses Client and Class Member Information only for the purposes for which its' clients provide it, as described in any Agreements or Court Orders governing the provision of Simpluris' services in any particular case. Simpluris maintains a process for identifying, assessing, and mitigating the risks to Class Member Information in each relevant area of Simpluris' operations. At Simpluris, we continuously evaluate the effectiveness of the safeguards for controlling these risks to data and bank accounts.  Simpluris restricts access to Class Member Information only to those employees, agents, or subcontractors who need to know the information to perform their jobs.  Simpluris performs background checks of all its employees that will have access to Sensitive Personal Information, including a review of their references, employment eligibility, education, and criminal history to ensure they do not pose a risk to the security of Client or Class Member Information.

Simpluris adheres to the following industry best practices to safeguard its systems which process, store or transmit Client and Class Member Information:

- Identity and Access Management;
- Complex passwords are routinely and regularly changed;
- Role-based access control systems to limit individual    employee access to network applications and systems based on their particular job role and function;
- Data Loss Prevention and Intrusion Prevention System software at multiple layers to prevent from internal and external threats of data leaks, malicious activity, and policy violations
- Encryption of Class Member Information if transmitted over public or wireless networks (e.g., via email, FTP, the Internet, etc.);
- Implementation of a Secure File Transfer system (using SSL encryption) for transmitting documents back and forth to clients;
- Encryption of servers, portable media, laptops, desktops, smartphones, mobile devices, and new technologies that store Class Member Information;
- Complex password authentication for remote access to Company's networks;
- Upon hire and annually after that, training of all employees with access to Class Member Information, (including any agents, and subcontractors with access to Class Member Information) about their obligations to implement the Information Security Program;
- Strict disciplinary measures for employees who violate the Information Security Program;
- Preventing terminated employees from accessing Class Member Information;
- Appropriately configured and updated firewall, antivirus, and spyware software;
- Prompt application of vendor-recommended security patches and updates to systems and other applications to avoid any adverse impact on Class Member Information;
- Separation of Duties;
- Infrastructure and Physical Security;
- Business Continuity Planning;
- Disaster Recovery Planning



Confidential
Jonathan Paul - Senior Consultant
(310) 948-7117
jonathan.paul@jndla.com

**Dennis S. Hyun, Esq. | Hyun Legal | dhyun@hyunlegal.com**
*Lao v. Hennes & Mauritz, H&M*

## Assumptions and Notes:

1. Assumes 12,339 class members
2. Mail 6-page English notice to class members
3. Receive and process undeliverable mail (assumes 10% of which 5% is forwarded)
4. Perform skip-tracing on undeliverable mail without forwarding address and remail (assumes 80% success rate)
5. Receive and process opt-out requests (assumes 0.25% or 31 opt-outs)
6. Toll-free number with IVR and live operators (assumes 3% call rate and 3 min. per call)
7. Static website to host information and case documents
8. Perform wage reporting in one state (CA)
9. Establish and manage Qualified Settlement Fund
10. Distribute settlement payments to class members with W2s/1099s (assumes 12,308 checks)

| | | | | | | Cost Estimate |
|---|---|---|---|---|---|---|
| **Case-Specific Website** | | | | | | |
| Develop and host informational website with downloadable forms, and case information | | | | | | |
| | | | | | $ | 3,500 |
| **Call Center** | | | | | | |
| Set up toll-free number and IVR menu, answer and document calls; monthly and per-minute charges | | | | | | |
| | | | | | $ | 3,850 |
| **Database Management** | | | | | | |
| Class list clean-up | | | $ | 500 | | |
| Create project specific database; develop processing procedures | | | $ | 350 | | |
| | | | | | $ | 850 |
| **Mail Notice** | | | | | | |
| Print and mail notice | | | | | | |
|    Estimated items mailed | | 12,339 | | | | |
|    Printing/Materials/Mailing Services | $ | 0.44 | $ | 5,429 | | |
| | | | | | $ | 5,429 |
| Track undeliverables; remail forwards | | | $ | 300 | | |
| Research undeliverables (skip-trace); remail | | | $ | 1,450 | | |
| | | | | | $ | 1,750 |
| | | | | | $ | 7,179 |
| **Process Opt Outs** | | | | | | |
| Process mailed opt-outs; validate forms; final review; identify and resolve issues | | | | | | |
| | | | | | $ | 250 |
| **Tax Reporting** | | | | | | |
| Establish payroll account, set up employees; set up state tax accounts; close accounts; tax reporting (state and federal); W-2s/1099s IRS submission; interact with state agencies regarding tax returns and post-disbursement issues (e.g., child services, back taxes, unemployment, etc.) | | | | | | |
|           *States:* | 1 | | | | | |
| | | | | | $ | 450 |
| **Distribute Benefits (with Form 1099 / W-2)** | | | | | | |
| Calculate, review, and implement individual benefits | | | $ | 600 | | |
| 1099 Reporting | | | $ | 500 | | |
| Establish QSF/Tax ID; account setup and management; reconciliation | | | $ | 1,150 | | |
| Create check language; design, format checks with 1099s/W-2s; manage mailing | | | $ | 1,400 | | |
| Printing and mailing costs | | | | | | |
|    Estimated Items Mailed | | 12,308 | | | | |
|    Printing/Materials/Mailing Services | $ | 0.44 | $ | 5,416 | | |
| | | | | | $ | 5,416 |
| Research undeliverables (skip-trace); remail; reissue checks | | | $ | 1,650 | | |
| | | | | | $ | 10,716 |

**Project Management**

Interaction with counsel, status reports, supervision of project team, format/quality review notice, resolution of issues, court report

*Estimated Months:*      *9*

| | | |
|---|---|---|
| | $ | 3,200 |
| **Sub-Total Fees** | **$** | **29,995** |

**Expenses**

Expenses including but not limited to postage, P.O. Box ($150/month), hard-copy box storage ($1.50/box per month), copying ($0.20/page), electronic storage ($0.006 per image/record per month), NCOA, etc.

*Postage is estimated and JND will obtain best possible presort discounted rate.*

| | | |
|---|---|---|
| | $ | 13,478 |
| **Sub-Total Expenses** | **$** | **13,478** |
| **Total Fees & Expenses** | **$** | **43,473** |



All services to be provided by JND Legal Administration ("JND") are subject to the following terms and conditions:

1. SERVICES: JND agrees to perform all services necessary to complete the tasks outlined in the applicable proposal or other documents or per its understanding about the Client assignment. Such Services do not in any way constitute legal services or advice.

2. PAYMENT: The Client agrees to pay JND for the Services as outlined in the Proposal or other agreement between the parties. Client agrees and understands that fees charged by JND may include mark-ups, commissions, or other arrangements constituting potential profits to JND. Client further agrees that the prices to be charged by JND were negotiated at arm's length and that total fees are estimates and that the actual amount charged may be greater or lesser than the estimated amounts. JND reserves the right to increase its hourly rates annually.

3. EXPENSES: JND shall also bill for all expenses reasonably incurred in connection with the Services. These expenses include but are not limited to postage, FedEx, P.O. Box rental ($150/month), travel, copies ($0.20 per copy), box storage ($1.50/box per month), brokerage fees, accounting fees, electronic storage ($0.006 per image/record), and other items associated with the Services. JND may receive rebates or credits from vendors in connection with volume of work performed for all of its Clients. JND may also receive financial benefits from banks or other institutions based on settlement funds on deposit. These credits/rebates/awards are solely the property of JND.

4. BILLING: JND shall invoice clients every 30 days and expect payment within thirty (30) days of receipt of invoices. Payment for postage and printing is due in advance of mailing. Invoices not paid within thirty (30) days will be subject to a 1.5% monthly finance charge.

5. INDEPENDENT CONTRACTOR: JND is performing its Services as an Independent Contractor and neither it nor its employees shall be deemed to be employees of the Client.

6. CONFIDENTIALITY: JND and the Client will each treat as confidential any documents shared by one party with the other. JND does not convey to the Client any right in the programs, systems, or methodologies used or provided by JND in the performance of this assignment.

7. DATA PRIVACY: JND Is committed to taking all reasonable steps to ensure the security of all client and claimant data entrusted to our care. We seek to protect confidential data in all of our engagements, including this one, regardless of the size of the matter or the amount of data at issue. Please see JND's complete Privacy Policy at www.jndla.com/privacy-policy regarding data collection and use.

8. LIMITATION OF DAMAGES: JND is not responsible to the Client for any special, consequential or incidental damages incurred by Client and any liability of JND to the Client shall not exceed the total amount billed to the Client for the particular Services that give rise to any loss.

9. FORCE MAJEURE: If any event out of the reasonable control of JND prevents JND's performance, such performance shall be excused.

10. NOTICE: Any notice required in connection with the Services shall be in writing and sent by registered mail or overnight courier. Such notice is deemed given if mailed five days after the date of deposit in the U.S. mail, or if sent by overnight courier, one business day after delivery to such courier.

11. GOVERNING LAW: This contract will be governed by and construed by the laws of the State of Washington.

12. ASSIGNMENT: This Agreement and the rights and obligations of JND and the Client shall inure to the benefit of their successors and assigns, if any.

13. TERMINATION: This Agreement may be terminated by the Client upon at least 30 days prior written notice to JND. The Client's obligation to pay for services or projects in progress at the time of notice of withdrawal shall continue throughout the 30 day period. JND may terminate this Agreement (i) with 10 days prior written notice if the Client is not current in payment of charges or (ii) in any event, upon at least three months prior written notice to the Client. If Client terminates this Agreement, JND shall have no obligation to release any information or documentation related to the applicable matter until JND has been paid in full.